**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------ x

| | |
|---|---|
| NATHANIEL AGUDELO, HELEN OWENS, HOLLY KEITH, and AMANDA COOPER, on behalf of themselves and others similarly situated | : Civil Action No. 22-cv-4004<br>:<br>:<br>: **SECOND AMENDED CLASS AND**<br>: **COLLECTIVE ACTION COMPLAINT** |
|        *Plaintiffs, and Lead*<br>       *Plaintiffs for the*<br>       *Proposed Class,* | :<br>:<br>: **Jury Trial Demanded** |
|   v. | :<br>: |
| RECOVCO MORTGAGE MANAGEMENT LLC, SPROUT MORTGAGE LLC, MICHAEL STRAUSS, CHRISTOPHER WRIGHT, and ELLIOT SALZMAN | :<br>:<br>:<br>x |
|           *Defendants* | |

------------------------------------------------

"Plaintiffs" Nathaniel Agudelo, Helen Owens, Holly Keith, and Amanda Cooper, individually and on behalf of themselves and all others similarly situated, allege as follows:

**NATURE OF THE ACTION**

1.      This is a class action by Plaintiffs and other similarly situated employees of the Defendants, Recovco Mortgage Management LLC ("Recovco"), Sprout Mortgage LLC ("Sprout") (together, "Corporate Defendants"), and Michael Strauss, Christopher Wright, and Elliot Salzman (collectively, "Individual Defendants"),[1] for recovery of damages by reason of all Defendants' violation of the Fair Labor Standards Act, 29 U.S.C.A. § 201 *et seq.* ("FLSA") and Article 6 of the New York Labor Law, N.Y. Lab. Law § 190 *et seq.* ("NYLL"); Corporate Defendants' violation of the Plaintiffs' rights under the federal Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101 *et seq.* (the "WARN Act"); and the New York Worker Adjustment and Retraining

---

[1] References to "Defendants" include all Defendants, both Corporate and Individual.

Notification Act (the "NY WARN Act"), N.Y. Labor Law § 860 *et seq.* (together, the "WARN Acts"); and Corporate Defendants' and Strauss' (the "ERISA Defendants") violation of their fiduciary duties pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1132(a)(3) and 1132(c)(1), and the Consolidated Omnibus Budget Reconciliation Act ("COBRA"), 29 U.S.C. § 1166(a).

2.     This action is brought to recover unpaid minimum wages, withheld regular wages, and wrongfully unpaid health insurance claims owed to Plaintiffs and other similarly situated employees of Defendants, in addition to damages for Corporate Defendants' failure to provide required advance notice of mass layoffs under the WARN Acts, as well as injunctive and declaratory relief against Defendants' unlawful actions, and attorneys' fees and costs.

3.     Plaintiffs bring this action on behalf of themselves and all similarly situated current and former employees pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* and specifically the collective action provision of the FLSA, 20 U.S.C. § 216(b), to remedy violations of the wage and hour provisions of the FLSA by Corporate Defendants that have deprived Plaintiffs and others similarly situated of their lawful wages.

4.     Plaintiffs also bring this action on behalf of themselves and a class of similarly situated current and former employees of Defendants, pursuant to Fed. R. Civ. P. 23, for violations of the WARN Act, 29 U.S.C. § 2101 *et seq.*; ERISA, 29 U.S.C. § 1132(a)(3) and 1132(c)(1), COBRA, 29 U.S.C. § 1166(a); the NY WARN Act, N.Y. Labor Law § 860 *et seq.*; and New York Labor Law ("NYLL") § 190 *et seq.*

5.     This Second Amended Complaint is filed with the consent of all Defendants pursuant to Fed. R. Civ. P. Rule 15(a).

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 as this action arises in part under 29 U.S.C. § 201 et seq.

7.      This Court also has subject matter jurisdiction pursuant to 29 U.S.C. § 2104(a)(5).

8.      This Court also has personal jurisdiction over the ERISA Defendants pursuant to 29 U.S.C. § 1132(e)(2).

9.      The Court's supplemental jurisdiction over Plaintiffs' state law claims is invoked pursuant to 28 U.S.C. § 1367, which confers supplemental jurisdiction over all non-federal claims arising from a common nucleus of operative facts.

10.     Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b), as all actions comprising the claims for relief occurred within this judicial district.

11.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## PARTIES

12.     Plaintiff Nathaniel Agudelo is an adult individual who, at all times relevant to this Complaint, has been a resident of South Floral Park, New York.

