**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------- x

NATHANIEL AGUDELO, HELEN :   Civil Action No. 22-cv-4004
OWENS, AMANDA COOPER, LORI :
STEWARD, MIKE SHIRDEL, JARED :
SAWYER, SCOTT HARVEY, and :   **THIRD AMENDED CLASS AND**
KAREN KELLEY, on behalf of :   **COLLECTIVE ACTION COMPLAINT**
themselves and others similarly situated :
                        :
      *Plaintiffs, and Lead* :   **Jury Trial Demanded**
      *Plaintiffs for the* :
      *Proposed Class,* :
  v. :
                        :
RECOVCO MORTGAGE x
MANAGEMENT LLC, SPROUT
MORTGAGE LLC, MICHAEL
STRAUSS, CHRISTOPHER WRIGHT,
SHEA PALLANTE, and ELLIOT
SALZMAN
      *Defendants*
-------------------------------------------------- 

"Plaintiffs" Nathaniel Agudelo, Helen Owens, Amanda Cooper, Lori Steward, Mike

Shirdel, Jared Sawyer, Scott Harvey, and Karen Kelley, individually and on behalf of themselves

and all others similarly situated, allege as follows:

**NATURE OF THE ACTION**

1.     This is a class action by Plaintiffs and other similarly situated employees of the

Defendants, Recovco Mortgage Management LLC ("Recovco"), Sprout Mortgage LLC ("Sprout")

(together, "Corporate Defendants"), and Michael Strauss, Christopher Wright, Shea Pallante and

Elliot Salzman (collectively, "Individual Defendants"),[1] for recovery of damages by reason of:

    a.   **all Defendants' violation of** the Fair Labor Standards Act, 29 U.S.C.A. § 201 *et*

        *seq.* ("FLSA"); Fair Credit Reporting Act ("FCRA"), Article 6 of the New York

---

[1] References to "Defendants" include all Defendants, both Corporate and Individual.

Labor Law, N.Y. Lab. Law § 190 *et seq.* ("NYLL"); California WARN Act, Cal. Lab. Code § 1400 *et seq.*; Cal. Lab. Code §§ 1182.12, 1184, and 1197 (Failure to Pay Minimum Wages); Cal. Lab. Code §§ 510, 1194, 1198 (Failure to Pay Overtime Wages); Cal. Bus. and Prof. Code §§ 17200, et seq. (Unlawful Business Practices), Cal. Lab. Code §§ 221 and 223 (Unlawful Deductions); Cal. Lab. Code §§ 2802 (Failure to Reimburse); Cal. Lab. Code §§ 201, 202, 203 (Failure to Pay Wages When Due); Cal. Lab. Code § 227.3 (Failure to Pay Vacation Wages); Cal. Lab. Code § 512 (Failure to Provide Compliant Meal Periods or Pay Premium Wages); Cal. Lab. Code § 226.7 (Failure to Provide Compliant Rest Breaks or Pay Premium Wages); Cal. Lab. Code § 226(a) (Failure to Provide Timely and Accurate Wage Statements); Cal. Lab. Code § 204 (Failure to Properly Attribute Wages); Cal. Lab. Code §§ 432.5, 432.6, and 925 (Unlawful Contract Provisions); Cal. Lab. Code § 2751 (Unlawful Business Practices Relating to Commissions); Private Attorneys General Act ("PAGA"), Cal. Lab. Code §§ 2698 *et seq.*; Fair Credit Reporting Act; and Investigative Consumer Reporting Agencies Act; and

b. **Corporate Defendants' violation of** the Plaintiffs' rights under the federal Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101 *et seq.* (the "WARN Act"); and the New York Worker Adjustment and Retraining Notification Act (the "NY WARN Act"), N.Y. Labor Law § 860 *et seq.* (together, the "WARN Acts"); and

c. **Corporate Defendants' and Strauss' (the "ERISA Defendants") violation of** their fiduciary duties pursuant to the Employee Retirement Income Security Act

("ERISA"), 29 U.S.C. §§ 1132(a)(3) and 1132(c)(1), and the Consolidated Omnibus Budget Reconciliation Act ("COBRA"), 29 U.S.C. § 1166(a).

2.      Plaintiffs Nathaniel Agudelo, Helen Owens, Amanda Cooper, Lori Steward, Mike Shirdel, Jared Sawyer, and Scott Harvey (the "Nationwide Shutdown Plaintiffs"), on behalf of themselves and the "Nationwide Shutdown Class," defined as "All employees of Sprout Mortgage whose employment was terminated on or about July 6, 2022," bring this action pursuant to (a) the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* and specifically the collective action provision of the FLSA, 20 U.S.C. § 216(b), to remedy violations of the wage and hour provisions of the FLSA by all Defendants that have deprived Plaintiffs and others similarly situated of their lawful wages; and (b) Fed. R. Civ. P. 23, for Corporate Defendants' violations of the federal WARN Act, 29 U.S.C. § 2101 *et seq.*; and ERISA Defendants' violations of ERISA, 29 U.S.C. §§ 1132(a)(3) and 1132(c)(1), and COBRA, 29 U.S.C. § 1166(a).

3.      Plaintiff Nathaniel Agudelo brings this action on behalf of himself and the "New York Shutdown Class," defined as "All employees of Sprout Mortgage who worked between June 16, 2022, and July 6, 2022, whose employment was terminated on July 6, 2022, and who were residents of New York on July 6, 2022," pursuant to Fed. R. Civ. P. 23, for all Defendants' violations of the NY WARN Act, N.Y. Labor Law § 860 *et seq.*; and New York Labor Law ("NYLL") § 190 *et seq.*

4.      Plaintiffs Lori Steward, Mike Shirdel, Jared Sawyer, and Scott Harvey (the "California Shutdown Plaintiffs")[2] also bring this action on behalf of themselves and the "California Shutdown Class," defined as "All employees of Sprout Mortgage whose employment

---

[2] The "Shutdown Plaintiffs" refers collectively to the Nationwide Shutdown Plaintiffs, New York Shutdown Plaintiffs, and California Shutdown Plaintiffs. The "Shutdown Employees" or the "Shutdown Class" refers collectively to Similarly Situated Employees in the Nationwide Shutdown Class, New York Shutdown Class, and California Shutdown Class.

was terminated on or about July 6, 2022, and who were residents of California on July 6, 2022," pursuant to Fed. R. Civ. P. 23, for all Defendants' violations of the California WARN Act, Cal. Lab. Code § 1400 *et seq.*; Cal. Bus. and Prof. Code §§ 17200, et seq. (Unlawful Business Practices); Cal. Lab. Code §§ 221 and 223 (Unlawful Deductions); Cal. Lab. Code § 2802 (Failure to Reimburse); Cal. Lab. Code § 227.3 (Failure to Pay Vacation Wages); Cal. Lab. Code § 204 (Failure to Properly Attribute Wages); and Cal. Lab. Code §§ 201, 202, 203 (Failure to Pay Wages When Due).

5.     Plaintiffs Lori Steward, Mike Shirdel, Jared Sawyer, Scott Harvey, and Karen Kelley (the "California Labor Plaintiffs") also bring this action on behalf of themselves and the "California Labor Class," defined as "All employees of Sprout Mortgage who worked for Sprout Mortgage while residing in California between February 22, 2016, and July 6, 2022," pursuant to Fed. R. Civ. P. 23, for violations of Cal. Lab. Code §§ 1182.12, 1184, and 1197 (Failure to Pay Minimum Wages); Cal. Lab. Code §§ 510, 1194, 1198 (Failure to Pay Overtime Wages); Cal. Bus. and Prof. Code §§ 17200, et seq. (Unlawful Business Practices); Cal. Lab. Code §203 (Waiting Time Penalties); Cal. Lab. Code § 512 (Failure to Provide Compliant Meal Periods or Pay Premium Wages); Cal. Lab. Code § 226.7 (Failure to Provide Compliant Rest Breaks or Pay Premium Wages); Cal. Lab. Code § 226(a) (Failure to Provide Timely and Accurate Wage Statements); Cal. Lab. Code §§ 432.5, 432.6, and 925 (Unlawful Contract Provisions); Cal. Lab. Code § 2751 (Unlawful Business Practices Relating to Commissions); Private Attorneys General Act ("PAGA"), Cal. Lab. Code §§ 2698 *et seq.*; California Fair Credit Reporting Act; and California Investigative Consumer Reporting Agencies Act.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 as this action arises in part under 29 U.S.C. § 201 *et seq*.

7.     This Court also has subject matter jurisdiction pursuant to 29 U.S.C. § 2104(a)(5).

8.     This Court also has personal jurisdiction over the ERISA Defendants pursuant to 29 U.S.C. § 1132(e)(2).

9.     The Court's supplemental jurisdiction over Plaintiffs' state law claims is invoked pursuant to 28 U.S.C. § 1367, which confers supplemental jurisdiction over all non-federal claims arising from a common nucleus of operative facts.

10.     Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b), as a substantial part of the actions comprising the claims for relief occurred within this judicial district.

11.     Venue is further proper in this District because Defendants Sprout, Recovco, Strauss, and Wright are New York residents and reside in this district.

12.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## PARTIES

13.     Plaintiff Nathaniel Agudelo is an adult individual who, at all times relevant to this Complaint, has been a resident of South Floral Park, New York.

14.     At all relevant times, Agudelo was employed as a Closing Disclosure Specialist at Sprout Mortgage.

15.     Plaintiff Helen Owens is an adult individual residing in New Jersey who worked remotely, reporting to Defendants' New York Office located in East Meadow, New York.

16.     At all relevant times, Owens was employed as a Closing Disclosure Specialist at Sprout Mortgage.

17.     Plaintiff Amanda Cooper is an adult individual residing in Pennsylvania who worked remotely, reporting to Defendants' New York Office located in East Meadow, New York.

18.     At all relevant times, Cooper was employed as Vice President of Credit at Sprout Mortgage.

19.     Plaintiff Lori Steward was employed by Defendant in California from June of 2020 to July 6, 2022, and worked for Defendant in San Diego, California.

20.     Plaintiff Mike Shirdel was employed by Defendant in California from June of 2019 to July 6, 2022, and worked for Defendant in Anaheim, California.

21.     Plaintiff Sawyer is a resident of California. Sawyer worked for Defendants in California from approximately October 2021 until July 2022. He was assigned to Defendants' Irvine office. During his employment, he held the positions of Branch Manager and Vice President of Distributive Retail. He was a commission-eligible employee who earned and was paid commissions based on a calendar month.

22.     Plaintiff Harvey is a resident of California. Harvey worked for Defendants in California from approximately March 2022 until July 2022. He was assigned to Defendants' Irvine office. During his employment, he held the position of Senior Mortgage Loan Officer and was classified as a non-exempt employee. He was also a commission-eligible employee who earned and was paid commissions based on a calendar month.

23.     Plaintiff Karen Kelley, at all relevant times, has been a resident of the State of California and worked for Defendants from California.

24. At all times relevant to this Complaint, Plaintiffs were employees of Defendants within the meaning of the FLSA, 29 USC § 203(e), NYLL § 190(2).

25. Written consent forms for Plaintiffs to bring this action as a collective action under the FLSA have been previously filed, or are filed contemporaneously with this Third Amended Complaint.

26. Defendant Recovco Mortgage Management LLC ("Recovco") is a foreign Limited Liability Company incorporated in Delaware and registered in the State of New York, with offices located at 90 Merrick Avenue, East Meadow, NY 11554.

27. Defendant Sprout Mortgage LLC ("Sprout") is a foreign Limited Liability Company incorporated in Delaware and not registered in the State of New York, with offices located at 90 Merrick Avenue, East Meadow, NY 11554

28. Upon information and belief, at all relevant times, Corporate Defendants operated as a single integrated enterprise and held themselves out as Recovco and Sprout interchangeably.

29. For example, upon information and belief, employees of Corporate Defendants received paychecks and offer letters purporting to be from Sprout, but employees' ADP benefits accounts are affiliated with Recovco.

30. Further, a filing with the Rhode Island Secretary of State indicates that Recovco Mortgage LLC used the fictitious name of "Sprout Mortgage" in that state from September 2018 to April 2020.

31. Further, while no entity named "Sprout Mortgage LLC" is registered with the New York Secretary of State, "Recovco Mortgage LLC" is registered in New York as a foreign LLC incorporated in Delaware with the same address as Sprout Mortgage.

32.     Sprout and Recovco shared centralized corporate functions, including having the same Director of Human Resources at both companies.

33.     Sprout and Recovco also shared a centralized benefits structure. For example, although, upon information and belief, Sprout technically shut down on July 6, 2022, and Recovco did not, Recovco employees' health insurance benefits were suddenly terminated at the same time as Sprout employees' benefits because all employees of both companies were covered under the same health insurance plan.

34.     Moreover, upon information and belief, after Sprout shut down on July 6, 2022, the few former Sprout employees who remained to "wind down" the business were transferred to being nominal employees of Recovco without signing any additional offer letter or other paperwork formalizing the transfer.

35.     Corporate Defendants employed, jointly or as a single integrated enterprise, over 100 employees through their office in East Meadow, NY (the "NY Office").

36.     According to its website, "Recovco is an industry leader in both quality and operational excellence and has proven results of serving clients with due diligence, valuations, quality control, underwriting, and auditing services for banks, mortgage companies, and other market participants. Recovco ensures that the loans of today and the past are pristine and free of possible unforeseen risks and in compliance with all laws and regulations." *See* https://www.recovcomortgage.com/about. Recovco's website also indicates it has over 160 full-time employees. *Id.*

37.     At all relevant times, Corporate Defendants employed more than 100 employees who in the aggregate worked at least 4,000 hours per week exclusive of hours of overtime within the United States.

38.     Individual Defendant Michael Strauss is an adult individual who at all relevant times was and is the CEO of Sprout. Upon information and belief, Strauss directed various other individuals not to pay the outstanding wages owed to the terminated employees.

39.     Upon information and belief, Strauss resides in New York at 367 Great Plains Rd. in Southampton, New York, and also owns a 7,643 square foot townhouse at 610 Park Avenue in Manhattan. As of the date of this Complaint's filing, the Manhattan townhouse was listed for sale on the real estate website Zillow for $19.5 million. *See* https://www.zillow.com/homedetails/610-Park-Ave-APT-16E-New-York-NY-10065/31533511_zpid/?.

40.     Upon information and belief, Strauss directed the closure of Defendants' business and the non-payment of all employees' paychecks from New York.