13.     At all relevant times, Agudelo was employed as a Closing Disclosure Specialist at Sprout Mortgage.

14.     Plaintiff Helen Owens is an adult individual residing in New Jersey who worked remotely, reporting to Defendants' New York Office located in East Meadow, New York.

15.     At all relevant times, Owens was employed as a Closing Disclosure Specialist at Sprout Mortgage.

16.     Plaintiff Holly Keith is an adult individual residing in Texas who commuted weekly to Defendants' New York Office located in East Meadow, New York.

17.     At all relevant times, Keith was employed as Senior Vice President of Secondary Due Diligence.

18.     Plaintiff Amanda Cooper is an adult individual residing in Pennsylvania who worked remotely, reporting to Defendants' New York Office located in East Meadow, New York.

19.     At all relevant times, Cooper was employed as Vice President of Credit at Sprout Mortgage.

20.     At all times relevant to this Complaint, Plaintiffs were employees of Defendants within the meaning of the FLSA, 29 USC § 203(e), NYLL § 190(2).

21.     Written consent forms for Plaintiffs to bring this action as a collective action under the FLSA have been previously filed.

22.     Defendant Recovco Mortgage Management LLC ("Recovco") is a foreign Limited Liability Company incorporated in Delaware and registered in the State of New York, with offices located at 90 Merrick Avenue, East Meadow, NY 11554.

23.     Defendant Sprout Mortgage LLC ("Sprout") is a foreign Limited Liability Company incorporated in Delaware and not registered in the State of New York, with offices located at 90 Merrick Avenue, East Meadow, NY 11554

24.     Upon information and belief, at all relevant times, Corporate Defendants operated as a single integrated enterprise and held themselves out as Recovco and Sprout interchangably.

25.     For example, upon information and belief, employees of Corporate Defendants received paychecks and offer letters purporting to be from Sprout, but employees' ADP benefits accounts are affiliated with Recovco.

26.     Further, a filing with the Rhode Island Secretary of State indicates that Recovco Mortgage LLC used the fictitious name of "Sprout Mortgage" in that state from September 2018 to April 2020.

27.     Further, while no entity named "Sprout Mortgage LLC" is registered with the New York Secretary of State, "Recovco Mortgage LLC" is registered in New York as a foreign LLC incorporated in Delaware with the same address as Sprout Mortgage.

28.     Sprout and Recovco shared centralized corporate functions, including having the same Director of Human Resources at both companies.

29.     Sprout and Recovco also shared a centralized benefits structure. For example, although, upon information and belief, Sprout technically shut down on July 6, 2022, and Recovco did not, Recovco employees' health insurance benefits were suddenly terminated at the same time as Sprout employees' benefits because all employees of both companies were covered under the same health insurance plan.

30.     Moreover, upon information and belief, after Sprout shut down on July 6, 2022, the few former Sprout employees who remained to "wind down" the business were transferred to being nominal employees of Recovco without signing any additional offer letter or other paperwork formalizing the transfer.

31.     Corporate Defendants employed, jointly or as a single integrated enterprise, over 100 employees through their office in East Meadow, NY (the "NY Office").

32.     According to its website, "Recovco is an industry leader in both quality and operational excellence and has proven results of serving clients with due diligence, valuations, quality control, underwriting, and auditing services for banks, mortgage companies, and other market participants. Recovco ensures that the loans of today and the past are pristine and free of

possible unforeseen risks and in compliance with all laws and regulations." *See* https://www.recovcomortgage.com/about. Recovco's website also indicates it has over 160 full time employees. *Id.*

33.    At all relevant times, Corporate Defendants employed more than 100 employees who in the aggregate worked at least 4,000 hours per week exclusive of hours of overtime within the United States.

34.    Individual Defendant Michael Strauss is an adult individual who at all relevant times was and is the CEO of Sprout. Upon information and belief, Strauss directed various other individuals not to pay the outstanding wages owed to the terminated employees.

35.    Upon information and belief, Strauss resides in New York and has a residence in the Hamptons.

36.    Upon information and belief, Strauss directed the closure of Defendants' business and the non-payment of all employees' paychecks from New York.

37.    As the CEO of Sprout, who worked out of the company's New York office, Strauss had the authority to hire and fire employees and to set their rate of pay and other conditions of employment.

38.    Strauss also exercised authority and control over employees' health insurance plans, including by instructing that the plans be canceled retroactively to May 1, 2022.