41.     As the CEO of Sprout, who worked out of the company's New York office, Strauss had the authority to hire and fire employees and to set their rate of pay and other conditions of employment.

42.     Strauss also exercised authority and control over employees' health insurance plans, including by instructing that the plans be canceled retroactively to May 1, 2022.

43.     Individual Defendant Christopher Wright is an adult individual who at all relevant times was Sprout's Chief Financial Officer ("CFO").

44.     As CFO, Wright exercised authority and control over employees' rates of pay and conditions of employment because his approval was required for raises and promotions.

45.     Further, Wright was responsible for hiring employees who worked under him in the company's financial department.

46.     Upon information and belief, Wright continued working for Sprout and Recovco following the shutdown, and was responsible for winding down the companies' financial affairs,

including making payments to vendors, creditors, and the handful of employees who were kept on following the shutdown. Wright was therefore at least in part responsible for the companies' continued failure to pay any wages to employees following the shutdown.

47.     Individual Defendant Shea Pallante is an adult individual who at all relevant times was Sprout's President and Chief Production Officer.

48.     Upon information and belief, Defendant Pallante resided in California for part of the relevant time period, and in Tennessee for part of the relevant time period.

49.     Upon information and belief, Pallante acted as a managing agent, officer, director, and/or employee of the Corporate Defendants, and caused and directed the activities alleged in this action.

50.     Individual Defendant Elliot Salzman is an adult individual who at all relevant times was Sprout's Executive Vice President and Chief Credit Officer.

51.     Upon information and belief, Salzman resides in Long Beach, New York, and at all relevant times worked from Defendants' New York office.

52.     Salzman had the authority to hire and fire employees and to set their rate of pay and other conditions of employment.

53.     Salzman was responsible for approving the salaries and promotions of all employees under the umbrella of credit and due diligence at Sprout.

54.     For example, Plaintiff Amanda Cooper was promoted twice, with attendant pay raises, while working for Defendants. Each time she received an offer letter confirming her new position and pay, it was signed by Defendant Salzman. Further, when Cooper's direct supervisor Christine Moore was out of the office, Cooper reported directly to Salzman.

55. Salzman also signed the offer letter received by Sprout employee Cedrick Queen when he was hired, and was the manager of Queen's department at Sprout.

56. Defendant Salzman also directly supervised Holly Keith, Sprout's former Senior Vice President ("SVP") of Secondary Due Diligence, and Christine Moore, Sprout's former SVP of Underwriting Credit, and his approval was required for these employees to receive raises or to make any new hires.

57. Further, after the shutdown, Defendant Salzman offered Keith 60% of the wages she was owed in exchange for her continuing to work to wind down Sprout's business.

58. Upon information and belief, Defendant Salzman was also responsible for developing and/or running the company's training programs.

59. Salzman's own comments on social media suggest he perceived himself as an "owner" of Sprout. On May 31, 2020, he posted on Facebook that:



60. According to his LinkedIn page, the only company Salzman was associated with at that time was Sprout.

61.     Until their termination by Defendants, the New York Shutdown Plaintiffs and other similarly situated persons were employees of Defendants who resided in New York and/or worked at Defendants' East Meadow, NY office (the "NY Office") and who were terminated as part of or as a reasonably foreseeable result of the office shutdown ("plant closing") ordered and carried out by the Defendants on or about July 6, 2022.

62.     On or about July 6, 2022, Defendants ordered the termination of the Shutdown Plaintiffs' employment together with the termination of all other Shutdown Employees as part of plant closings as defined by the WARN Act, NY WARN Act, and California WARN Act, for which the terminated employees were entitled to receive 60 days' notice under the WARN Act and California WARN Act, and 90 days' notice under the NY WARN Act.

63.     Upon information and belief, at or about the time that the Shutdown Plaintiffs were discharged on or about July 6, 2022, Defendants discharged over 500 other employees without cause on the part of the employees.

64.     Upon information and belief, Defendant Strauss instructed other individuals not to issue the paychecks that were due to be sent out to all Sprout employees on July 7, 2022, and July 22, 2022.

65.     Consequently, the Plaintiffs, along with the Shutdown Employees, did not receive their paychecks on July 7, 2022, which would have paid them for their work for Corporate Defendants from June 16, 2022, through June 30, 2022.

66.     The Shutdown Plaintiffs and the Shutdown Employees also did not receive their paychecks on July 22, 2022, which would have paid them for their work from July 1, 2022, through their termination on July 6, 2022.

## FLSA COLLECTIVE ACTION ALLEGATIONS

67.     The Shutdown Plaintiffs bring their FLSA claims on behalf of themselves and all similarly situated persons who were employed by Corporate Defendants at any point from June 16, 2022, through July 6, 2022, and who did not receive minimum wages for all hours worked (the "Collective Class Members").

68.     Corporate Defendants are liable under the FLSA for, *inter alia*, failing to properly compensate the Shutdown Plaintiffs, and as such, notice should be sent to all others similarly situated. There are numerous similarly situated former employees of Corporate Defendants who have been similarly underpaid in violation of the FLSA and who would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join.

69.     The Shutdown Plaintiffs have spoken to dozens of other employees who were terminated around the country, and who have confirmed they have not been paid.

70.     Over 300 former employees of Defendants have contacted Plaintiffs' counsel expressing interest in joining the instant lawsuit.

71.     To date, approximately 120 former employees of Defendants have filed opt-in forms consenting to become collective members in this lawsuit.

72.     Multiple news articles have also reported that Corporate Defendants withheld the paychecks that were supposed to be sent out to all employees on July 7, 2022. *See* https://nationalmortgageprofessional.com/news/sprout-mortgage-shuts-down; https://www.housingwire.com/articles/sprout-mortgage-to-shutter/.

73.     The majority of the FLSA Collective Class members are unknown, and information regarding the precise number of Collective Class members is in the sole control of Defendants.

Upon information and belief, there are at least 100 FLSA Collective Class members, and could be significantly more.

## CLASS ACTION ALLEGATIONS – ALL CLASSES

74. A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation, where an individual plaintiff lacks the financial resources to vigorously prosecute a lawsuit in federal court against corporate Defendants.

75. Defendants have acted on grounds generally applicable to the Class, thereby making relief, including declaratory and/or injunctive relief, appropriate for the Class.

76. Concentrating all the potential litigation concerning the rights of the Class members in this Court will avoid a multiplicity of suits (and resolve the issues created by the filing of multiple lawsuits arising from the facts of this case), will conserve judicial resources and the resources of the parties and is the most efficient means of resolving the claims of all the Class members under the WARN Acts, ERISA, COBRA, FLSA, NYLL, and California Labor Code, PAGA, ICRAA, and FCRA.

77. On information and belief, the identity of the Class members is contained in the books and records of Defendants.

78. On information and belief, a recent residential address of each of the Class members is contained in the books and records of Defendants.

79. On information and belief, the rate of pay and benefits, including health insurance benefits, that was being paid by Defendants to each Class member at the time of his/her termination are contained in the books and records of Defendants.

## CLASS ACTION ALLEGATIONS – SHUTDOWN CLASS

80.     The Shutdown Plaintiffs sue on their own behalf and on behalf of a class and several sub-classes of persons under Fed. R. Civ. P. 23(a), (b)(3): the Nationwide Shutdown Class, New York Shutdown Class, and California Shutdown Class (collectively, the "Shutdown Class"). As noted above, the persons in the Shutdown Class are so numerous that joinder of all members is impracticable. Upon information and belief there are over 540 Class Members.

81.     There are questions of law and fact common to the Shutdown Class Members that predominate over any questions affecting only individual members, including:

a.  Whether Defendants employed and/or jointly employed Plaintiffs and putative Shutdown Class Members under New York law and California law;

b.  Whether Defendants paid Shutdown Class Members lawful wages, benefits, commissions, and reimbursements under the NYLL and California Labor Code;

c.  Whether Defendants accurately recorded and paid non-exempt employees for all working hours;

d.  Whether Defendants provided timely and complete wage statements that accurately itemized all required information, including but not limited to final wage statements;

e.  Whether Corporate Defendants discharged Shutdown Class Members without cause on their part or as the reasonably foreseeable consequence of the plant closing or mass layoff ordered by Defendants at the NY Office on or about July 6, 2022, and whether the Shutdown Class Members are therefore "affected employees" within the meaning of the federal, New York, and California WARN Acts;

f.  Whether all Shutdown Class members enjoyed the protection of the WARN Acts;

g.  Whether Defendants violated their fiduciary duties towards Shutdown Plaintiffs under ERISA;

h.  Whether Defendants' failure to timely pay all wages owed upon termination of employment was willful;

i.  Whether Defendants violated the notice requirements of COBRA.

82. The Shutdown Plaintiffs' claims are typical of the claims of the Shutdown Class.

83.    The Shutdown Plaintiffs and their counsel will fairly and adequately protect the interests of the Shutdown Class.

84.    Shutdown Plaintiffs bring claims under the WARN Acts, FLSA, ERISA, COBRA, NYLL, and California Labor Code on behalf of themselves and all similarly situated persons ("Class Members") formerly employed by Defendants.

85.    The Shutdown Plaintiffs and each person they seek to represent herein were discharged without cause on their part or as the reasonably foreseeable consequence of the plant closing or mass layoff[3] ordered by Defendants on or about July 6, 2022, and are "affected employees" within the meaning of 29 U.S.C. § 2101 (a)(5), N.Y.L.L. § 860-a(1), and Cal. Lab. Code § 1400.

86.    The Shutdown Plaintiffs bring this action on their own behalf and, pursuant to the WARN Acts, ERISA, COBRA, the NYLL, the California Labor Code, and Rules 23(a) and (b) of the Federal Rules of Civil Procedure, on behalf of all other similarly situated former employees of Defendants who were terminated on or about July 6, 2022.

---

[3] Although Shutdown Plaintiffs were told on July 6, 2022, that Sprout was "closing its doors," suggesting the mass termination was a "Plant Closing," Plaintiffs' investigation has revealed there may still be a handful of employees who remain employed by Sprout. The exact nature of the shutdown remains known only to Defendants. Therefore, Plaintiffs alternatively allege that the closure constituted a "Mass Layoff."

87.     The California WARN Act, Cal. Labor Code § 1400, *et seq*. requires employers at a "covered establishment" (75 or more employees) to give 60 days' notice before a mass layoff (of 50 or more employees), a relocation, or a cessation of doing business.  Employers must give notice not only to employees, but also to the relevant California government agency, the Employment Development Department.  *See* Cal. Labor Code § 1401(a).

88.     Employers are excused from providing notice of a mass layoff only if there is a "physical calamity" (such as an earthquake) or "act of war." Cal. Labor Code § 1401(c).

89.     If an employer fails to give notice of a mass layoff, relocation, or cessation of business, its employees are entitled to recover: up to 60 days of wages (at their regular rate of pay), and the value of any employment benefits that the employee would have received during that time (such as payment of medical expenses under a health insurance plan, or matching contributions to a 401(k) retirement plan). *See* Cal. Labor Code § 1402.

90.     PLAINTIFFS allege, upon information and belief, DEFENDANTS did not file a WARN notice with the California Employment Development Department.

91.     On or about July 6, 2022, Defendants terminated the Shutdown Plaintiffs' employment as part of a Plant Closing or Mass Layoff as defined by 29 U.S.C. § 2101(a)(2), (3); N.Y.L.L. § 860-a(6); and Cal. Lab. Code § 1400, for which they were entitled to receive sixty (60) days' advance written notice under the WARN Act and California WARN Act, and ninety (90) days' advance written notice under the NY WARN Act.

92.     Defendants failed to give Shutdown Plaintiffs the statutorily required advance written notice of the Plant Closing or Mass Layoff in violation of the WARN Acts.

93. The need for notice to Shutdown Plaintiffs under the NY WARN Act was foreseeable on April 7, 2022, 90 days before Shutdown Plaintiffs' employment was terminated, due to industry conditions known to Defendants' executives.

94. The need for notice to Shutdown Plaintiffs was foreseeable under the WARN Act and California WARN Act on May 7, 2022, 60 days before Shutdown Plaintiffs' employment was terminated, due to industry conditions known to Defendants' executives.

95. The need for notice to Shutdown Plaintiffs under the WARN Acts was foreseeable by Defendants because, upon information and belief, Sprout missed payments to multiple vendors for several months prior to July 6, 2022.

96. Upon information and belief, Sprout also failed to pay millions of dollars in payroll taxes and Strauss was in the process of working out a payment plan with the IRS prior to the July 6, 2022, shutdown.

97. Upon information and belief, at or about the time the Shutdown Plaintiffs were discharged on or about July 6, 2022, Defendants discharged approximately 548 Similarly Situated Employees without cause on their part.

98. Pursuant to Fed. R. Civ. P. 23 and the WARN Act, 29 U.S.C. § 2104(a)(5), the Shutdown Plaintiffs maintain this claim on behalf of themselves and each of the other Similarly Situated Employees.

99. Each of the other Similarly Situated Employees is similarly situated to the Shutdown Plaintiffs in respect to his or her rights under the WARN Acts, the NYLL, and the California Labor Code.

100. The Shutdown Plaintiffs and other Similarly Situated Employees were discharged by Defendants without cause on their part.

101. The Defendants failed to pay the Shutdown Plaintiffs and other Similarly Situated Employees their respective wages, salary, commissions, bonuses, accrued holiday pay and accrued vacation for sixty (60) calendar days following their respective terminations and failed to provide employee benefits under ERISA in respect to them for sixty (60) calendar days from and after the dates of their respective terminations.

102. At all relevant times, Defendants had the right to control, and did in fact control, the hours, hourly pay, assignments and schedules of the named Shutdown Plaintiffs and all Similarly Situated Employees.

103. As described above, Defendants failed to pay the Shutdown Plaintiffs and Class Members minimum wages, as required by law, when they failed to pay Plaintiffs any wages at all for work performed during the period of June 16, 2022, through July 6, 2022.

104. Corporate Defendants and Strauss also violated their fiduciary duty under ERISA by continuing to make routine deductions for health insurance premiums from employees' paychecks while failing to pay the company's insurance carrier for coverage, then ordering the termination of employees' coverage retroactive to May 1, 2022.

105. Corporate Defendants and Strauss further violated their fiduciary duty under ERISA, 29 U.S.C. § 1132(c)(1), by failing to comply with the notice requirements of COBRA, 29 U.S.C. § 1166(a).