39.    Individual Defendant Christopher Wright is an adult individual who at all relevant times was Sprout's Chief Financial Officer ("CFO").

40.    Upon information and belief, as CFO, Wright exercised authority and control over employees' rates of pay and conditions of employment because his approval was required for raises and promotions.

41.     Further, upon information and belief, Wright was responsible for hiring employees who worked under him in the company's financial department.

42.     Individual Defendant Elliot Salzman is an adult individual who at all relevant times was Sprout's Executive Vice President and Chief Credit Officer.

43.     Upon information and belief, Salzman resides in Long Beach, New York, and at all relevant times worked from Defendants' New York office.

44.     Salzman had the authority to hire and fire employees and to set their rate of pay and other conditions of employment.

45.     For example, Plaintiff Amanda Cooper was promoted twice, with attendant pay raises, while working for Defendants. Each time she received an offer letter confirming her new position and pay, it was signed by Defendant Salzman.

46.     Until their termination by Defendants, the Plaintiffs and other similarly situated persons were employees of Defendants who worked at, reported to, or were assigned work from Defendants' East Meadow, NY office (the "NY Office") and who were terminated as part of or as a reasonably foreseeable result of the office shutdown ("plant closing") ordered and carried out by the Defendants on or about July 6, 2022.

47.     On or about July 6, 2022, Defendants ordered the termination of the Plaintiffs' employment together with the termination of all other employees who worked at or reported to the NY Office as part of plant closings as defined by the WARN Act and NY WARN Act for which the terminated employees were entitled to receive 60 days' notice under the WARN Act and 90 days' notice under the NY WARN Act.

48.     Upon information and belief, at or about the time that the Plaintiffs were discharged on or about July 6, 2022, Defendants discharged over 100 other employees at the NY Office (the "Similarly Situated Employees") without cause on the part of the employees.

49.     Upon information and belief, Defendant Strauss instructed other individuals not to issue the paychecks that were due to be sent out to all Similarly Situated Employees on July 7, 2022, and July 22, 2022.

50.     Consequently, the Plaintiffs, along with the Similarly Situated Employees, did not receive their paychecks on July 7, 2022, which would have paid them for their work for Corporate Defendants from June 16, 2022, through June 30, 2022.

51.     Plaintiffs and the Similarly Situated Employees also did not receive their paychecks on July 22, 2022, which would have paid them for their work from July 1, 2022, through their termination on July 6, 2022.

## COLLECTIVE ACTION ALLEGATIONS

52.     Plaintiffs bring their FLSA claims on behalf of themselves and all similarly situated persons who were employed by Corporate Defendants at any point from June 16, 2022, through July 6, 2022, and who did not receive minimum wages for all hours worked (the "Collective Class Members").

53.     Corporate Defendants are liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiffs, and as such, notice should be sent to all others similarly situated. There are numerous similarly situated former employees of Corporate Defendants who have been similarly underpaid in violation of the FLSA and who would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join.

54. Plaintiffs have spoken to dozens of other employees who reported to and were terminated from the NY Office, and who have confirmed they have not been paid.

55. Over 300 former employees of Defendants have contacted Plaintiffs' counsel expressing interest in joining the instant lawsuit.

56. Multiple news articles have also reported that Corporate Defendants withheld the paychecks that were supposed to be sent out to all employees on July 7, 2022. *See*

https://nationalmortgageprofessional.com/news/sprout-mortgage-shuts-down*;*

https://www.housingwire.com/articles/sprout-mortgage-to-shutter/.

57. The majority of the FLSA Collective Class members are unknown, and information regarding the precise number of Collective Class members is in the sole control of Defendants. Upon information and belief, there are at least 100 FLSA Collective Class members, and could be significantly more.

**CLASS ACTION ALLEGATIONS – WARN ACT, 29 U.S.C. § 2104(a)(5); ERISA, 29 U.S.C. §§ 1132(a)(3) and 1132(c)(1), COBRA, 29 U.S.C. § 1166(a); NY WARN ACT, NYLL § 860 *et seq.*; NY MINIMUM WAGE, NYLL § 190 *et seq.***

58. Plaintiffs sue on their own behalf and on behalf of a class of persons under Fed. R. Civ. P. 23(a), (b)(3) ("Rule 23 Class"). As noted above, the persons in the Rule 23 Class are so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and facts on which the calculation of that number can be based are presently within the sole control of Defendants, upon information and belief there are at least 100 Class Members, and there could be significantly more.