## CLASS ACTION ALLEGATIONS – CALIFORNIA LABOR CLASS

The California Labor Class Plaintiffs sue on their own behalf and on behalf of a class of persons under Fed. R. Civ. P. 23(a), (b)(3), the "California Labor Class." As noted above, the persons in the California Labor Class are so numerous that joinder of all members is impracticable. Upon information and belief there are at least 460 Class Members.

## A.    **Unreimbursed Business Expenses**

106.    Defendants as a matter of corporate policy, practice, and procedure, intentionally, knowingly, and systematically failed to reimburse and indemnify the California Labor Class Members for required business expenses incurred by the California Labor Class Members in direct consequence of discharging their duties on behalf of Defendant.

107.    Under California Labor Code Section 2802, employers are required to indemnify employees for all expenses incurred in the course and scope of their employment. Cal. Lab. Code § 2802 expressly states that "an employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions, believed them to be unlawful."

108.    In the course of their employment, Defendants required California Labor Class Members to use their personal cell phones as a result of and in furtherance of their job duties. Specifically, California Labor Class Members were required to use their personal cell phones and personal home internet in order to perform work related tasks.

109.    Further, California Labor Class Members were also required to incur personal expenses for travel, meals, and payments to various business vendors on behalf of and in furtherance of their job duties for Defendant.

110.    However, Defendants unlawfully failed to reimburse California Labor Class Members for the use of their personal cell phones, personal home internet, and personal expenses for travel, meals and payments to various business vendors. As a result, in the course of their employment with Defendant, the California Labor Class Members incurred unreimbursed business expenses that included, but were not limited to, costs related to the use of their personal cell phones,

personal home internet, and personal expenses for travel, meals and payments to various business vendors, all on behalf of and for the benefit of Defendants.

## B. <u>Unlawful Deductions</u>

111.    Defendants, from time-to-time unlawfully deducted wages from certain California Labor Class Members' pay without explanations and without authorization to do so or notice to California Labor Class Members.  Such unlawful deductions include, but are not limited to, health insurance premiums despite Defendant failing to provide health coverage to the California Labor Class Members since May 1, 2022.  Further, Defendants from time to time unlawfully deducted wages from California Labor Class Members' pay for life insurance premiums, short- and/or long-term disability insurance premiums, and 401(k) contributions despite failing to ensure those deductions were properly allocated to said life insurance, short- and/or long-term disability insurance, and 401(k) policies. As a result, Defendant violated Labor Code § 221.

112.    Specifically, as to certain California Labor Plaintiffs, Defendants unlawfully deducted wages for health insurance premiums despite failing to provide health insurance coverage from May 1, 2022, until the shutdown of Sprout Mortgage on July 6, 2022.

113.    Defendants also failed to reimburse Plaintiffs for required business expenses related to the personal expenses incurred for the use of their personal cell phones, personal home internet, and personal computers, on behalf of and in furtherance of their employment with Defendant.

114.    To date, Defendants have not fully paid Plaintiffs all compensation still owed to them or any penalty wages owed to them under Cal. Lab. Code § 203.

## C. <u>Failure to Pay Vested, Unused Vacation Wages</u>

115.    Further, upon California Labor Class Members' separation of employment, they had not used all of their vested vacation and thus their unused, vested vacation was required to

have been paid at their final rate upon separation of employment. Defendant, however failed to pay the vested vacation time, and when they did, they paid it at the wrong rate.  As a result, Defendants violated Labor Code §227.3.

### D. Violations of FCRA and ICRAA

116.     For at least five years prior to the filing of this action and through to the present, Defendants unlawfully conducted credit and/or background checks of job applicants including the California Labor Class Members in violation of federal and state law.

117.     Defendants willfully violated the Fair Credit Reporting Act ("FCRA") and California Investigative Consumer Reporting Agencies Act ("ICRAA") by not providing a disclosure and authorization that was in a stand-alone document and with a notice that was clear and conspicuous prior to conducting a background check.

118.     This action seeks recovery of statutory damages and penalties, penalties under California Private Attorneys General Act of 2004 ("PAGA"), and punitive damages on behalf of Plaintiff and the Class for the maximum period allowed.

### SHUTDOWN CLASS  INDIVIDUAL FACTUAL ALLEGATIONS

119.   Plaintiff Nathaniel Agudelo worked for Defendants as a Closing Disclosure Specialist from approximately November 1, 2020, until he was terminated without cause on July 6, 2022.

120.   Plaintiff Helen Owens worked for Defendants as a Closing Disclosure Specialist from approximately December 1, 2020, until she was terminated without cause on July 6, 2022.

121.   Plaintiff Amanda Cooper worked for Defendants as Vice President of Credit from approximately March 2020 until she was terminated without cause on July 6, 2022.

122.   Plaintiff Lori Steward was employed by Defendant as an Account Manager from June of 2020 to July 6, 2022.

123.     Plaintiff Mike Shirdel was employed by Defendant as a Digital Marketing Manager from June of 2019 to July 6, 2022.

124.     Plaintiff Sawyer worked for Defendants from approximately October 2021 until July 2022. During his employment, he held the positions of Branch Manager and Vice President of Distributive Retail.

125.     Plaintiff Harvey worked for Defendants as a Senior Mortgage Loan Officer from approximately March 2022 until July 2022.

126.     On the afternoon of July 6, 2022, all employees of Defendants received an invitation to a videoconference.

127.     Upon information and belief, over 300 employees, at least one-third of which were employed through the NY Office, joined the videoconference. *See* https://nationalmortgageprofessional.com/news/sprout-mortgage-faucet-just-got-turned.

128.     When the employees joined the videoconference, they were told by Shea Pallante who was at all relevant times the President of Sprout Mortgage, that the company would be shut down, everyone's employment was terminated immediately, and they should not return to work tomorrow.

129.     Pallante indicated that employees' health benefits would continue through the end of the month, but upon information and belief refused to confirm whether employees would receive their paychecks the next day.

130.     Employees did not receive their paychecks as scheduled on July 7, 2022, and have not received them to date.

131.     The paychecks due to be distributed on July 7, 2022, would have covered the pay period of June 16, 2022, through June 30, 2022.

132. Many employees also worked during the period from July 1, 2022, through July 6, 2022, and are owed all of their wages for their work during that time period.

133. Moreover, in the weeks following the videoconference, numerous employees, including Plaintiffs, learned that their health insurance premiums had not been paid by the company in months.

134. When employee Holly Keith called her insurance carrier, she was informed that Sprout had requested that employees' health insurance coverage be terminated retroactive to May 1, 2022.

135. Employees of Sprout had payments deducted from their paychecks for health insurance throughout the months of May and June, creating the material misrepresentation that the employees continued to have health coverage through their employer.

136. Upon information and belief, Individual Defendant Strauss instructed Sprout employees to instruct the insurance carrier to retroactively terminate the coverage.

137. Employee Holly Keith underwent medical procedures in or about May 2022 for which she was billed over **$50,000** due to the retroactive cancelation of her coverage.

138. Upon information and belief, numerous other employees received bills for medical procedures they believed were covered by their health insurance, due to the company's retroactive termination of their benefits.

139. For some employees, these bills are financially catastrophic. Upon information and belief, at least two employees were undergoing cancer treatment and have discovered they had no health insurance to cover exorbitantly expensive medical procedures undergone in May, June, and/or July 2022.

140.    Upon information and belief, Corporate Defendants and Strauss failed to provide notice to any employee of their right to continued health insurance coverage under COBRA.

## FIRST CAUSE OF ACTION: FLSA MINIMUM WAGE
### Alleged by Shutdown Plaintiffs against All Defendants

141.    Plaintiffs allege and incorporate by reference the allegations contained in all preceding paragraphs.

142.    Defendants have engaged in a widespread pattern and practice of violating the FLSA, as detailed in this Complaint.

143.    Plaintiffs consent to be parties to this action, pursuant to 29 U.S.C § 216(b).

144.    At all times relevant to this action, Plaintiffs and Class Members were employed by Defendants within the meaning of the FLSA, 29 U.S.C. § 203(d).

145.    At all times relevant to this action, Plaintiffs and Class Members were engaged in commerce and the Corporate Defendants were enterprises engaged in commerce within the meaning of 29 U.S.C. § § 206(A) and 207(a).

146.    Defendants violated the rights of Shutdown Plaintiffs and Class Members by failing to pay them the minimum wage for each hour worked in each discrete work week, in violation of the FLSA, 29 U.S.C § 206(a)(1).

147.    Defendants' failure to pay Shutdown Plaintiffs and Class Members the minimum wage was willful within the meaning of the FLSA, 29 U.S.C. § 255.

148.    Defendants are liable to Shutdown Plaintiffs and Class Members for their unpaid minimum wages, plus an additional equal amount as liquidated damages, reasonable attorney's fees and costs, and any other appropriate relief pursuant to 29 U.S.C. § 216(b).

## SECOND CAUSE OF ACTION: NYLL MINIMUM WAGE
### Alleged by Plaintiff Nathaniel Agudelo Against all Defendants

149.    Plaintiffs allege and incorporate by reference the allegations contained in the preceding paragraphs.

150.    Defendants violated the rights of Agudelo and New York Shutdown Class Members by failing to pay them the minimum wage for each hour worked in violation of the NYLL.

151.    At all times relevant to this action, Plaintiff and Class Members were employed by Defendants within the meaning of the NYLL.

152.    As a result of Defendants' violation of the NYLL, Plaintiff and Class Members are entitled to the minimum rate of pay that they were legally due under the NYLL's minimum wage provisions as well as liquidated damages, interest, attorney's fees.

## THIRD CAUSE OF ACTION: UNLAWFUL WITHHOLDING OF WAGES UNDER NYLL § 193
### Alleged by Plaintiff Agudelo Against all Defendants

153.    Plaintiff alleges and incorporates by reference the allegations contained in the preceding paragraphs.

154.    Defendants violated the rights of Plaintiffs and Class Members by unlawfully withholding their regular wages in violation of the NYLL.

155.    At all times relevant to this action, Plaintiffs and Class Members were employed by Defendants within the meaning of the NYLL.

156.    As a result of Defendants' violation of the NYLL, Plaintiff and Class Members are entitled to recover their withheld wages as well as liquidated damages, interest, attorney's fees.

## FOURTH CAUSE OF ACTION: FEDERAL WARN ACT
### Alleged by Shutdown Plaintiffs against Corporate Defendants

157.    Plaintiffs allege and incorporate by reference the allegations contained in the preceding paragraphs.

158.    At all relevant times, Corporate Defendants employed more than 100 employees who in the aggregate worked at least 4,000 hours per week exclusive of hours of overtime within the United States.

159.    At all relevant times, each Corporate Defendant was an "employer" as that term is defined in 29 U.S.C. § 2101(a)(1), 20 C.F.R. § 639(a) and continued to operate as a business until it ordered a plant closing or mass layoff at the NY Office.

160.    The Corporate Defendants constituted a "single employer" of the Plaintiffs and Class members under the WARN Act.

161.    On or about July 6, 2022, the Corporate Defendants as a single employer ordered a Plant Closing or Mass Layoff.

162.    The Plant Closing or Mass Layoff resulted in "employment losses," as that term is defined by 29 U.S.C. § 2101(a)(2), (3), for at least fifty (50) of Defendants' employees at the NY Office as well as at least 33% of Defendants' workforce at the NY Office, excluding "part-time employees," as that term is defined by the WARN Act, 29 U.S.C. § 2101(a)(8).

163.    The Shutdown Plaintiffs and each of the other members of the Shutdown Class were discharged by Defendants without cause on their part, as part of or as the reasonably foreseeable result of the Plant Closing or Mass Layoff ordered by Defendants at the NY Office.

164.    The Shutdown Plaintiffs and each of the other members of the Shutdown Class are "affected employees" of Defendants within the meaning of 29 U.S.C. § 2101(a)(5).

165. The Defendants were required by the WARN Act to give the Shutdown Plaintiffs and each of the other members of the Class at least 60 days' advance written notice of their termination.

166. The Defendants failed to give the Shutdown Plaintiffs and other members of the Class written notice that complied with the requirements of the WARN Act.

167. Each Shutdown Plaintiff, and each of the other members of the Class, are an "aggrieved employee" of the Defendants as that term is defined in 29 U.S.C. § 2104(a)(7).

168. The Defendants failed to pay the Shutdown Plaintiffs and each of the other members of the Class their respective wages, salary, commissions, bonuses, accrued holiday pay and accrued vacation for 60 days following their respective terminations and failed to provide employee benefits under ERISA, for 60 days from and after the dates of their respective terminations.

## FIFTH CAUSE OF ACTION: NY WARN ACT
### Alleged by Plaintiff Agudelo against Corporate Defendants

169. Plaintiff alleges and incorporates by reference the allegations contained in all preceding paragraphs.

170. At all relevant times, Corporate Defendants employed more than 50 full-time employees.

171. At all relevant times, each Corporate Defendant was an "employer" as that term is defined in NYLL § 860-a(3) and continued to operate as a business until it ordered a plant closing and terminations at the NY Office.

172. On or about July 6, 2022, the Corporate Defendants as a single employer ordered a "Mass Layoff" or "Plant Closing" of the NY Office as defined under NYLL § 860-a(4), (6).

173.     The Mass Layoff or Plant Closing resulted in "employment losses," as that term is defined by NYLL § 860-a(2) for at least twenty five (25) of Defendants' employees at the NY Office as well as at least 33% of Defendants' workforce at the NY Office, excluding "part-time employees," as that term is defined by the NY WARN Act, NYLL § 860-a(5).

174.     Agudelo and each of the other members of the Class were discharged by Defendants without cause on their part, as part of or as the reasonably foreseeable result of the Mass Layoff Plant Closing ordered by Defendants at the NY Office.

175.     The Defendants were required by the NY WARN Act to give the New York Shutdown Plaintiffs and each of the other members of the Class at least 90 days' advance written notice of their termination.

176.     The Defendants failed to give the Agudelo and other members of the Class written notice that complied with the requirements of the NY WARN Act.

177.     Agudelo, and each of the other members of the Class, is an "affected employee" of the Defendants as that term is defined in NYLL § 860-a(1)

178.     The Defendants failed to pay the Agudelo and each of the other members of the Class their respective wages, salary, commissions, bonuses, accrued holiday pay and accrued vacation for 60 days following their respective terminations and failed to provide employee benefits under ERISA, for 60 days from and after the dates of their respective terminations.