59. There are questions of law and fact common to the Rule 23 Class Members that predominate over any questions affecting only individual members, including:

a.  Whether Defendants employed and/or jointly employed Plaintiffs and putative Rule 23 Class Members under New York law;

b.  Whether Defendants paid Rule 23 Class Members lawful wages under the NYLL;

c.  Whether Corporate Defendants discharged Class Members without cause on their part or as the reasonably foreseeable consequence of the plant closing or mass layoff ordered by Defendants at the NY Office on or about July 6, 2022, and whether the Class Members are therefore "affected employees" within the meaning of 29 U.S.C. § 2101 (a)(5) and N.Y.L.L. § 860-a(1);

d.  Whether all Class members enjoyed the protection of the WARN Acts;

e.  Whether Defendants violated their fiduciary duties towards Plaintiffs under ERISA; and

f.  Whether Defendants violated the notice requirements of COBRA.

60.     The Plaintiffs' claims are typical of the claims of the Class.

61.     The Plaintiffs and their counsel will fairly and adequately protect the interests of the Class.

62.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation, where an individual plaintiff lacks the financial resources to vigorously prosecute a lawsuit in federal court against Corporate Defendants.

63.     Defendants have acted on grounds generally applicable to the Class, thereby making relief, including declaratory and/or injunctive relief, appropriate for the Class.

64.     Concentrating all the potential litigation concerning the rights of the Class members in this Court will avoid a multiplicity of suits, will conserve judicial resources and the resources

of the parties and is the most efficient means of resolving the claims of all the Class members under the WARN Acts, ERISA, COBRA, FLSA, and NYLL.

65.     On information and belief, the identity of the Class members is contained in the books and records of Defendants.

66.     On information and belief, a recent residential address of each of the Class members is contained in the books and records of Defendants.

67.     On information and belief, the rate of pay and benefits, including health insurance benefits, that was being paid by Defendants to each Class member at the time of his/her termination are contained in the books and records of Defendants.

## CLASSWIDE FACTUAL ALLEGATIONS

68.     Plaintiffs bring claims under the WARN Acts, FLSA, ERISA, COBRA, and NYLL on behalf of themselves and all similarly situated persons ("Class Members") formerly employed by Defendants.

69.     The Plaintiffs and each person they seek to represent herein were discharged without cause on their part or as the reasonably foreseeable consequence of the plant closing or mass layoff[2] ordered by Defendants at the NY Office on or about July 6, 2022, and are "affected employees" within the meaning of 29 U.S.C. § 2101 (a)(5) and N.Y.L.L. § 860-a(1).

70.     The Plaintiffs bring this action on their own behalf and, pursuant to the WARN Acts, ERISA, COBRA, the NYLL, and Rules 23(a) and (b) of the Federal Rules of Civil Procedure, on behalf of all other similarly situated former employees of Defendants who were terminated on or about July 6, 2022.

---

[2] Although Plaintiffs were told on July 6, 2022, that Sprout was "closing its doors," suggesting the mass termination was a "Plant Closing," Plaintiffs' investigation has revealed there may still be a handful of employees who remain employed by Sprout. The exact nature of the shutdown remains known only to Defendants. Therefore, Plaintiffs alternatively allege that the closure constituted a "Mass Layoff."

71.     On or about July 6, 2022, Defendants terminated the Plaintiffs' employment as part of a Plant Closing or Mass Layoff as defined by 29 U.S.C. § 2101(a)(2), (3) and N.Y.L.L. § 860-a(6), for which they were entitled to receive sixty (60) days' advance written notice under the WARN Act and ninety (90) days' advance written notice under the NY WARN Act.

72.     Defendants failed to give Plaintiffs the statutorily required advance written notice of the Plant Closing or Mass Layoff in violation of the WARN Acts.

73.     The need for notice to Plaintiffs under the NY WARN Act was foreseeable on April 7, 2022, 90 days before Plaintiffs' employment was terminated, due to industry conditions known to Defendants' executives.

74.     The need for notice to Plaintiffs was foreseeable under the WARN Act on May 7, 2022, 60 days before Plaintiffs' employment was terminated, due to industry conditions known to Defendants' executives.

75.     The need for notice to Plaintiffs under the WARN Acts was foreseeable by Defendants because, upon information and belief, Sprout missed payments to multiple vendors for several months prior to July 6, 2022.