### SIXTH CAUSE OF ACTION: VIOLATION OF ERISA FIDUCIARY DUTY UNDER  29 U.S.C. § 1132(a)(3)
### Alleged by Shutdown Plaintiffs against Corporate Defendants and Individual Defendant Strauss

179.     Plaintiffs allege and incorporate by reference the allegations contained in all preceding paragraphs.

180.     Corporate Defendants and Individual Defendant Strauss were fiduciaries with respect to employees' health insurance plans as defined in 29 U.S.C. § 1002(21)(A).

181.     Corporate Defendants and Individual Defendant Strauss deducted payments for health insurance premiums from employees' paychecks throughout May and June 2022, causing employees to believe their medical expenses would be covered under the plan.

182.     Despite deducting payments from employees' paychecks, Corporate Defendants and Individual Defendant Strauss failed to pay the premiums required to continue employees' insurance coverage.

183.     In or about July 2022, Corporate Defendants and Individual Defendant Strauss instructed the companies' health insurance carrier to cancel health insurance coverage retroactively to May 1, 2022.

184.     The actions of Corporate Defendants and Individual Defendant Strauss violated their duty of care and loyalty as fiduciaries to act in the interest of plan participants and beneficiaries pursuant to 29 U.S.C. § 1104(a)(1).

185.     Therefore, Shutdown Plaintiffs are entitled to relief pursuant to 29 U.S.C. § 1132(a)(3), placing them in the position they would have been in if Corporate Defendants and Individual Defendant Strauss had not breached their fiduciary duties.

**SEVENTH CAUSE OF ACTION: VIOLATION OF ERISA FIDUCIARY DUTY
UNDER  29 U.S.C. § 1132 (c)(1)
Alleged by Shutdown Plaintiffs against Corporate Defendants and Individual
Defendant Strauss**

186.     Plaintiffs allege and incorporate by reference the allegations contained in all preceding paragraphs.

187.     Corporate Defendants and Individual Defendant Strauss were fiduciaries with respect to employees' health insurance plans as defined in 29 U.S.C. § 1002(21)(A).

188.     Corporate Defendants and Individual Defendant Strauss violated their fiduciary duties under ERISA, 29 U.S.C. § 1132(c)(1), by failing to comply with the notice requirements of COBRA, 29 U.S.C. § 1166(a).

189.     The actions of Corporate Defendants and Individual Defendant Strauss violated their duty of care and loyalty as fiduciaries to act in the interest of plan participants and beneficiaries pursuant to 29 U.S.C. § 1104(a)(1).

190.     Therefore, Shutdown Plaintiffs are entitled to relief pursuant to 29 U.S.C. § 1132(c)(1), placing them in the position they would have been in if Corporate Defendants and Individual Defendant Strauss had not breached their fiduciary duties.

### EIGHTH CAUSE OF ACTION
### VIOLATION OF CALIFORNIA WARN ACT, CAL. LAB. CODE § 1400 *et seq*.
### Alleged by California Shutdown Plaintiffs against all Defendants

191.     Plaintiffs allege and incorporate by reference the allegations contained in all preceding paragraphs.

192.     Defendants are an "employer" that operates a "covered establishment" under the California WARN Act, Cal. Labor Code § 1400 *et seq*., because Defendants ran a business enterprise that employed 75 or more employees.

193.     Defendants engaged in a "mass layoff" by terminating 50 or more employees within a 30-day period.

194.     None of the exemptions to the notice requirements of the California WARN Act applies.

195.     Defendants willfully violated the California WARN Act by failing to provide the required notice.

196. California Shutdown Plaintiffs and all California Shutdown Class Members have been damaged by Defendants' conduct constituting violations of the California WARN Act and are entitled to damages for their back pay and associated benefits for each day of the violation.

197. Defendants have not acted in good faith nor with reasonable grounds to believe their acts or omissions were not in violation of the California WARN Act.

**NINTH CAUSE OF ACTION**
**Unlawful Business Practices (Cal. Bus. And Prof. Code §§ 17200, *et seq.*)**
**Alleged by California Labor Class Plaintiffs against all Defendants**

198. Plaintiffs allege and incorporate by reference the allegations contained in all preceding paragraphs.

199. Each of the Defendants is a "person" as that term is defined under Cal. Bus. And Prof. Code § 17021.

200. California Business & Professions Code §§ 17200, *et seq.* (the "UCL") defines unfair competition as any unlawful, unfair, or fraudulent business act or practice. Section 17203 authorizes injunctive, declaratory, and/or other equitable relief with respect to unfair competition as follows:

> Any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction. The court may make such orders or judgments, including the appointment of a receiver, as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition, as defined in this chapter, or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition. (Cal. Bus. & Prof. Code § 17203).

201. By the conduct alleged herein, Defendants have engaged and continue to engage in a business practice which violates California law, including but not limited to, the applicable Wage Order(s), the California Code of Regulations and the California Labor Code including Sections 201, 202, 203, 221, 227.3, 1400 *et seq.*, and 2802, for which this Court should issue declaratory and other equitable relief pursuant to Cal. Bus. & Prof. Code § 17203 as may be necessary to

prevent and remedy the conduct held to constitute unfair competition, including restitution of wages wrongfully withheld.

202.     By the conduct alleged herein, Defendants' practices were unlawful and unfair in that these practices violated public policy, were immoral, unethical, oppressive unscrupulous or substantially injurious to employees, and were without valid justification or utility for which this Court should issue equitable and injunctive relief pursuant to Section 17203 of the California Business & Professions Code, including restitution of wages wrongfully withheld.

203.     Therefore, Plaintiffs demand on behalf of themselves and on behalf of each California Labor Class member, (1) all back pay and associated benefits for each day of the California WARN Act violation, (2) all unlawfully deducted wages, (3) all vested, but unused vacation pay, and (4) all unreimbursed business expenses.

204.     By and through the unlawful and unfair business practices described herein, Defendants have obtained valuable property, money and services from California Labor Plaintiffs and the other members of the California Labor Class, including earned wages for all time worked, and has deprived them of valuable rights and benefits guaranteed by law and contract, all to the detriment of these employees and to the benefit of Defendants so as to allow Defendants to unfairly compete against competitors who comply with the law.

205.     All the acts described herein as violations of, among other things, the Industrial Welfare Commission Wage Orders, the California Code of Regulations, and the California Labor Code, were unlawful and in violation of public policy, were immoral, unethical, oppressive, and unscrupulous, were deceptive, and thereby constitute unlawful, unfair, and deceptive business practices in violation of Cal. Bus. & Prof. Code §§ 17200, *et seq.*

206.     California Labor Plaintiffs and the other members of the California Labor Class are entitled to, and do, seek such relief as may be necessary to restore to them the money and property which Defendants have acquired, or of which the California Labor Plaintiffs and the other members of the California Labor Class have been deprived, by means of the above described unlawful and unfair business practices, including earned but unpaid wages for all time worked.

207.     Plaintiffs and the other members of the California Labor Class are further entitled to, and do, seek a declaration that the described business practices are unlawful, unfair, and deceptive, and that injunctive relief should be issued restraining Defendants from engaging in any unlawful and unfair business practices in the future.

208.     Plaintiffs and the other members of the California Labor Class have no plain, speedy and/or adequate remedy at law that will end the unlawful and unfair business practices of Defendants. Further, the practices herein alleged presently continue to occur unabated. As a result of the unlawful and unfair business practices described herein, Plaintiffs and the other members of the California Labor Class have suffered and will continue to suffer irreparable legal and economic harm unless Defendants are restrained from continuing to engage in these unlawful and unfair business practices.

**TENTH CAUSE OF ACTION**
**Unlawful Deductions from PLAINTIFFS' and CLASS MEMBERS' Paychecks (Cal. Labor Code §§ 221 and 223)**
**Alleged by California Labor Plaintiffs Against all Defendants**

209.     Plaintiffs allege and incorporate by reference the allegations contained in all preceding paragraphs.

210.     During the Class Period, Defendants regularly and consistently maintained corporate policies and procedures designed to reduce labor costs by reducing or minimizing the amount of compensation paid to its employees, especially overtime compensation.

211. Defendants made deductions from California Labor Plaintiffs' and the other California Labor Class Members' paychecks including but limited to amounts for health insurance earned by Plaintiffs and the other Class Members during various pay periods. Further, such unlawful deductions include, but are not limited to, health insurance premiums despite Defendants failing to provide health coverage to Plaintiffs and the California Labor Class Members since May 1, 2022. Further, Defendants from time to time unlawfully deducted wages from Plaintiffs' and California Labor Class Members' pay for life insurance premiums, short- and/or long-term disability insurance premiums, and 401(k) contributions despite failing to ensure those deductions were properly allocated to said life insurance, short- and/or long-term disability insurance, and 401(k) policies.

212. Cal. Lab. Code § 221 provides it is unlawful for any employer to collect or receive from an employee any part of wages theretofore paid by employer to employee.

213. Cal. Lab. Code § 223 provides that where any statute or contract requires an employer to maintain the designated wage scale, it shall be unlawful to secretly pay a lower wage while purporting to pay the wage designated by statute or by contract. Cal. Lab. Code section 225 further provides that the violation of any provision of Cal. Lab. Code §§ 221 and 223 is a misdemeanor.

214. As a result of the conduct alleged above, Defendants unlawfully collected or received from California Labor Plaintiffs' and the other California Labor Class Members' part of the wages paid to their employees.

215. Wherefore, California Labor Plaintiffs and the other California Labor Class Members demand the return of all wages unlawfully deducted from the paychecks, including interest thereon, penalties, reasonable attorneys' fees, and costs of suit pursuant to Labor Code §§

225.5 and 1194.

**ELEVENTH CAUSE OF ACTION**
**Failure To Reimburse or Indemnify Employees for Required Expenses**
**(Cal. Lab. Code § 2802)**
**Alleged by California Labor Plaintiffs against all Defendants**

216.     Plaintiffs allege and incorporate by reference the allegations contained in all preceding paragraphs.

217.     Cal. Lab. Code § 2802 provides, in relevant part, that:

An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions, believed them to be unlawful.

218.     From time to time during the Class Period, Defendant violated Cal. Lab. Code § 2802, by failing to indemnify and reimburse California Labor Plaintiffs and the California Labor Class members for required expenses incurred in the discharge of their job duties for Defendant's benefit. Defendant failed to reimburse California Labor Plaintiffs and the California Labor Class members for expenses which included, but were not limited to, personal expenses incurred for the use of personal cell phones, personal home internet, and personal computers all on behalf of and for the benefit of Defendant.

219.     Specifically, Plaintiffs and other California Labor Class Members were required by Defendant to use their own personal cell phones and personal home internet to execute their essential job duties on behalf of Defendants.

220.     Further, Plaintiffs and other California Labor Class Members were also required to incur personal expenses for travel, meals, and payments to various business vendors on behalf of and in furtherance of their job duties for Defendants.

221.    Defendants' uniform policy, practice and procedure was to not reimburse Plaintiffs and the California Labor Class members for expenses resulting from the use of personal cell phones, personal home internet, and personal expenses for travel, meals, and payments to various business vendors for Defendants within the course and scope of their employment for Defendants. These expenses were necessary to complete their principal job duties.

222.    Defendants are estopped by Defendants' conduct to assert any waiver of this expectation.

223.    Although these expenses were necessary expenses incurred by California Labor Plaintiffs and the California Labor Class members, Defendants failed to indemnify and reimburse California Labor Plaintiffs and the California Labor Class members for these expenses as an employer is required to do under the laws and regulations of California.

224.    California Labor Plaintiffs therefore demand reimbursement for expenditures or losses incurred by them and the California Labor Class members in the discharge of their job duties for Defendants, or their obedience to the directions of Defendants, with interest at the statutory rate and costs under Cal. Lab. Code § 2802.

**TWELFTH CAUSE OF ACTION**
**Failure To Pay Wages When Due (Cal. Lab. Code §§ 201, 202, 203)**
**Alleged by California Shutdown Plaintiffs against all Defendants**

225.    California Shutdown Plaintiffs allege and incorporate by reference the allegations contained in all preceding paragraphs.

226.    Cal. Lab. Code § 200 provides that:

As used in this article:

  (d)    "Wages" includes all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, Commission basis, or other method of calculation."

(e)   "Labor" includes labor, work, or service whether rendered or performed under contract, subcontract, partnership, station plan, or other agreement if the to be paid for is performed personally by the person demanding payment.

227.   Cal. Lab. Code § 201 provides, in relevant part, that "If an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately."

228.   Cal. Lab. Code § 202 provides, in relevant part, that:

If an employee not having a written contract for a definite period quits his or her employment, his or her wages shall become due and payable not later than 72 hours thereafter, unless the employee has given 72 hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting. Notwithstanding any other provision of law, an employee who quits without providing a 72-hour notice shall be entitled to receive payment by mail if he or she so requests and designates a mailing address. The date of the mailing shall constitute the date of payment for purposes of the requirement to provide payment within 72 hours of the notice of quitting.

229.   There was no definite term in California Shutdown Plaintiffs' or any California Shutdown Class Members' employment contract.

230.   Cal. Lab. Code § 203 provides:

If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.5, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days.

231.   The employment of California Shutdown Plaintiffs and many California Shutdown Class Members terminated, and Defendants have not tendered payment of wages to these employees, as required by law.

232.   Therefore, as provided by Cal Lab. Code § 203, on behalf of themselves and the members of the California Shutdown Class, California Shutdown Plaintiffs demand up to thirty (30) days of pay as penalty for not paying all wages due at time of termination for all employees

who terminated employment during the Class Period and demand an accounting and payment of all wages due, plus interest and statutory costs as allowed by law.

### THIRTEENTH CAUSE OF ACTION
**For Failure to Pay Vacation Wages**
**Alleged by California Labor Class Members Against all Defendants**

233. Plaintiffs allege and incorporate by reference the allegations contained in all preceding paragraphs.

234. At all relevant times, California Labor Code § 227.3 provides for the following:

> Unless otherwise Unless otherwise provided by a collective-bargaining agreement, whenever a contract of employment or employer policy provides for paid vacations, and an employee is terminated without having taken off his vested vacation time, all vested vacation shall be paid to him as wages at his final rate in accordance with such contract of employment or employer policy respecting eligibility or time served; provided, however, that an employment contract or employer policy shall not provide for forfeiture of vested vacation time upon termination. The Labor Commissioner or a designated representative, in the resolution of any dispute with regard to vested vacation time, shall apply the principles of equity and fairness.