76.     Upon information and belief, Sprout also failed to pay millions of dollars in payroll taxes and Strauss was in the process of working out a payment plan with the IRS prior to the July 6, 2022, shutdown.

77.     Upon information and belief, at or about the time the Plaintiffs were discharged on or about July 6, 2022, Defendants discharged approximately 100 Similarly Situated Employees who worked at, reported to, or were assigned work from the NY Office, without cause on their part.

78.     Pursuant to Fed. R. Civ. P. 23 and the WARN Act, 29 U.S.C. § 2104(a)(5), the Plaintiffs maintain this claim on behalf of themselves and each of the other Similarly Situated Employees.

79.     Each of the other Similarly Situated Employees is similarly situated to the Plaintiffs in respect to his or her rights under the WARN Acts and the NYLL.

80.     The Plaintiffs and other Similarly Situated Employees were discharged by Defendants without cause on their part.

81.     The Plaintiffs and other Similarly Situated Employees are "affected employees" within the meaning of 29 U.S.C. § 2101 (a)(5) and N.Y.L.L. § 860-a(1).

82.     The Defendants failed to pay the Plaintiffs and other Similarly Situated Employees their respective wages, salary, commissions, bonuses, accrued holiday pay and accrued vacation for sixty (60) calendar days following their respective terminations and failed to provide employee benefits under ERISA in respect to them for sixty (60) calendar days from and after the dates of their respective terminations.

83.     At all relevant times, Defendants had the right to control, and did in fact control, the hours, hourly pay, assignments and schedules of the named Plaintiffs and all Similarly Situated Employees.

84.     As described above, Defendants failed to pay the named Plaintiff and Class Members minimum wages, as required by law, when they failed to pay Plaintiffs any wages at all for work performed during the period of June 16, 2022 through July 6, 2022.

85.     Corporate Defendants and Strauss also violated their fiduciary duty under ERISA by continuing to make routine deductions for health insurance premiums from employees'

paychecks while failing to pay the company's insurance carrier for coverage, then ordering the termination of employees' coverage retroactive to May 1, 2022.

86. Corporate Defendants and Strauss further violated their fiduciary duty under ERISA, 29 U.S.C. § 1132(c)(1), by failing to comply with the notice requirements of COBRA, 29 U.S.C. § 1166(a).

## INDIVIDUAL FACTUAL ALLEGATIONS

87. Plaintiff Nathaniel Agudelo worked for Defendants as a Closing Disclosure Specialist from approximately November 1, 2020, until he was terminated without cause on July 6, 2022.

88. Plaintiff Helen Owens worked for Defendants as a Closing Disclosure Specialist from approximately December 1, 2020, until she was terminated without cause on July 6, 2022.

89. Plaintiff Holly Keith worked for Defendants as Senior Vice President of Secondary Due Diligence from approximately April 1, 2021, until she was terminated without cause on July 6, 2022.

90. Plaintiff Amanda Cooper worked for Defendants as Vice President of Credit from approximately March 2020 until she was terminated without cause on July 6, 2022.

91. On the afternoon of July 6, 2022, all employees of Defendants received an invitation to a videoconference.

92. Upon information and belief, over 300 employees, at least one-third of which were employed through the NY Office, joined the videoconference. *See* https://nationalmortgageprofessional.com/news/sprout-mortgage-faucet-just-got-turned.

93. When the employees joined the videoconference, they were told by Shea Pallante who was at all relevant times the President of Sprout Mortgage, that the company would be shut

down, everyone's employment was terminated immediately, and they should not return to work tomorrow.

94.    Pallante indicated that employees' health benefits would continue through the end of the month, but upon information and belief refused to confirm whether employees would receive their paychecks the next day.

95.    Employees did not receive their paychecks as scheduled on July 7, 2022, and have not received them to date.

96.    The paychecks due to be distributed on July 7, 2022, would have covered the pay period of June 16, 2022, through June 30, 2022.

97.    Many employees also worked during the period from July 1, 2022, through July 6, 2022, and are owed all of their wages for their work during that time period.

98.    Moreover, in the weeks following the videoconference, numerous employees, including Plaintiffs, learned that their health insurance premiums had not been paid by the company in months.

99.    When Plaintiff Holly Keith called her insurance carrier, she was informed that Sprout had requested that employees' health insurance coverage be terminated retroactive to May 1, 2022.

100.    Employees of Sprout had payments deducted from their paychecks for health insurance throughout the months of May and June, creating the material misrepresentation that the employees continued to have health coverage through their employer.