235. At all times relevant, California Labor Class Plaintiffs and, upon information and belief, and California Labor Class Members were subject to an employer policy and/or contract of employment that provided for paid vacations not otherwise provided by a collective-bargaining agreement. Upon California Labor Plaintiffs' and California Labor Class Members' separation of employment, they had not used all of their vested vacation and thus their unused, vested vacation was required to have been paid at their final rate upon separation of employment. As a result of the miscalculation, Defendants violated Labor Code § 227.3.

236. California Labor Plaintiffs seek, on behalf of themselves and the California Labor Class, all damages and remedies available under California Labor Code §227.3, including payment of the vacation wages at the final rate.

# FOURTEENTH CAUSE OF ACTION
## Private Attorneys General Act
## Alleged by California Labor Class Plaintiffs Against Defendants

237.    Plaintiffs allege and incorporate by reference the allegations contained in all preceding paragraphs.

238.    PAGA is a mechanism by which the State of California itself can enforce state labor laws through the employee suing under the PAGA as the proxy or agent of the state's labor law enforcement agencies. An action to recover civil penalties under PAGA is fundamentally a law enforcement action designed to protect the public and not to benefit private parties. The purpose of the PAGA is not to recover damages or restitution, but to create a means of "deputizing" citizens as private attorneys general to enforce the Labor Code. In enacting PAGA, the California Legislature specified that "it was... in the public interest to allow aggrieved employees, acting as private attorneys general to recover civil penalties for Labor Code violation..." (Stats. 2003, ch. 906, § 1). Accordingly, PAGA claims cannot be subject to arbitration.

239.    California Labor Plaintiffs, and such persons that may be added from time to time who satisfy the requirements and exhaust the administrative procedures under the Private Attorney General Act, bring this Representative Action on behalf of the State of California with respect to themselves and all individuals who are or previously were employed by Defendants and classified as non-exempt employees in California during the time period of July 15, 2021 until the present (the "Aggrieved Employees"). They are entitled to recover civil penalties on behalf of themselves, other employees, and the State.

240.    On July 15, 2022, Plaintiff Sawyer gave written notice by online filing to the Labor and Workforce Development Agency (the "Agency")  and  by certified mail to Defendants of  the specific provisions of this code alleged to have been violated as required by Labor Code § 2699.3 On August 19, 2022, Plaintiffs Sawyer and Harvey filed a first amended written notice with the

Agency and sent it by certified mail to Defendants. *See* Exhibits 1 and 2. The statutory waiting period for Plaintiff to add these allegations to the Third Amended Complaint has expired.  As a result, pursuant to Section 2699.3, Sawyer and Harvey may now commence a representative civil action under PAGA pursuant to Section 2699 as the proxy of the State of California with respect to all Aggrieved Employees as herein defined.

241.    The policies, acts and practices heretofore described were and are an unlawful business act or practice because Defendants (a) failed to properly record and pay Plaintiffs and the other Aggrieved Employees for all of the hours they worked, including overtime hours in violation of the Wage Order, (b) failed to provide accurate itemized wage statements, (c) failed to provide mandatory meal breaks and rest breaks, (d) failed to pay meal and rest break premiums, and (e) failed to timely pay wages at the correct rate, all in violation of the applicable Labor Code sections listed in Labor Code §2699.5, including but not limited to Labor Code §§ 201, 201.3, 202, 203, 204, 210, 218.5, 218.6, 221, 223, 225, 225.5,  226, 226.2, 226.3, 226.7, 246, 432.5, 432.6, 510, 512, 558, 925, 1174(d), 1174.5, 1194, 1197, 1197.1, 1197.14, 1198, 1199, 2802, 2804, other Labor Code provisions identified in the PAGA notice letters, and the applicable Industrial Wage Order(s), and thereby gives rise to civil penalties as a result of such conduct. Plaintiffs hereby seek recovery of civil penalties as prescribed by the Labor Code Private Attorney General Act of 2004 as the representative of the State of California for the illegal conduct perpetrated on Plaintiffs and the other Aggrieved Employees.

242.    The Individual Defendants are personally liable for civil penalties arising out of certain of the Labor Code violations, including under California Labor Code §§ 203, 226, 226.7, 558, 558.1, 1193.6, 1194, 1197.1, and 2802.

## FIFTEENTH CAUSE OF ACTION
### Failure To Pay California Minimum Wage
### Alleged by California Labor Plaintiffs Against all Defendants

243.    Plaintiffs allege and incorporate by reference the allegations contained in all preceding paragraphs.

244.    Labor Code sections 1182.12, 1194, and 1197 require employers to pay at least the legal minimum wage for all hours worked by employees in California.

245.    Defendants failed to pay Plaintiffs and other employees at least the required legal minimum wage for all hours worked.

246.    Specifically, but without limitation, Defendants failed to pay Plaintiffs and other employees any wages for hours worked between June 15, 2022, and July 6, 2022. Defendants also failed to pay the California Labor Plaintiffs and other employees they classified as non-exempt any wages for hours worked over 8 in a day or 40 in a week, including for the time they spent logging into the timekeeping system, working during what should have been an off-duty meal period, and for other off-the-clock work. Harvey regularly worked over 8 hours in a day, but he was not paid wages for such work. As a result, Defendants did not pay Plaintiffs and other employees at least minimum wage for all hours worked.

247.    Plaintiffs and other employees were deprived of the legal minimum wage they were owed as a direct result of Defendants' unlawful actions. Defendants violated Labor Code sections 1182.12, 1194, and 1197, and, under Labor Code sections 1194 and 1194.2, Plaintiffs and similarly situated employees are entitled to recover the unpaid legal minimum wage for all hours worked, liquidated damages, interest, costs, and reasonable attorneys' fees. The Individual Defendants are personally liable for such amounts under Sections 558, 558.1, and/or 1197.1.

# FIFTEENTH CAUSE OF ACTION
## Failure To Pay Overtime Wages
### Alleged by California Labor Plaintiffs Against Defendants

248.    Plaintiffs allege and incorporate by reference the allegations contained in all preceding paragraphs.

249.    Labor Code section 510 requires employers to compensate all employees at least 1.5 times their regular hourly rate for all hours worked over 8 hours in a day and over 40 hours in a week, and two times their regular hourly rate for all hours worked over 12 hours in a day or over 8 hours on the seventh day of the week.

250.    California Labor Plaintiffs and other employees worked over 8 hours in a day and 40 hours in a week, but Defendants failed to pay California Labor Plaintiffs and other employees overtime wages for all hours worked over 8 in a day and 40 in a week. Specifically, but without limitation, Defendants failed to pay California Labor Plaintiffs and other employees any wages for overtime hours that they worked between June 15, 2022, and July 6, 2022. And Defendants failed to pay the California Labor Plaintiffs and other employees they classified as non-exempt any wages for hours worked over 8 in a day or 40 in a week, including for the time employees spent logging into the timekeeping system, working during what should have been an off-duty meal period, and for other off-the-clock work.

251.    Plaintiff Harvey regularly worked over 8 hours in a day, but he was not paid overtime wages for such overtime work. To the extent Harvey's time records showed more than 8 hours of work in a day, his wage statements did not reflect such hours of work or overtime pay. As a result, California Labor Plaintiffs and other employees were not paid at least the minimum overtime wage for all hours worked over 8 in a day and 40 in a week.

252.     California Labor Plaintiffs and other employees were deprived of overtime wages for all hours worked as a result of Defendants' unlawful actions. Defendants have violated Cal. Lab. Code sections 510 and 1197, and California Labor Plaintiffs and similarly situated employees are entitled to recover unpaid overtime wages for all overtime hours worked, interest, costs, and reasonable attorneys' fees. The Individual Defendants are personally liable for such amounts under Sections 558, 558.1, and/or 1197.1.

### SIXTEENTH CAUSE OF ACTION
### Failure To Provide Compliant Meal Periods Or Pay Premium Wages
### Alleged by California Labor Plaintiffs Against all Defendants

253.     Plaintiffs allege and incorporate by reference the allegations contained in all preceding paragraphs.

254.     Labor Code section 512 requires employers to provide non-exempt employees an off-duty, uninterrupted 30-minute meal period if the employee works more than five hours in a day, and a second off-duty, uninterrupted 30-minute meal period if the employee works more than 10 hours in a day. These meal periods must be free of all work duties.

255.     Defendants failed to provide timely, off-duty, uninterrupted 30-minute meal periods to Harvey and other employees it classified as non-exempt, and failed to compensate them for one additional hour of pay at their regular hourly rate for each meal period that was not provided or was missed, shortened, interrupted, on-duty, or untimely. Harvey regularly performed work during what should have been an off-duty meal period, but Defendants did not ask or require him to report noncompliant meal periods and did not pay him premium wages for noncompliant meal periods.

256.     Defendants violated Labor Code sections 512 and 226.7, and Harvey and similarly situated employees that were classified as non-exempt are entitled to recover premium wages in the amount of one additional hour of pay at their regular rates of pay for each violation, as well as

costs and reasonable attorneys' fees. The Individual Defendants are personally liable for such amounts under Sections 558, 558.1, and/or 1197.1.

## SEVENTEENTH CAUSE OF ACTION
### Failure To Provide Compliant Rest Breaks Or Pay Premium Wages
### Alleged by California Labor Plaintiffs Against all Defendants

257.    Plaintiffs allege and incorporate by reference the allegations contained in all preceding paragraphs.

258.    Cal. Lab. Code section 226.7 requires employers to provide non-exempt employees a rest period mandated by an applicable statute, or applicable regulation, standard, or order of the Industrial Welfare Commission, the Occupational Safety and Health Standards Board, or the Division of Occupational Safety and Health. Under paragraph 12 of the governing Industrial Wage Order, employers must permit non-exempt employees to take 10 minutes of rest for every four hours worked, taken in the middle of the work period unless impracticable. Under Labor Code section 226.7 and paragraph 12 of the governing Industrial Wage Order, when employers do not provide compliant rest breaks, they must pay employees an additional hour of pay at the employees' regular rate of pay for each violation.

259.    Defendants failed to provide timely, off-duty, uninterrupted 10-minute rest breaks to the California Labor Plaintiffs and other employees they classified as non-exempt, and failed to compensate them for one additional hour of pay at their regular hourly rate for each rest break that was not provided or was missed, shortened, interrupted, on-duty, or untimely.

260.    Plaintiff Harvey regularly performed work during what should have been an off-duty rest break, but Defendants did not ask or require him to report noncompliant rest breaks and did not pay him premium wages for noncompliant rest breaks.

261.    Defendants violated Labor Code sections 512 and 226.7, and California Labor Plaintiffs and similarly situated employees that were classified as non-exempt are entitled to

recover premium wages in the amount of one additional hour of pay at their regular rates of pay for each violation, as well as costs and reasonable attorneys' fees. The Individual Defendants are personally liable for such amounts under Sections 558, 558.1, and/or 1197.1.

**EIGHTEENTH CAUSE OF ACTION**
**Violations Of Cal. Lab. Code § 204**
**Alleged by California Shutdown Plaintiffs Against all Defendants**

262.     Plaintiffs allege and incorporate by reference the allegations contained in all preceding paragraphs.

263.     Under Labor Code section 204, all wages must be attributed to and paid for the semimonthly pay period in which they were earned.

264.     Defendants violated Section 204 when they failed to pay the wages earned between June 16 and 30, 2022 in the next semimonthly pay period (the scheduled payday was July 7, 2022).

265.     Defendants violated Section 204 again when they failed to pay the wages earned between July 1 and 6, 2022 in the next semimonthly pay period, including commission wages for the June 2022 commission month.

266.     Defendants' decision to terminate California Shutdown Plaintiffs and California Shutdown Class employees without paying wages earned between June 16 and July 6, 2022 constitutes multiple violations of Labor Code section 204.

**NINETEENTH CAUSE OF ACTION**
**Violations Of Cal. Lab. Code §§ 432.5, 432.6, and 925**
**Alleged by California Labor Plaintiffs Against All Defendants**

267.     Plaintiffs allege and incorporate by reference the allegations contained in all preceding paragraphs.

268. Labor Code 432.5 prohibits an employer, or agent, manager, superintendent, or officer thereof, from requiring employees or applicants to agree in writing to any term or condition which is known to be prohibited by law.

269. Labor Code 432.6 prohibits employers and other persons, as a condition of employment, continued employment, or any employment-related benefit, from requiring the waiver of any right, forum, or procedure for any violation of the Labor Code or the Fair Employment and Housing Act.

270. Labor Code section 925 states than an employer "shall not require an employee who primarily resides and works in California, as a condition of employment, to agree to a provision that would do either of the following: (1) Require the employee to adjudicate outside of California a claim arising in California. (2) Deprive the employee of the substantive protection of California law with respect to a controversy arising in California.

271. Defendants required California Labor Plaintiffs and other employees who primarily resided and worked in California, as a condition of their employment, continued employment, or receipt of employment-related benefits, to agree to written provisions that (i) require all claims involving their employment agreements to be brought exclusively in courts located in the State of New York, waiving their right to bring claims in California; (ii) require New York law instead of California law to govern their employment agreement; and (iii) constitute overbroad and unlawful non-compete and non-solicitation provisions.

272. Defendants knew or should have known that these written provisions were prohibited by California law and impermissibly waived California Labor Plaintiffs' and other employees' rights, forums, procedures, and substantive protections under California law.

273. Defendants' written employment terms, policies, and agreements violate Labor Code sections 432.5, 432.6, and 925.

## TWENTIETH CAUSE OF ACTION
### Violations Of Cal. Lab. Code § 2751
### Alleged By California Labor Plaintiffs Against All Defendants

274. Plaintiffs allege and incorporate by reference the allegations contained in all preceding paragraphs.

275. Defendants have engaged in unlawful business practices related to commissions. Under Section 2751, when an employer enters into a contract of employment and the contemplated payment method includes commissions, the contract must "set forth the method by which the commissions shall be computed and paid," and the employer "shall give a signed copy of the contract to every employee who is a party thereto and shall obtain a signed receipt for the contract from each employee."

276. The Labor Code requires a complete commission agreement (including any attachments and addendums) to be signed by both the employer and the employee on or before the date the agreement starts applying to the employee, and a fully signed copy to be given to the employee.