101.    Upon information and belief, Individual Defendant Strauss instructed Sprout employees to instruct the insurance carrier to retroactively terminate the coverage.

102.     Plaintiff Holly Keith underwent medical procedures in or about May 2022 for which she now owes over **$50,000** due to the retroactive cancelation of her coverage.

103.     Upon information and belief, numerous other employees are now receiving bills for medical procedures they believed were covered by their health insurance, due to the company's retroactive termination of their benefits.

104.     For some employees, these bills are financially catastrophic. Upon information and belief, at least two employees were undergoing cancer treatment and have discovered they had no health insurance to cover exorbitantly expensive medical procedures undergone in May, June, and/or July 2022.

105.     Upon information and belief, Corporate Defendants and Strauss failed to provide notice to any employee of their right to continued health insurance coverage under COBRA.

## FIRST CAUSE OF ACTION: FLSA MINIMUM WAGE
### As against All Defendants

106.     Plaintiffs allege and incorporate by reference the allegations contained in all preceding paragraphs.

107.     Defendants have engaged in a widespread pattern and practice of violating the FLSA, as detailed in this Complaint.

108.     Plaintiffs consent to be parties to this action, pursuant to 29 U.S.C § 216(b).

109.     At all times relevant to this action, Plaintiffs and Class Members were employed by Defendants within the meaning of the FLSA, 29 U.S.C. § 203(d).

110.     At all times relevant to this action, Plaintiffs and Class Members were engaged in commerce and the Corporate Defendants were enterprises engaged in commerce within the meaning of 29 U.S.C. § § 206(A) and 207(a).

111.     Defendants violated the rights of Plaintiff and Class Members by failing to pay them the minimum wage for each hour worked in each discrete work week, in violation of the FLSA, 29 U.S.C § 206(a)(1).

112.     Defendants' failure to pay Plaintiff and Class Members the minimum wage was willful within the meaning of the FLSA, 29 U.S.C. § 255.

113.     Defendants are liable to Plaintiff and Class Members for their unpaid minimum wages, plus an additional equal amount as liquidated damages, reasonable attorney's fees and costs, and any other appropriate relief pursuant to 29 U.S.C. § 216(b).

## SECOND CAUSE OF ACTION: NYLL MINIMUM WAGE
### As Against all Defendants

114.     Plaintiff alleges and incorporates by reference the allegations contained in the preceding paragraphs.

115.     Defendants violated the rights of Plaintiffs and Class Members by failing to pay them the minimum wage for each hour worked in violation of the NYLL.

116.     At all times relevant to this action, Plaintiffs and Class Members were employed by Defendants within the meaning of the NYLL.

117.     As a result of Defendants' violation of the NYLL, Plaintiff and Class Members are entitled to the minimum rate of pay that they were legally due under the NYLL's minimum wage provisions as well as liquidated damages, interest, attorney's fees.

## THIRD CAUSE OF ACTION: UNLAWFUL WITHHOLDING OF WAGES UNDER NYLL § 193
### As Against all Defendants

118.     Plaintiff alleges and incorporates by reference the allegations contained in the preceding paragraphs.

119.     Defendants violated the rights of Plaintiffs and Class Members by unlawfully withholding their regular wages in violation of the NYLL.

120.     At all times relevant to this action, Plaintiffs and Class Members were employed by Defendants within the meaning of the NYLL.

121.     As a result of Defendants' violation of the NYLL, Plaintiff and Class Members are entitled to recover their withheld wages as well as liquidated damages, interest, attorney's fees.

### FOURTH CAUSE OF ACTION: WARN ACT
### As against Corporate Defendants

122.     Plaintiff alleges and incorporates by reference the allegations contained in the preceding paragraphs.

123.     At all relevant times, Corporate Defendants employed more than 100 employees who in the aggregate worked at least 4,000 hours per week exclusive of hours of overtime within the United States.

124.     At all relevant times, each Corporate Defendant was an "employer" as that term is defined in 29 U.S.C. § 2101(a)(1), 20 C.F.R. § 639(a) and continued to operate as a business until it ordered a plant closing or mass layoff at the NY Office.

125.     The Corporate Defendants constituted a "single employer" of the Plaintiffs and Class members under the WARN Act.