277. The Labor Code also requires the employer to obtain a receipt that is signed by the employee, identifies what was signed and when, and is capable of being kept as part of the employee's personnel file and provided upon request.

278. Defendants violated Section 2751 in multiple ways. First, Defendants did not give California Labor Plaintiffs and other commission-eligible employees fully signed copies of the commission agreements (with attachment and any addendums) on or before the dates the agreements became effective and applied to them.

279.     Second, Defendants did not obtain receipts that were signed by the employee, identified what was signed and when, and were in a form capable of being placed in the employee's personnel file and provided upon request.

280.     Third, Defendants failed to calculate and pay commission wages in accordance with the terms set forth in the relevant commission documents, and failed to act in good faith and fair dealing under the terms of such documents.

281.     Specifically, but without limitation, Defendants terminated Plaintiffs and other commission-eligible employees on or around July 6, 2022, after commissions for the June 2022 commission month were reasonably calculable and earned but before they were scheduled to be paid on July 7, 2022. Defendants did not pay such commissions.

282.     California Labor Plaintiffs and other commission-eligible employees did not expressly or knowingly agree to any delayed calculation, earning, or payment of their commission wages for the June 2022 commission month or any other month, and any provision that did provide for delayed calculation, earning, or payment of commission wages was adhesive, construed strictly against Defendants, and unconscionable. Defendants violated Labor Code section 2751.

**TWENTY-FIRST CAUSE OF ACTION**
**Failure To Make Proper Disclosure In Violation Of The Fair Credit Reporting Act**
**("FCRA")**
**Alleged by California Labor Plaintiffs Against All Defendants)**

283.     Plaintiffs allege and incorporate by reference the allegations contained in all preceding paragraphs.

284.     Under the FCRA, it is unlawful to procure a consumer report or cause a consumer report to be procured for employment purposes, unless:

> (i) a clear and conspicuous disclosure has been made in writing to
> the consumer at any time before the report is procured or causes to

be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; and,

(ii) the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report. 15 U.S.C. § 1681b(b)(2)(A)(i)-(ii).

285.    Defendants' standard FCRA disclosure form is unlawful.

286.    The violations of the FCRA were willful based on the clear statutory text, case law guidance, and regulatory guidance. The statutory text of the standalone requirement is straightforward. The word "solely" in subsection (i) and the one express exception in subsection (ii) of 15 U.S.C. § 1681b(b)(2)(A), which allows the authorization to be on the same document as the disclosure, shows that "the FCRA should not be read to have implied exceptions[.]" *Gilberg,* 913 F.3d at 1175 (citing to *Syed v. M-I, LLC* (2017) 853 F.3d 492, 501-03 (*"Syed"*)).

287.    Defendants also had specific case law to provide guidance. *See Gilberg,* 913 F.3d at 1175 (*"Syed's* holding and statutory analysis were not limited to liability waivers; *Syed* considered the standalone requirement with regard to any surplusage*"*) citing to *Syed,* 853 F.3d at 501.

288.    Lastly, informal guidance from the FTC is unambiguous that no extraneous information should be included in the FCRA disclosure. *See* FTC, Opinion Letter, 1997 WL 33791227, at *1 (Oct. 21, 1997) ("[The] document should include nothing more than the disclosure and the authorization for obtaining a consumer report."); FTC, Opinion Letter, 1998 WL 34323748, at *2 (Feb. 11, 1998) (disclosure may describe the "nature of the consumer reports" it covers, but otherwise should "not be encumbered with extraneous information"); FTC, Opinion Letter, 1998 WL 34323756, at *1 (June 12, 1998) (inclusion of a waiver in a disclosure form violates Section 1681b(b)(2)(A)).

289.    Defendants knew that their standard disclosure form must be clear and not contain

extraneous information that would confuse a reasonable person about the nature of her rights under the FCRA, such as state disclosures.

290. California Labor Plaintiffs and all other members of the California Labor Class are entitled to statutory damages of not less than One Hundred Dollars ($100) and not more than One Thousand Dollars ($1,000) for every willful violation of the FCRA, pursuant to 15 U.S.C. § 1681 n(a)(1)(A).

291. California Labor Plaintiffs and all other members of the California Labor Class are also entitled to punitive damages for these willful violations, pursuant to 15 U.S.C. § 1681 n(a)(2).

292. California Labor Plaintiffs and all other members of the California Labor Class are further entitled to recover their costs and attorney fees, pursuant to 15 U.S.C. § 1681n(a)(3).

**TWENTY-SECOND CAUSE OF ACTION**
**Failure To Obtain Proper Authorization In Violation Of The FCRA**
**Alleged by California Labor Plaintiffs Against All Defendants**

293. Plaintiffs allege and incorporate by reference the allegations contained in all preceding paragraphs.

294. Accordingly, California Labor Plaintiffs were confused regarding the nature of their rights under the FCRA and did not give valid authorization for Defendants to procure a consumer report in violation of 15 U.S.C. § 1681b(b)(2)(A)(ii).

295. Nevertheless, Defendants procured a consumer report or caused a consumer report to be procured for employment purposes on California Labor Plaintiffs and the California Labor Class in violation of 15 U.S.C. § 1681b(b)(2)(A).

296. This violation of the FCRA is willful. 15 U.S.C. § 1681n. Defendants knew that their standard FCRA form must be standalone and must be clear and conspicuous. In addition, Defendants knew that proper authorization is not possible without a legally compliant disclosure.

297. California Labor Plaintiffs and all other members of the California Labor Class are entitled to statutory damages of not less than One Hundred Dollars ($100) and not more than One Thousand Dollars ($1,000) for every willful violation of the FCRA, pursuant to 15 U.S.C. § 1681n(a)(1)(A).

298. California Labor Plaintiffs and all other members of the California Labor Class are also entitled to punitive damages for these willful violations, pursuant to 15 U.S.C. § 1681n(a)(2).

299. California Labor Plaintiffs and all other members of the California Labor Class are further entitled to recover their costs and attorneys' fees, pursuant to 15 U.S.C. § 1681n(a)(3).

### TWENTY-THIRD CAUSE OF ACTION
**Violation Of California's Investigative Consumer Reporting Agencies Act ("ICRAA")**
**Alleged by California Labor Plaintiffs Against All Defendants**

300. Plaintiffs allege and incorporate by reference the allegations contained in all preceding paragraphs.

301. Each Defendant is a "person" as defined by California Civil Code section 1786.2, subdivision (n) of the Investigative Consumer Reporting Agencies Act ("ICRAA").

302. California Labor Plaintiffs and the California Labor Class members are "consumers" within the meaning of California Civil Code section 1786.2, subdivision (b) of the ICRAA, because they are "individuals."

303. California Civil Code section 1786.2 subdivision (c) of the ICRAA defines an "investigative consumer report" as: a consumer report in which information on a consumer's character, general reputation, personal characteristics, or mode of living is obtained through any means.

304. Thus, Defendants' background checks qualify as an investigative consumer report under the ICRAA.

305. California Civil Code section 1786.16, subdivision (a)(2) of the ICRAA provides, in relevant part:

> If, at any time. an investigative consumer report is sought for employment purposes… the person seeking the investigative consumer report may procure the report, or cause the report to be made, only if all of the following apply:
>
> …
>
> (B) The person procuring or causing the report to be made provides a clear and conspicuous disclosure in writing to the consumer at any time before the report is procured or caused to be made in a document that consists solely of the disclosure, that:
>
> (i) An investigative consumer report may be obtained.
>
> …
>
> (C) The consumer has authorized in writing the procurement of the report.

306. As described above, California Labor Plaintiffs allege that in evaluating them and other California Labor Class members for employment or during employment, Defendants procured or caused to be prepared investigative consumer reports (e.g., background checks), as defined by California Civil Code section 1786.2, subdivision (c).

307. Further, as described above, the purported disclosures and authorizations provided by Defendants to California Labor Plaintiffs and the California Labor Class are unlawful. Thus, they do not meet the requirements under the law.

308. Under the ICRAA, it is unlawful to procure or cause to be procured, an investigative consumer report for employment purposes unless the disclosure is made in a document that consists solely of the disclosure and the consumer has authorized, in writing, the procurement of the report. Cal. Civ. Code § 1786.16, subd. (a)(2)(B)-(C). The inclusion of extraneous information violates California Civil Code section 1786.16, subdivision (a)(2)(B).

309. The plain language of the statute clearly indicates that the inclusion of this extraneous information in a disclosure form violates the disclosure and authorization requirements

of the ICRAA, because such a form would not consist "solely" of the disclosure.

310.     Defendants willfully violated California Civil Code section 1786.16(a)(2)(B) of the ICRAA.  Additionally, the inclusion of the extraneous provisions causes a disclosure to fail to be "clear and conspicuous" and thus violates California Civil Code section 1786.16(a)(2)(B).

311.     Upon information and belief, California Labor Plaintiffs allege that Defendants have a policy and practice of failing to provide adequate written disclosures to applicants and employees, before procuring background checks, as described above.  Pursuant to that policy and practice, Defendants violated California Civil Code sections 1786.16(a)(2)(B) and 1786.16(b)(1) of the ICRAA, as described above.

312.     Defendants' conduct in violation of California Civil Code sections 1786.16(a)(2)(B) and 1786.16(b)(1) of the ICRAA were and are willful and/or grossly negligent.  Defendants acted in deliberate or reckless disregard of its obligations and the rights of applicants and employees, including the California Labor Plaintiffs and Class members.

313.     As a result of Defendants' illegal procurement of background reports by way of its inadequate disclosures, as set forth above, California Labor Plaintiffs and Class members have been deprived of their consumer rights and prevented from making informed decisions about whether to permit Defendants to obtain their personal information, and California Labor Plaintiffs and Class members have been injured, including, but not limited to, having their privacy and statutory rights invaded in violation of the ICRAA.

314.     California Labor Plaintiffs, on behalf of themselves and all California Labor Class members, seeks all available remedies pursuant to California Civil Code section 1786.50, including statutory damages and/or, punitive damages, and attorney fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, pray for the following relief:

a. That, at the earliest possible time, Plaintiffs through their counsel be permitted to give notice of this collective action, or that the Court issue such notice of this collective action, or that the Court issue such notice to all persons who are presently, or have at any time during the three years immediately preceding the filing of this suit, up through and including the date of the Court's issuance of court-supervised notice, been employed by Defendants. Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were denied proper hourly compensation and overtime wages;

b. Certification of this case as a class action pursuant to Fed. R. Civ. P. 23;

c. Certification of this case as a collective action pursuant to 29 U.S.C. § 216(b);

d. Designation of the named Plaintiffs as class representatives and designation of the undersigned counsel of record as class counsel;

e. Unpaid wages, back pay, front pay, compensatory damages, punitive damages, attorneys' fees, costs, and interest pursuant to 29 U.S.C. § 201 *et seq.* and the NYLL § 190*;*

f. An additional and equal amount in unpaid wages as liquidated damages pursuant to 29 U.S.C. § 201 *et seq.*;

g. Equitable relief pursuant to ERISA § 502(a)(3), including a "surcharge" remedy which would provide monetary compensation to Nationwide Shutdown Plaintiffs for their uncovered medical expenses from May 1, 2022, through July 31, 2022, and/or equitable

estoppel placing Nationwide Shutdown Plaintiffs in the position they would have occupied but for Defendants' breach of their fiduciary duty under ERISA;

h. Statutory damages pursuant to NYLL §§ 193, 198; and the California Labor Code;

i. Statutory damages pursuant to 29 U.S.C. § 2101 *et seq.*, N.Y. Labor Law § 860(g), and the California Labor Code;

j. Statutory damages pursuant to 29 U.S.C. § 1132(c)(1), as modified by 29 C.F.R. § 2575.502c–1;

k. Statutory and civil penalties pursuant to the California Labor Code;

l. Issuance of a declaratory judgement that the practices complained of herein are unlawful under the FLSA, ERISA, COBRA, NYLL, WARN Act, NY WARN Act, and California Labor Code, and a permanent injunction against Defendants' continued engagement in such practices;

m. All costs, expenses, and attorney fees; and

n. All other and further relief that this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to FRCP 38(b), Plaintiffs demand a trial by jury on all questions of fact raised by the Complaint.

Dated: New York, New York
April 19, 2024

**MENKEN SIMPSON & ROZGER LLP**

By: _/s/Brenna Rabinowitz_
Brenna Rabinowitz
Bruce Menken
Scott Simpson
80 Pine St., 33rd Fl.
New York, NY 1005
(212) 509-1616
brabinowitz@nyemployeelaw.com

bmenken@nyemployeelaw.com
ssimpson@nyemployeelaw.com

*Attorneys for Plaintiffs and the Rule 23 Proposed Class and FLSA Proposed Collective*

# EXHIBIT 1



1 Park Plaza, Suite 600          949.667.4700 (phone)
Irvine, California 92614         949.424.8091 (facsimile)
soderstromlawfirm.com           jamin@soderstromlawfirm.com

July 15, 2022

**BY ONLINE FILING**

Labor & Workforce Development Agency
Attn: PAGA Administrator
1515 Clay Street, Suite 801
Oakland, California 94612
PAGA@dir.ca.gov

**BY CERTIFIED MAIL, RETURN RECEIPT REQUESTED**

Sprout Mortgage, LLC                Sprout Mortgage, LLC
Michael Strauss (CEO)               Michael Strauss (CEO)
Shea Pallante (President)           Shea Pallante (President)
6501 Irvine Center Drive            90 Merrick Avenue Suite 505
Irvine, CA 92618                    East Meadow, NY 11554

                                    Recovco Mortgage Management LLC
                                    Attn: Legal Department
                                    90 Merrick Avenue Suite 505
                                    East Meadow, NY 11554

        Re:     *Notice of Violations of the California Labor Code*

To Whom It May Concern:

        Soderstrom Law PC represents Jared Sawyer ("Employee"), who is a former employee of
Sprout Mortgage, LLC, Recovco Mortgage Management LLC, Michael Strauss (Chief Executive
Office of Sprout), Shea Pallante (President of Sprout), and possibly one or more of their affiliates
and/or joint employers (collectively, "Defendants").

        In accordance with California Labor Code section 2699.3, and on behalf of Employee and
all other aggrieved employees in California who suffered from one or more of the alleged
violations, this letter gives written notice to the Labor & Workforce Development Agency and to
Defendants of serious past and ongoing violations of the Labor Code.