126.     On or about July 6, 2022, the Corporate Defendants as a single employer ordered a Plant Closing or Mass Layoff.

127.     The Plant Closing or Mass Layoff resulted in "employment losses," as that term is defined by 29 U.S.C. § 2101(a)(2), (3), for at least fifty (50) of Defendants' employees at the NY

Office as well as at least 33% of Defendants' workforce at the NY Office, excluding "part-time employees," as that term is defined by the WARN Act, 29 U.S.C. § 2101(a)(8).

128.    The Plaintiffs and each of the other members of the Class were discharged by Defendants without cause on their part, as part of or as the reasonably foreseeable result of the Plant Closing or Mass Layoff ordered by Defendants at the NY Office.

129.    The Plaintiffs and each of the other members of the Class are "affected employees" of Defendants within the meaning of 29 U.S.C. § 2101(a)(5).

130.    The Defendants were required by the WARN Act to give the Plaintiffs and each of the other members of the Class at least 60 days' advance written notice of their termination.

131.    The Defendants failed to give the Plaintiffs and other members of the Class written notice that complied with the requirements of the WARN Act.

132.    Each Plaintiff, and each of the other members of the Class, are an "aggrieved employee" of the Defendants as that term is defined in 29 U.S.C. § 2104(a)(7).

133.    The Defendants failed to pay the Plaintiffs and each of the other members of the Class their respective wages, salary, commissions, bonuses, accrued holiday pay and accrued vacation for 60 days following their respective terminations and failed to provide employee benefits under ERISA, for 60 days from and after the dates of their respective terminations.

### FIFTH CAUSE OF ACTION: NY WARN ACT
### As against Corporate Defendants

134.    Plaintiff alleges and incorporates by reference the allegations contained in all preceding paragraphs.

135.    At all relevant times, Corporate Defendants employed more than 50 full-time employees.

136.     At all relevant times, each Corporate Defendant was an "employer" as that term is defined in NYLL § 860-a(3) and continued to operate as a business until it ordered a plant closing and terminations at the NY Office.

137.     On or about July 6, 2022, the Corporate Defendants as a single employer ordered a "Mass Layoff" or "Plant Closing" of the NY Office as defined under NYLL § 860-a(4), (6).

138.     The Mass Layoff or Plant Closing resulted in "employment losses," as that term is defined by NYLL § 860-a(2) for at least twenty five (25) of Defendants' employees at the NY Office as well as at least 33% of Defendants' workforce at the NY Office, excluding "part-time employees," as that term is defined by the NY WARN Act, NYLL § 860-a(5).

139.     The Plaintiffs and each of the other members of the Class were discharged by Defendants without cause on their part, as part of or as the reasonably foreseeable result of the Mass Layoff Plant Closing ordered by Defendants at the NY Office.

140.     The Defendants were required by the NY WARN Act to give the Plaintiffs and each of the other members of the Class at least 90 days' advance written notice of their termination.

141.     The Defendants failed to give the Plaintiffs and other members of the Class written notice that complied with the requirements of the NY WARN Act.

142.     Each Plaintiff, and each of the other members of the Class, are an "affected employee" of the Defendants as that term is defined in NYLL § 860-a(1)

143.     The Defendants failed to pay the Plaintiffs and each of the other members of the Class their respective wages, salary, commissions, bonuses, accrued holiday pay and accrued vacation for 60 days following their respective terminations and failed to provide employee benefits under ERISA, for 60 days from and after the dates of their respective terminations.

**SIXTH CAUSE OF ACTION: VIOLATION OF ERISA FIDUCIARY DUTY UNDER 29 U.S.C. § 1132(a)(3)**

**As against Corporate Defendants and Individual Defendant Strauss**

144.     Plaintiff alleges and incorporates by reference the allegations contained in all preceding paragraphs.

145.     Corporate Defendants and Individual Defendant Strauss were fiduciaries with respect to employees' health insurance plans as defined in 29 U.S.C. § 1002(21)(A).

146.     Corporate Defendants and Individual Defendant Strauss deducted payments for health insurance premiums from employees' paychecks throughout May and June 2022, causing employees to believe their medical expenses would be covered under the plan.

147.     Despite deducting payments from employees' paychecks, Corporate Defendants and Individual Defendant Strauss failed to pay the premiums required to continue employees' insurance coverage.

148.     In or about July 2022, Corporate Defendants and Individual Defendant Strauss instructed the companies' health insurance carrier to cancel health insurance coverage retroactively to May 1, 2022.

149.     The actions of Corporate Defendants and Individual Defendant Strauss violated their duty of care and loyalty as fiduciaries to act in the interest of plan participants and beneficiaries pursuant to 29 U.S.C. § 1104(a)(1).