---

Business Law    |    Employment Law    |    Consumer Law    |    Class Actions    |    Intellectual Property

July 15, 2022
PAGA Administrator
Sprout Mortgage, LLC
Recovco Mortgage Management LLC
Michael Strauss
Shea Pallante
Page 2 of 9

Employee is an "aggrieved employee" as the term is used in California's Private Attorneys General Act, Labor Code § 2698 *et seq.* ("PAGA"). The violations described below occurred in connection with Employee's and other exempt and nonexempt employees' employment for Defendants in California during the relevant time period.

Unless we are notified of an investigation by the Administrator within the period established by Section 2699.3, Soderstrom Law PC intends to commence a civil action and/or supplement an existing civil action against Defendants for the violations alleged and described in this Notice, and to seek all civil penalties and other remedies available on behalf of himself, all other aggrieved employees, and the State of California.

## I. LIABLE EMPLOYERS

Defendants are Employee's and other aggrieved employees' employers and/or joint employers. Defendants are liable for any and all violations of the Labor Code that Defendants committed against them during the relevant time period and for the civil penalties provided for by the Labor Code.

Strauss and Pallante acted on behalf of Sprout and/or Recovco, individually and as officers, agents, or employees, and they are personally liable for certain of the Labor Code violations alleged herein.

Labor Code section 558 makes any "employer or other person acting on behalf of any employer who violates, or causes to be violated, a section of this chapter or any provision regulating hours and days of work in any order of the Industrial Welfare Commission" liable for a civil penalty that includes the recovery of wages to be paid to the affected employee.

Labor Code section 558.1 makes any "employer or other person acting on behalf of an employer, who violates, or causes to be violated any provision regulating minimum wages or hours and days of work in any order of the Industrial Welfare Commission, or causes to be violated, Sections 203, 226, 226.7, 1193.6, 1194, or 2802" liable for such violations.

Labor Code section 1197.1 makes any "employer or other person acting either individually or as an officer, agent, or employee of another person, who pays or causes to be paid to any employee a wage less than the minimum fixed by an applicable state or local law, or by an order of the commission," liable for a "civil penalty, restitution of wages, liquidated damages payable to the employee, and any applicable penalties imposed pursuant to Section 203."

Strauss and Pallante are personally liable for civil penalties for violations of the applicable Labor Code sections.

July 15, 2022
PAGA Administrator
Sprout Mortgage, LLC
Recovco Mortgage Management LLC
Michael Strauss
Shea Pallante
Page 3 of 9

## II.     AGGRIEVED EMPLOYEES

Employee worked for Defendants in California from October 2021 to July 2022. He was assigned to Defendants' Irvine location. During his employment he held the positions of Branch Manager and Vice President of Distributive Retail. He was a commission-eligible employee, and he was paid commission wages based on a calendar month. He worked with hundreds of other exempt and nonexempt employees, and commission-eligible employees, in California during the relevant time period. His experience gave him a thorough understanding of Defendants' employment policies and practices. Employee personally suffered from Defendants' Labor Code violations and witnessed and learned of the same and other violations committed against other employees in California.

## III.     VIOLATIONS, FACTS, AND THEORIES

Employee sets forth the following allegations to ensure the LWDA and Defendants have sufficient notice of the specific provisions of the California Labor Code alleged to have been violated, including the facts and theories to support the alleged violations. Employee reserves the right to supplement or amend this Notice with additional alleged violations, facts, and theories as they are discovered and to the extent they are not sufficiently alleged by this Notice.

### A.     Violations of Sections 1182.12, 1194, and 1197 (Minimum Wages Violations)

Labor Code sections 1182.12, 1194, and 1197 requires employers to pay at least the legal minimum wage for all hours worked by employees in California.

Defendants terminated Employee and hundreds of other employees in California on July 6, 2022. Defendants did not pay Employee and hundreds of other employees in California at least the legal minimum wage for all hours worked during the period from June 15 through July 6, 2022. Defendants did not pay Employee or other terminated employees all of their earned wages for work performed from June 15 through June 30, 2022 (the scheduled payday was July 7, 2022), and Defendants did not pay Employee or other terminated employees all of their earned wages for work performed from July 1 through July 6, 2022.

As a result of nonpayment, Defendants did not pay Employee and other employees in California who were terminated on or around July 6, 2022 at least the legal minimum wage for all hours worked. Defendants have violated Labor Code sections 1182.12, 1194, and 1197.

### B.     Violations of Sections 510 and 1197 (Overtime Wages Violations)

Labor Code section 510 requires employers to compensate all employees at 1.5 times their regular hourly rate for all hours worked over 8 hours in a day and over 40 hours in a week, and

July 15, 2022
PAGA Administrator
Sprout Mortgage, LLC
Recovco Mortgage Management LLC
Michael Strauss
Shea Pallante
Page 4 of 9

two times their regular hourly rate for all hours worked over 12 hours in a day or over 8 hours on the seventh day of the week.

Defendants terminated Employee and hundreds of other employees in California on July 6, 2022. Defendants did not pay Employee or other employees in California at least 1.5 times their regular hourly rate for all overtime hours worked between June 15 and July 6, 2022. Employee and other employees in California worked over 8 hours in a day and/or 40 hours in a week during this period. Defendants did not pay Employee or other terminated employees any overtime wages for work over 8 hours in a day and/or 40 hours in a week between June 15 and July 6, 2022.

As a result of nonpayment, Defendants did not pay Employee or other employees in California who were terminated on or around July 6, 2022 overtime wages for all overtime hours worked. Defendants have violated Labor Code sections 510 and 1197.

### C.  Violations of Section 2751 (Unlawful Commission Practices)

Defendants recruit and incentivize employees like Employee by emphasizing their ability to earn incentive compensation such as commissions and bonuses. Defendants have engaged in unlawful business practices related to commissions.

Under California Labor Code section 2751, when an employer enters into a contract of employment and the contemplated payment method includes commissions, the contract must "set forth the method by which the commissions shall be computed and paid," and the employer "shall give a signed copy of the contract to every employee who is a party thereto and shall obtain a signed receipt for the contract from each employee." The Labor Code requires a complete commission agreement (include any attachments and addendums) to be signed by both the employer and the employee on or before the date the agreement starts applying to the employee, and a fully signed copy to be given to the employee. The Labor Code also requires the employer to obtain a receipt that is signed by the employee, identifies what was signed and when, and is capable of being kept as part of the employee's personnel file and provided upon request.

Defendants violated Section 2751 in multiple ways. First, Defendants did not give Employee and other commission-eligible employees fully signed copies of the commission agreements (with attachment and any addendums) on or before the dates agreements became effective and applied to them. Second, Defendants did not obtain receipts that were signed by the employee, identified what was signed and when, and were in a form capable of being placed in the employee's personnel file and provided upon request. Third, Defendants failed to calculate and pay commission wages in accordance with the terms set forth in the relevant commission documents, and failed to act in good faith and fair dealing under the terms of such documents. Specifically but without limitation, Defendants terminated Employee and other commission-

July 15, 2022
PAGA Administrator
Sprout Mortgage, LLC
Recovco Mortgage Management LLC
Michael Strauss
Shea Pallante
Page 5 of 9

eligible employees on July 6, 2022, after commissions for the June 2022 commission month were reasonably calculable and earned but before they were scheduled to be paid on July 7, 2022.

Employee and other commission-eligible employees did not expressly or knowingly agree to any delayed calculation, earning, or payment of their commission wages for the June 2022 commission month, and any provision that did provide for delayed calculation, earning, or payment of commission wages was adhesive, construed strictly against Defendants, and unconscionable. Defendants have violated Labor Code section 2751.

**D.     Violations of Sections 201 and/or 202 (Wages For Terminated Employees)**

Defendants terminated Employee and hundreds of other employees in California on July 6, 2022. Defendants did not pay Employee and hundreds of other employees in California all wages earned and owed at the time of their termination, or within 72 hours of their termination. Defendants have violated Labor Code sections 201 and/or 202.

**E.     Violations of Section 203 (Waiting Time Penalties for Terminated Employees)**

Defendants terminated Employee and hundreds of other employees in California on July 6, 2022. Defendants did not pay Employee and hundreds of other employees in California all wages earned and owed at the time of their termination. Defendants' failure to pay all wages owed was willful.

Under Labor Code section 203, the willful failure to timely pay discharged and/or quitting employees all wages due under Sections 201 or 202 required Defendants to pay waiting time penalties in the amount of one day's compensation at the employees' regular rates of pay for each day the wages are not paid, up to 30 days. Defendants did not and have not paid any waiting time penalties to Employee or other employees who were discharged and/or quit on or around July 6, 2022. Defendants have violated Labor Code section 203 (see also Section 256).

**F.     Violations of Section 204 (Untimely Payment of Wages)**

Under California Labor Code section 204, all wages—including commission wages—must be attributed to and paid for the semimonthly pay period in which they were earned. Defendants violated Section 204 when they failed to pay the wages earned between June 16 and 30, 2022 in the next semimonthly pay period (the scheduled payday was July 7, 2022). Defendants violated Section 204 again when they failed to pay the wages earned between July 1 and 6, 2022 in the next semimonthly pay period. Defendants' decision to terminate Employee and other employees without paying wages earned between June 16 and July 6, 2022 constitutes multiple violations of Labor Code section 204 (see also Section 210).

July 15, 2022
PAGA Administrator
Sprout Mortgage, LLC
Recovco Mortgage Management LLC
Michael Strauss
Shea Pallante
Page 6 of 9

### G.     Violations of Section 226 (Wage Statement Violations)

Labor Code section 226(a) provides that employers shall furnish their employees with accurate itemized statements in writing showing, among other things, gross wages earned, total hours worked, all deductions, net wages earned, all applicable hourly rates and the corresponding number of hours worked at each hourly rate, and the inclusive dates of the period for which the employee is paid.

Labor Code section 226(e) provides that employees are deemed to suffer injury if an employer fails to provide a wage statement, or if an employer fails to provide accurate and complete information as required by any one or more items of subsection (a), and the employee cannot promptly and easily determine from the wage statement alone: the amount of the gross wages or net wages paid to the employee during the pay period, total hours worked by the employee, all deductions, the inclusive dates of the period for which the employee is paid, or all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee.

Defendants failed to provide Employee and other employees who were terminated on or around July 6, 2022 a wage statement covering the work performed between June 16 and 30, 2022, and another wage statement covering the work performed between July 1 and 6, 2022. Defendants' failures constitute multiple violations of Labor Code section 226 (see also Section 226.3).

### H.     Violations of Section 2802 (Expense Reimbursement)

Labor Code section 2802 requires employers to indemnify employees for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, including costs and attorney fees incurred in enforcing Section 2802.

Employee and other employees regularly incurred necessary expenditures and losses in direct consequence of discharging their duties, including using personal cell phones and service, personal and home internet service, driving, travel, and other home office expenditures needed to perform their work.

Defendants did not timely or fully pay for, reimburse, or indemnify Employee and other employees for such expenditures and losses. Defendants' periodic reimbursements did not cover all of the necessary expenditures. And Defendants failed to pay for, reimburse, or indemnify Employee and other employees who were terminated on or around July 6, 2022 for any expenditures incurred in June or July 2022.

Defendants' failures violate Labor Code section 2802.

July 15, 2022
PAGA Administrator
Sprout Mortgage, LLC
Recovco Mortgage Management LLC
Michael Strauss
Shea Pallante
Page 7 of 9

## I.      Violations of Section 227.3 (Vacation Pay)

Labor Code section 227.3 requires that whenever a contract of employment or employer policy provides for paid vacations, and an employee is terminated without having taken off his vested vacation time, all vested vacation shall be paid to him as wages at his final rate in accordance with such contract of employment or employer policy. An employment contract or employer policy shall not provide for forfeiture of vested vacation time upon termination.

Defendants provided, in their employment agreements and related policies, for paid vacations for Employee and other employees. Employee and other employees had unused and vested vacation time at the time of their termination. Defendants did not pay such vacation time as wages at Employee' or other employees' final rates of pay upon their termination. Defendants' failures to pay vacation wages upon termination violate Labor Code section 227.3.

## J.      Violations of Section 1400 et seq. (California's WARN Act)

California's WARN Act, Cal. Labor Code § 1400 et seq., prohibits employers from ordering a mass layoff or termination at a covered establishment unless, 60 days before the order takes effect, the employers give written notice of the order to the employees affected by the order.

Under Labor Code section 1400: a "covered establishment" is a commercial facility or part thereof that employs 75 or more persons within the preceding 12 months; an "employer" is any person who directly or indirectly owns and operates a covered establishment; an "employee" is a person employed by an employer for at least 6 months of the 12 months preceding the date on which notice is required; and a "mass layoff" is a layoff during any 30-day period of 50 or more employees at a covered establishment.

Under Labor Code section 1401, an employer may not order a mass layoff at a covered establishment unless it gives written notice of the order at least 60 days before the order takes effect to (i) the employees affected by the order, and (ii) the California Employment Development Department (EDD), the local workforce investment board, and the chief elected official of each city and county government in which the mass layoff occurs.

Defendants are employers that owned and operated covered establishments in California. Defendants ordered multiple mass layoffs at covered establishments in California in 2022, including on July 6, 2022. The mass layoffs were not necessitated by a physical calamity or act of war. Defendants did not give advance written notice to affected employees or the relevant governmental entities. Defendants were not actively seeking capital or business such that an exception to the written notice requirement applies. Defendants did not provide written records to

July 15, 2022
PAGA Administrator
Sprout Mortgage, LLC
Recovco Mortgage Management LLC
Michael Strauss
Shea Pallante
Page 8 of 9

the California Department of Industrial Relations to justify lesser or no notice. Defendants did not give Employee or other affected employees proper and timely written notice of the mass layoffs.

Under Labor Code sections 1402 and 1404, Employee and other employees affected by the mass layoffs are entitled to recover from Defendants 60 days of backpay (calculated as the higher of the final rate of pay received by the employee or the average rate of pay received by the employee during the last three years), plus the value of the cost of other benefits to which the employee would have been entitled. Defendants have not paid such backpay or the value of the cost of other benefits. Defendants have committed multiple violations of Labor Code sections 1400-1408.

**K.      Violations of Sections 432.5, 432.6, and 925 (Unlawful Written Agreements)**

Labor Code 432.5 prohibits an employer, or agent, manager, superintendent, or officer thereof, from requiring employees or applicants to agree in writing to any term or condition which is known to be prohibited by law.