150.     Therefore, Plaintiffs are entitled to relief pursuant to 29 U.S.C. § 1132(a)(3), placing them in the position they would have been in if Corporate Defendants and Individual Defendant Strauss had not breached their fiduciary duties.

**SEVENTH CAUSE OF ACTION: VIOLATION OF ERISA FIDUCIARY DUTY
UNDER  29 U.S.C. § 1132 (c)(1)
As against Corporate Defendants and Individual Defendant Strauss**

151. Plaintiff alleges and incorporates by reference the allegations contained in all preceding paragraphs.

152. Corporate Defendants and Individual Defendant Strauss were fiduciaries with respect to employees' health insurance plans as defined in 29 U.S.C. § 1002(21)(A).

153. Corporate Defendants and Individual Defendant Strauss violated their fiduciary duties under ERISA, 29 U.S.C. § 1132(c)(1), by failing to comply with the notice requirements of COBRA, 29 U.S.C. § 1166(a).

154. The actions of Corporate Defendants and Individual Defendant Strauss violated their duty of care and loyalty as fiduciaries to act in the interest of plan participants and beneficiaries pursuant to 29 U.S.C. § 1104(a)(1).

155. Therefore, Plaintiffs are entitled to relief pursuant to 29 U.S.C. § 1132(c)(1), placing them in the position they would have been in if Corporate Defendants and Individual Defendant Strauss had not breached their fiduciary duties.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for the following relief:

a. That, at the earliest possible time, Plaintiffs through their counsel be permitted to give notice of this collective action, or that the Court issue such notice of this collective action, or that the Court issue such notice to all persons who are presently, or have at any time during the three years immediately preceding the filing of this suit, up through and including the date of the Court's issuance of court-supervised notice, been employed by Defendants. Such notice shall inform them that this civil action has been filed, of the

nature of the action, and of their right to join this lawsuit if they believe they were denied proper hourly compensation and overtime wages;

b.  Certification of this case as a class action pursuant to Fed. R. Civ. P. 23;

c.  Certification of this case as a collective action pursuant to 29 U.S.C. § 216(b);

d.  Designation of the named Plaintiffs Nathaniel Agudelo, Helen Owens, Holly Keith, and Amanda Cooper as class representatives and designation of the undersigned counsel of record as class counsel;

e.  Unpaid wages, back pay, front pay, compensatory damages, punitive damages,  attorneys' fees, costs, and interest pursuant to 29 U.S.C. § 201 *et seq.* and the NYLL § 190*;*

f.  An additional and equal amount in unpaid wages as liquidated damages pursuant to 29 U.S.C. § 201 *et seq.*;

g.  Equitable relief pursuant to ERISA § 502(a)(3), including a "surcharge" remedy which would provide monetary compensation to Plaintiffs for their uncovered medical expenses from May 1, 2022, through July 31, 2022, and/or equitable estoppel placing Plaintiffs in the position they would have occupied but for Defendants' breach of their fiduciary duty under ERISA;

h.  Statutory damages pursuant to NYLL §§ 193, 198;

i.  Statutory damages pursuant to 29 U.S.C. § 2101 *et seq.* and N.Y. Labor Law § 860(g);

j.  Statutory damages pursuant to 29 U.S.C. § 1132(c)(1), as modified by 29 C.F.R. § 2575.502c–1; and

k.  Issuance of a declaratory judgement that the practices complained of herein are unlawful under the FLSA, ERISA, COBRA, NYLL, WARN Act and NY WARN Act, and a permanent injunction against Defendants' continued engagement in such practices.

## DEMAND FOR TRIAL BY JURY

Pursuant to FRCP 38(b), Plaintiff demands a trial by jury on all question of fact raised by

the Complaint.

Dated: New York, New York
      October 17, 2022

                                    **MENKEN SIMPSON & ROZGER LLP**

                                  By: _/s/Brenna Rabinowitz_____
                                            Brenna Rabinowitz
                                            Bruce Menken
                                            Scott Simpson
                                            80 Pine St., 33rd Fl.
                                            New York, NY 1005
                                            (212) 509-1616
                                            brabinowitz@nyemployeelaw.com
                                            bmenken@nyemployeelaw.com
                                            ssimpson@nyemployeelaw.com

                                    *Attorneys for Plaintiffs and the Rule 23 Proposed Class*
                                    *and FLSA Proposed Collective*