Labor Code 432.6 prohibits employers and other persons, as a condition of employment, continued employment, or any employment-related benefit, from requiring the waiver of any right, forum, or procedure for any violation of the Labor Code or the Fair Employment and Housing Act.

Labor Code section 925 states than an employer "shall not require an employee who primarily resides and works in California, as a condition of employment, to agree to a provision that would do either of the following: (1) Require the employee to adjudicate outside of California a claim arising in California. (2) Deprive the employee of the substantive protection of California law with respect to a controversy arising in California."

Defendants required Employee and other employees who primarily reside and work in California, as a condition of their employment, continued employment, and receipt of employment-related benefits, to agree to written provisions that (i) require all claims involving their employment agreements to be brought exclusively in courts located in the State of New York, waiving their right to bring claims in California; (ii) require New York law instead of California law to govern their employment agreement; and (iii) constitute overbroad and unlawful non-compete and non-solicitation provisions. Defendants knew or should have known that these written provisions were prohibited by California law and impermissibly waived Employee's and other employees' rights, forums, procedures, and substantive protections under California law.

These written requirements constitute multiple violations of Labor Code sections 432.5, 432.6, and 925.

July 15, 2022
PAGA Administrator
Sprout Mortgage, LLC
Recovco Mortgage Management LLC
Michael Strauss
Shea Pallante
Page 9 of 9

## IV.    CIVIL PENALTIES FOR LABOR CODE VIOLATIONS

Defendants are liable for specific or default civil penalties as provided by Labor Code section 2699 based on the above-described violations and similar violations that may be identified after further investigation or during discovery. Without limitation, this letter gives notice with respect to Labor Code sections 201, 202, 203, 204, 210, 226, 226.3, 226.7, 227.3, 256, 432.5, 432.6, 510, 512, 558, 558.1, 925, 1174, 1174.5, 1182.12, 1194, 1194.2, 1197, 1197.1, 1197.5, 1198.5, 1206, 1400 et seq., 2751, and 2802.

Please contact me at 949.667.4700 or jamin@soderstromlawfirm.com if you would like to discuss this matter.

Very truly yours,

SODERSTROM LAW PC

Jamin S. Soderstrom

# EXHIBIT 2



1 Park Plaza, Suite 600
Irvine, California 92614
soderstromlawfirm.com

949.667.4700 (phone)
949.424.8091 (facsimile)
jamin@soderstromlawfirm.com

August 19, 2022

**BY ONLINE FILING**

Labor & Workforce Development Agency
Attn: PAGA Administrator
1515 Clay Street, Suite 801
Oakland, California 94612
PAGA@dir.ca.gov

**BY CERTIFIED MAIL, RETURN RECEIPT REQUESTED**

Sprout Mortgage, LLC
Michael Strauss (CEO)
Shea Pallante (President)
Christopher Wright (EVP and CFO)
Elliot Salzman (EVP and CCO)
6501 Irvine Center Drive
Irvine, CA 92618

Sprout Mortgage, LLC
Michael Strauss (CEO)
Shea Pallante (President)
Christopher Wright (EVP and CFO)
Elliot Salzman (EVP and CCO)
90 Merrick Avenue Suite 505
East Meadow, NY 11554

Recovco Mortgage Management LLC
Attn: Legal Department
90 Merrick Avenue Suite 505
East Meadow, NY 11554

Re:   *First Amended Notice of Violations of the California Labor Code*
       *(Original Notice dated July 15, 2022 – LWDA Case No. LWDA-CM-895663-22)*

To Whom It May Concern:

Soderstrom Law PC and Forootan Law represent Jared Sawyer and Scott Harvey ("Employees"), who are former employees of Sprout Mortgage, LLC, Recovco Mortgage Management LLC, Michael Strauss (Chief Executive Office of Sprout), Shea Pallante (President of Sprout), Christopher Wright (Executive Vice President and Chief Financial Officer), Elliot Salzman (Executive Vice President and Chief Credit Officer), and possibly one or more of their affiliates and/or joint employers (collectively, "Defendants").

August 19, 2022
PAGA Administrator
Sprout Mortgage, LLC
Recovco Mortgage Management LLC
Strauss, Pallante, Wright, and Salzman
Page 2 of 6

In accordance with California Labor Code section 2699.3, and on behalf of Employees and all other aggrieved employees in California who suffered from one or more of the alleged violations, this First Amended Notice gives written notice to the Labor & Workforce Development Agency and to Defendants of serious past and ongoing violations of the Labor Code that have occurred and/or been discovered through reasonable diligence and additional investigation since the Original Notice was filed and mailed on July 15, 2022.

Each Employee is an "aggrieved employee" as the term is used in California's Private Attorneys General Act, Labor Code § 2698 *et seq.* ("PAGA"). The additional violations described below occurred in connection with Employees' and other exempt, non-exempt, and commission-eligible employees' employment for Defendants in California during the relevant time period.

All of the facts, theories, and violations previously alleged and set forth in the Original Notice are expressly incorporated by reference into this First Amended Notice. This First Amended Notice is intended to supplement and not replace the allegations in the Original Notice, a copy of which is attached as Exhibit A. Unless we are notified of an investigation by the Administrator within the period established by Section 2699.3, Soderstrom Law PC and Forootan Law intend to commence a civil action and/or supplement an existing civil action against Defendants for the violations alleged and described in the Original Notice and this First Amended Notice and to seek all civil penalties and other remedies available on behalf of themselves, all other aggrieved employees, and the State of California.

## I. LIABLE EMPLOYERS

Defendants are Employees' and other aggrieved employees' employers and/or joint employers. Defendants are liable for any and all violations of the Labor Code that Defendants committed against them during the relevant time period and for the civil penalties provided for by the Labor Code.

Strauss, Pallante, Wright, and Salzman acted on behalf of Sprout and/or Recovco, individually and as officers, agents, or employees, and they are personally liable for certain of the Labor Code violations alleged herein.

Labor Code section 558 makes any "employer or other person acting on behalf of any employer who violates, or causes to be violated, a section of this chapter or any provision regulating hours and days of work in any order of the Industrial Welfare Commission" liable for a civil penalty that includes the recovery of wages to be paid to the affected employee.

Labor Code section 558.1 makes any "employer or other person acting on behalf of an employer, who violates, or causes to be violated any provision regulating minimum wages or hours and days of work in any order of the Industrial Welfare Commission, or causes to be violated, Sections 203, 226, 226.7, 1193.6, 1194, or 2802" liable for such violations.

August 19, 2022
PAGA Administrator
Sprout Mortgage, LLC
Recovco Mortgage Management LLC
Strauss, Pallante, Wright, and Salzman
Page 3 of 6

Labor Code section 1197.1 makes any "employer or other person acting either individually or as an officer, agent, or employee of another person, who pays or causes to be paid to any employee a wage less than the minimum fixed by an applicable state or local law, or by an order of the commission," liable for a "civil penalty, restitution of wages, liquidated damages payable to the employee, and any applicable penalties imposed pursuant to Section 203."

Strauss, Pallante, Wright, and Salzman are personally liable for civil penalties for violations of the applicable Labor Code sections.

## II.    AGGRIEVED EMPLOYEES

Sawyer worked for Defendants in California from October 2021 to July 2022. He was assigned to Defendants' Irvine location. During his employment he held the positions of Branch Manager and Vice President of Distributive Retail. He was a commission-eligible employee, and he was paid commission wages based on a calendar month. He personally suffered from Defendants' Labor Code violations alleged in the Original Notice.

Harvey worked for Defendants in California from approximately March 2022 until July 2022. He was assigned to Defendants' Irvine office. During his employment, he held the position of Senior Mortgage Loan Officer and was classified as a non-exempt employee. He was also a commission-eligible employee who earned and was paid commissions based on a calendar month. Harvey personally suffered from Defendants' Labor Code violations alleged in the Original Notice, including but not limited to: failure to timely pay all minimum, overtime, premium, and commission wages owed; willful failure to timely pay final wages upon termination; failure to pay waiting time penalties; knowing and intentional failure to provide timely, accurate, and complete wage statements; failure to reimburse business expenses; failure to give fully signed copies of written commission plans and obtain fully signed receipts; and imposing unlawful written terms and conditions of employment.

Employees worked with hundreds of other exempt and non-exempt employees, and commission-eligible employees, in California during the relevant time period. Their experience gave them a thorough understanding of Defendants' employment policies and practices. Employees personally suffered from Defendants' Labor Code violations and witnessed and learned of the same and other violations committed against other employees in California.

## III.    ADDITIONAL KNOWN LABOR CODE VIOLATIONS

In addition to the Labor Code violations alleged in the Original Notice, Defendants committed the following additional Labor Code violations against Employees and other aggrieved employees.  Employee sets forth the following additional allegations to ensure the LWDA and Defendants have sufficient notice of the specific provisions of the California Labor Code alleged to have been violated, including the facts and theories to support the alleged violations. Employees

August 19, 2022
PAGA Administrator
Sprout Mortgage, LLC
Recovco Mortgage Management LLC
Strauss, Pallante, Wright, and Salzman
Page 4 of 6

reserve the right to supplement or amend the Original Notice and this First Amended Notice with additional alleged violations, facts, and theories as they are discovered and to the extent they are not sufficiently alleged by the Original Notice or this First Amended Notice.

### A.     Violations of Sections 1182.12, 1194, and 1197 (Minimum Wages Violations)

Labor Code sections 1182.12, 1194, and 1197 requires employers to pay at least the legal minimum wage for all hours worked by employees in California.

In addition the violations alleged in the Original Notice, Defendants also failed to pay Harvey and other employees it classified as non-exempt any wages for hours worked over 8 in a day or 40 in a week, including for the time they spent logging into the timekeeping system, working during what should have been an off-duty meal period, and for other off-the-clock work. Harvey regularly worked over 8 hours in a day, but he was not paid wages for such overtime work.

As a result of nonpayment, Defendants did not pay Harvey and other non-exempt employees in California at least the legal minimum wage for all hours worked. Defendants have violated Labor Code sections 1182.12, 1194, and 1197.

### B.     Violations of Sections 510 and 1197 (Overtime Wages Violations)

Labor Code section 510 requires employers to compensate all employees at 1.5 times their regular hourly rate for all hours worked over 8 hours in a day and over 40 hours in a week, and two times their regular hourly rate for all hours worked over 12 hours in a day or over 8 hours on the seventh day of the week.

In addition the violations alleged in the Original Notice, Defendants also failed to pay Harvey and other employees it classified as non-exempt any wages for hours worked over 8 in a day or 40 in a week, including for the time they spent logging into the timekeeping system, working during what should have been an off-duty meal period, and for other off-the-clock work. Harvey regularly worked over 8 hours in a day, but he was not paid overtime wages for such overtime work. To the extent Harvey's time records showed more than 8 hours of work in a day, his wage statements did not reflect such hours of work or overtime pay

As a result of nonpayment, Defendants did not pay Harvey or other employees in California overtime wages for all overtime hours worked. Defendants have violated Labor Code sections 510 and 1197.

### C.     Violations of Sections 512 and 226.7 (Meal Periods)

Labor Code section 512 requires employers to provide non-exempt employees an off-duty, uninterrupted 30-minute meal period if the employee works more than five hours in a day, and a

August 19, 2022
PAGA Administrator
Sprout Mortgage, LLC
Recovco Mortgage Management LLC
Strauss, Pallante, Wright, and Salzman
Page 5 of 6

second off-duty, uninterrupted 30-minute meal period if the employee works more than 10 hours in a day. These meal periods must be free of all work duties.

In addition the violations alleged in the Original Notice, Defendants failed to provide timely, off-duty, uninterrupted 30-minute meal periods to Harvey and other employees it classified as non-exempt, and failed to compensate them for one additional hour of pay at their regular hourly rate for each meal period that was not provided or was missed, shortened, interrupted, on-duty, or untimely. Harvey regularly performed work during what should have been an off-duty meal period, but Defendants did not ask or require him to report noncompliant meal periods and did not pay him premium wages for noncompliant meal periods.

Defendants have violated Labor Code sections 512 and 226.7 with respect to noncompliant meal periods and failure to pay premium wages.

### D.     Violations of Section 226.7 (Rest Breaks)

Labor Code section 226.7 requires employers to provide non-exempt employees a rest period mandated by an applicable statute, or applicable regulation, standard, or order of the Industrial Welfare Commission, the Occupational Safety and Health Standards Board, or the Division of Occupational Safety and Health. Under paragraph 12 of the governing Industrial Wage Order, employers must permit non-exempt employees to take 10 minutes of rest for every four hours worked, taken in the middle of the work period unless impracticable. Under Labor Code section 226.7 and paragraph 12 of the governing Industrial Wage Order, when employers do not provide compliant rest breaks, they must pay employees an additional hour of pay at the employees' regular rate of pay for each violation.

Defendants failed to provide timely, off-duty, uninterrupted 10-minute rest breaks to Harvey and other employees it classified as non-exempt, and failed to compensate them for one additional hour of pay at their regular hourly rate for each rest break that was not provided or was missed, shortened, interrupted, on-duty, or untimely. Harvey regularly performed work during what should have been an off-duty rest break, but Defendants did not ask or require him to report noncompliant rest breaks and did not pay him premium wages for noncompliant rest breaks.

Defendants violated Labor Code sections and 226.7 with respect to noncompliant meal periods and failure to pay premium wages.

### E.     Violations of Section 226 (Wage Statements)

In addition the violations alleged in the Original Notice, Defendants violated Section 226 by failing to provide Employees and other exempt and non-exempt employees accurate itemized wage statements reflecting all hours worked, all wages owed (including premium wages), appropriate deductions, and all hourly rates and the hours worked at such rates.

August 19, 2022
PAGA Administrator
Sprout Mortgage, LLC
Recovco Mortgage Management LLC
Strauss, Pallante, Wright, and Salzman
Page 6 of 6

## IV.    CIVIL PENALTIES FOR LABOR CODE VIOLATIONS

Defendants are liable for specific or default civil penalties as provided by Labor Code section 2699 based on the violations described in the Original Notice, this First Amended Notice, and similar violations that may be identified after further investigation or during discovery.

Please contact me at 949.667.4700 or jamin@soderstromlawfirm.com if you would like to discuss this matter.

Very truly yours,

SODERSTROM LAW PC

Jamin S. Soderstrom