UNITED STATES DISTRICT COURT :

EASTERN DISTRICT OF NEW YORK :     Civ. Action 2:22-cv-04004-JMA-LGD

_____ :

NATHANIEL AGUDELO, Et Al. :     NOTICE OF MOTION AND

    Plaintiffs :

v. :     MOTION FOR

:

RECOVCO MORTGAGE MGT., LLC :     DISMISSAL WITH PREJUDICE

SPROUT MORTGAGE, LLC :

MICHAEL STRAUSS, SHEA PALLANTE :     Per Rules 8, 9, 12(b)(6)

CHRISTOPHER WRIGHT  AND :

ELLIOT SALZMAN. :     BY ELLIOT SALZMAN, *PRO SE*

    Defendants :     WITH MEMORANDUM OF LAW

_____

FILED
CLERK
**Box.com**
6/23/2024
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

TAKE NOTICE: upon the attached Memorandum of Law, Elliot Salzman*, pro se*, will move this Court before U.S. District Judge Joan M. Azrack at the Courthouse, 225 Cadman Plaza East, Brooklyn, NY 11201, on the first available motion date or the Motion to be taken on the papers when fully briefed at the Court's discretion, to enter Dismissal with Prejudice of the Third Amended Complaint ("TAC" EDF #243) in his favor for the reasons set forth herein. Salzman is exempt from filing a Letter requesting a pre-Motion conference per U.S.D.J. Azrack's Rule IV.B.(par. 2).  Salzman moves for dismissal pursuant to F.R.Civ.P. 8, 9, and 12(b)(6). [1]

_____

Elliot Salzman, pro se, 12156 N.Cedar Trace Dr. Jacksonville, FL (201) 394-3500

_____

[1] Salzman reserves all objections, answers, affirmative defenses, motions, counterclaims, cross-claims and third-party claims, if needed. This pleading shall supersede any prior pleading filed in Salzman's name in this or any California matter by anyone else.  Salzman relies on the arguments made in any Motion to Dismiss by any other party in addition to those set forth below. Pleadings of a *pro se* party should be read "to raise the strongest arguments that they suggest." *Brownell v. Krom*, 446 F.3d 305, 310 (2d Cir. 2006); *Tracy v. Freshwater,* 623 F.3d 90,101(2d Cir. 2010).

# Contents

TABLE OF AUTHORITIES ..................................................................................................... 1

'FACTS' ................................................................................................................................... 4

STANDARDS OF REVIEW: MOTION TO DISMISS ......................................................... 7

   A.   Rule 12(b)(6) ................................................................................................................. 7

   B.   Rules 8 and 9 ................................................................................................................. 8

**ARGUMENT** ........................................................................................................................ 10

I.    SALZMAN IS NOT AN EMPLOYER; HE DOES NOT MEET ANY OF THE PRONGS OF THE ECONOMIC REALITY TEST BASED ON THE COMPLAINT. .......................................... 10

   A.   Salzman Did Not Have The Right To Hire or Fire or Modify Employees' Conditions. ............... 11

   B.   Salzman Had No Control Over Sprout's Widespread Workers' Work Schedules or Duties. .......... 13

   C.   Salzman Did Not Set Pay Rates or Methods of Payment. .............................................. 14

   D.   Salzman Did Not Prepare or Pay Wages and Did Not Maintain Employment Records. ............... 15

   E.   Salzman Did Not Own the Business or The Facilities. ................................................... 16

II.   SALZMAN HAD NO PRIOR NOTICE OF ANY IMPENDING SHUTDOWN. ........................... 19

   III.   DISMISSAL UNDER RULES 8, AND/OR 9 IS APPROPRIATE. ........................................ 20

IV.   ALL STATE LAW CLAIMS MUST BE DISMISSED; THEY ARE PREEMPTED. ................. 22

CONCLUSION ....................................................................................................................... 23

# TABLE OF AUTHORITIES

## Cases

*Advanced Cardiovascular Sys., Inc. v. SciMed Life Sys.,* 988 F.2d 1157, 1160 (Fed. Cir. 1993) ............... 8

*Aguilar v. New Dairy Del., Inc.,* <u>22 civ 3700</u>(NSR)(S.D.N.Y. 9/8/2023) .................................................... 19

*Aldridge v. Miss. Dept. of Corrections,* 990 F.3d 868(5th Cir. 2021) ......................................................... 22

*Alijaj v. Wells Fargo,* <u>17-cv-1887(VSB)</u>(S.D.N.Y. 2/9/2022) ...................................................................... 8

*Anderson v. Sara Lee Corp.,* 508 F.3d 181,191(4th Cir. 2007) ................................................................... 23

*Ayala v. Nissan North America, Inc.,* <u>6:20-cv-1625-RBD-GJK</u>(M.D.Fla. 6/3/21) ...................................... 23

*Barfield v. N.Y.City Health & Hosps. Corp.,* 537 F.3d 132,142(2nd Cir. 2008) .......................................... 10

*Bartol v. Barrowclough,* 251 F.Supp.3d 855(E.D. Pa. 2017) ....................................................................... 9

*Baystate Alt. Staffing, Inc. v. Herman,* 163 F.3d 668(1st Cir. 1998) ......................................................... 15

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544,555(2007) ................................................................... 8, 9, 21

*Bravo v. Established Burger One LLC*, 2013 U.S. Dist. LEXIS 146237, at *17-18 (S.D.N.Y. Oct. 8, 2013) ......................................................................................................................................................... 18

*Bule v. Garda CL Southeast, Inc.,* 2014 U.S.Dist.Lexis 95618, at *5(S.D.Fla. 7/11/14) .......................... 23

*Carter v. Dutchess Community College,* 735 F.2d 8(2nd Cir. 1984) ............................................. 10

*Cohen v. Postal Holdings,* 873 F.3d 394(2nd Cir. 2017) .......................................................... 24

*Cui v. East Palace One, Inc.*, U.S.Dist.Lexis 161120 at *21(S.D.N.Y. 2019) ............................ 19

*Daneskjold v. Hausrath,* 82 F.3d 37,43(2nd Cir. 1996) ........................................................... 10

*Dang v. Smith,* 190 Cal.App.4th 646(2010)........................................................................ 14

*Dasrath v. Stony Brook Univ. Med. Ctr.*, 965 F. Supp. 2d 261, 272 (E.D.N.Y. 2013) ................. 18

*Destfino v. Kennedy,* 2009 U.S.Dist.LEXIS 18138, at *1(E.D.Cal. 1/7/09) ................................. 9

*Fernandez v. CheckAltEras, Inc.*, 2020 U.S. Dist. LEXIS 160321, at *14 (S.D. Fla. Aug. 28, 2020) ....... 23

*Ferrer v. Citigroup Global Markets, Inc.*, 09-CV-5095 (NGG), 2011 WL 1322296, at *5 n. 5 (E.D.N.Y. Mar. 31, 2011)........................................................................................................... 17

*Gamm v. Sanderson Farms, Inc.*, 944 F.3d 455(2nd Cir. 2019) .............................................. 21

*Garcia v. Nachon Enters., Inc.*, 223 F.Supp.3d 1257, 1286 (S.D. Fla. 2016) ........................... 23

*Garnett-Bishop v. Ny.Y. Cmty. Bancorp, Inc.*, 12-cv-2285(ADS)(ARL)(E.D.N.Y. 11/6/204).......... 17

*Gill v. Acacia Network*, 2015 U.S. Dist. LEXIS 34009, at *15-17(S.D.N.Y. 3/18/15) .................. 17

*Herman v. RSR Security Services Ltd.,* 172 F.3d 132,139(2nd Cir. 1999) ................................ 10

*Ho v. Nationstar Mortgage,* 2:19-cv-10532-ODW(C.D.Cal. 12/29/20)......................................... 9

*In re Lyondell Chemical Co.,* 491 B.R.41,50,n.48(Banr. S.D.N.Y. 2013)....................................... 6

*In re Transcare Corp.*, 2020 WL 2278172 (Bankr.S.D.N.Y. 5/7/2020)........................................ 12

*Kunglig Jarnvagsstyrelsen v. Dexter Carpenter, Inc.*, 32 F.2d 195,198(2d Cir.) *cert.den.*, 280 U.S. 579(1929)............................................................................................................... 16

*L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011) ..................................... 7

*McCall v. Pataki,* 232 F.3d 321,322(2nd Cir. 2000)............................................................... 8

*Pac. Marine Ctr., Inc. v. Silva,* 2009 U.S.Dist.LEXIS 93731 at *20(E.D.Cal. 10/7/09) ............... 21

*Papasan v. Allain,* 478 U.S. 265,286(1886) ......................................................................... 8

*Pillars v. Gen. Motors LLC,* 957 F.3d 357,360 (2d Cir. 2020)................................................ 14

*Pines Props., Inc. v. Amer. Marine Bank,* 156 F.App'x 237,240 (11th Cir. 2005)........................ 22

*Roman v. Marietta Constr., Inc.,* 147 F.3d 71,76(1st Cir. 1998)............................................... 9

*Sheng-Wen Cheng v. D.O.J.,* 23-civ-3983(AT)(GS)(S.D.N.Y. 2/23/2024)..................................... 16

*Smith v. Loc. 819 I.B.T.*, 291 F.3d 236,240(2nd Cir. 2002) ..................................................... 8

*Sollberger v. Wachovia Secs., LLC,* 2010 WL 2674456 at *4(C.D.Cal. 6/20/2010) ...................... 9

*Steamfitters Indus.Pension Fund v. Endo Int'l PLC,* 771 F.App'x 494 (2nd Cir. 2019) .............. 22

*Teri & Watkins v. Spinelli,* 05-cv-2777(PKC)(RML)(E.D.N.Y. 10/28/2013)................................. 17

*Tombrello v. USX Corp.*, 763 F.Supp.541,545(N.D.Ala. 1991)................................................... 23

*Tracy v. NVR, Inc.*, 667 F. Supp. 2d 244, 247 (W.D.N.Y. 2009) ............................................ 18

*Tutuianu v. N.Y. Presbyterian Health Care Plan,* 09-cv-0788(JG)(LB)(E.D.N.Y. 12/15/09) .......... 19

*Walz v. 44 & X, Inc.,* 2012 U.S.Dist.LEXIS 161382 at *8 (S.D.N.Y. 11/7/12)............................... 8

*Weng v. HungryPanda US, Inc.,* 2022 WL 292799 at *14(S.D.N.Y. 1/21/2022) ........................... 9

*Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315,320(2nd Cir. 2021).............................................. 21

*X-Men Security, Inc. v. Pataki,* 196 F.3d 56,71(2nd Cir. 1999) ................................................ 9

*Zheng v. Liberty Apparel Co.,* 355 F.3d 61(2nd Cir. 2003) .................................................... 11

## Statutes

29 U.S.C. §255 ............................................................................................................ 9

Del.Code §18-402 ........................................................................................................ 4

NYLL§860 ................................................................................................................................ 17

## Other Authorities

5C,Wright & Miller, Fed.Practice & Procedure(Civ) 2d §1382 at 465(2004) ............................ 6
Butcher & Talon, *Efinancialcareers*, 4/27/23 .......................................................................... 4

## Rules

F.R.Civ.P. 12(b)(6) .............................................................................................................. 10, 19
F.R.Civ.P. Rule 12(f) ................................................................................................................... 6
F.R.Civ.P. Rules 8 and 9 ......................................................................................................... 8, 21
FL.R.Civ.P. 1.130(b) .................................................................................................................... 6

**MEMORANDUM OF LAW IN SUPPORT OF SALZMAN'S MOTION TO DISMISS**

'FACTS' [2]

Sprout Mortgage, LLC's ("Sprout") top executives were: Chief Executive Officer Michael Strauss (TAC, ¶¶ 38-39); Chief Financial Officer Christopher Wright (TAC, ¶43) and President and Chief Production Officer Shea Pallante (TAC, ¶47). Shea was also a managing agent and director (TAC ¶49). Others holding similar titles included: Plaintiff Amanda Cooper, Vice-President of Credit (TAC, ¶18); Plaintiff Jared Sawyer, Vice-President of Distributive Retail (TAC, ¶21); Plaintiff Scott Harvey, Senior Mortgage Loan Officer (TAC, ¶22); Holly Keith, Senior Vice-President of Secondary Due Diligence, and Christine Moore, Senior Vice-President of Underwriting Credit (TAC, ¶56). Elliot Salzman was employed as "Executive Vice-President and Chief Credit Officer" (TAC, ¶50). Typical to most financial institutions, many people held the honorific, meaningless rank of 'Vice-President'.[3]

CEO Strauss "directed the closure of Defendants' [Sprout and Recovco] business and the non-payment of all employees' paychecks from New York" (TAC, ¶40). Strauss "[a]s CEO of Sprout…had the [apparently sole] authority to hire and fire employees and to set their rate of pay and other conditions of employment." (TAC, ¶41). "Strauss also exercised authority and control over employees' health insurance plans, including by instructing that the plans be canceled

---

[2] Recitation of 'facts' are those alleged in Plaintiffs' Third Amended Complaint ("TAC"). Such is not an admission of any truth or sufficiency of such allegations or liability by Salzman.

[3] All corporate-style titles used in the TAC are illusory under Delaware law. Recovco Mortgage Management, LLC is a Delaware entity formed on January 14, 2009 and registered to do business in New York on May 20, 2009. (N.Y. Sec. of State Doc. 3812984). Delaware entity Sprout Mortgage LLC's managing member is Sprout Holdings, LLC, 90 Merrick Avenue, Suite 505, East Meadow, New York. (TAC, ¶¶ 26- 32). Delaware LLCs don't have officers, only managers. Del.Code §18-402. Judicial notice of these public records and Delaware law is requested. F.R.E. 201. Strauss and Wright did assume the authority and duties of a typical CEO and CFO. Other 'titles' were mostly meaningless. "Vice Presidents (VPs) are a dime a dozen at any decent size bank. Goldman Sachs has around 13,000 by our count." Butcher & Talon, *Efinancialcareers*, 4/27/23.

retroactively…" (TAC, ¶42).    Further: "As CFO, Wright exercised authority and control over employees' rates of pay and conditions of employment because his approval was required for raises and promotions." (TAC, ¶44). Moreover, "Wright was responsible for hiring employees…" presumably with the explicit approval of Strauss (TAC, ¶45).

On July 6, 2022, "Strauss instructed other [unnamed] individuals not to issue paychecks." (TAC, ¶64). President Pallante directed Sprout's activities and it was Pallante who notified 300+ employees via videoconference "the company would be shut down, everyone's employment was terminated immediately, and they should not return to work tomorrow." (TAC, ¶¶49, 128).

Plaintiffs conclusory allege Salzman had authority to "hire and fire employees and set their rate of pay and other conditions of employment" (TAC, ¶52). Again, in only conclusory terms, they allege "Salzman was responsible for approving the salaries and promotions of all employees under the umbrella of credit and due diligence at Sprout." (TAC, ¶53).[4]    Supposedly, Plaintiff Vice-President, Credit Officer Amanda Cooper  allegedly, "was promoted twice, with attendant pay raises, while working for Defendants. Each time she received an offer letter confirming her new position and pay, it was signed by Salzman." (TAC, ¶54). Plaintiffs admit Salzman was not Cooper's supervisor; that post was held by Christine Moore.  Plaintiffs admit Cooper interacted with Salzman only when Moore was not at work. *Id.*

---

[4] Only about 100 people worked in New York.  New York had several departments other than Credit, including: Finance, Closing, Human Resources, and Secondary Due Diligence.  (See, e.g., TAC ¶¶ 18-22; SAC ¶¶ 28, 31, 87-93). Although TAC ¶51 claims Salzman resides in Long Beach, NY, this is contradicted by TAC ¶11.  Salzman resides and is a citizen of Florida.

Allegedly, Salzman signed an offer letter for only <u>one</u> other employee of the 548 referred to in TAC ¶97, i.e., non-plaintiff Cedric Queen (TAC, ¶55). Any such 'letter' was issued by the Human Resources department, not by Salzman. [5]

TAC ¶56 is very telling.  Plaintiffs allege Salzman directly supervised former Plaintiff SVP Holly Keith and non-plaintiff Christine Moore and allegedly his "approval was required for these employees to receive raises or <u>to make any new hires.</u>"  This would indicate Keith and Moore hired people, not Salzman.  Of course, there is no factual support provided, and this allegation directly contradicts Plaintiffs' admission it was Strauss who did the hiring and firing (TAC ¶41).

TAC ¶57 and TAC ¶58 are false, hearsay, and irrelevant.  Keith has denied the veracity of ¶57, and this is known to attorney Menken.  Salzman did not run the company's training program. Such allegations clearly do not support the conclusion Salzman could "hire and fire" Cooper, Queen, or that such 'ability' extended to anyone else. The social media nonsense set forth in TAC ¶59 should be disregarded by the Court entirely.[6] At no point do Plaintiffs allege Salzman was an owner, member, shareholder, or that he had any control over the Company's finances.

---

[5] No such letter to Queen or Cooper is annexed as an Exhibit, and reference to such letters is inadmissible hearsay. Such allegations are not well-pleaded facts and should be disregarded in consideration of this Motion.   Some jurisdictions require any document referred to in a pleading to be annexed as an Exhibit, or such allegation referencing the document is not deemed admitted. See, e.g., FL.R.Civ.P. 1.130(b). Cf., *In re Lyondell Chemical Co.,* 491 B.R.41,50,n.48(Banr. S.D.N.Y. 2013).

[6] Attorney Menken wants the court and a jury to translate "a company I own" into "I own this company" i.e. Sprout. Shame on him. This allegation was included primarily as an *ad hominem* attack on Salzman meant to prejudice a jury. Nobody could seriously jump to the conclusion Salzman owned Sprout from this diatribe about the Second Amendment. Salzman requests Paragraphs 59 and 60 be struck as irrelevant, scandalous and inflammatory. F.R.Civ.P. Rule 12(f); 5C,Wright & Miller, Fed.Practice & Procedure(Civ) 2d §1382 at 465(2004).

**Salzman is not named again in the entire 56-page Third Amended Complaint.** All Causes of Action labelled "As to All Defendants" do not name Salzman specifically, nor do they delineate which Defendant allegedly performed the supposedly tortious act(s).  (See Sec. III).

**Plaintiffs do not sufficiently allege any facts that it was Salzman who 'did' <u>any</u> of the 'acts' relating to the layoffs complained of, or provide any cognizable, plausible allegation Salzman owned or exercised control over either 'corporate defendant'.**

STANDARDS OF REVIEW: MOTION TO DISMISS

A.  <u>Rule 12(b)(6)</u>

To survive a F.R.Civ.P. Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This standard demands "more than a sheer possibility that a defendant has acted unlawfully." *Id*. "Plausibility . . . depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).

A complaint must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678. Finally, although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Ibid.*

A District Court may dismiss a complaint, or any part of it, for failure to state a claim if the plaintiff has not set forth factual allegations in support of his claim that would entitle him to relief. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544,555 (2007). "The purpose of the rule is to allow the court to eliminate actions that are fatally flawed in their legal premise and destined to

fail, and thus spare the litigants the burdens of unnecessary pretrial and trial activity." *Advanced Cardiovascular Sys., Inc. v. SciMed Life Sys.,* 988 F.2d 1157, 1160 (Fed. Cir. 1993), reh'g den.

Plaintiffs must plead "enough *facts* to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570. See, e.g., *Walz v. 44 & X, Inc.,* 2012 U.S.Dist.LEXIS 161382 at *8 (S.D.N.Y. 11/7/12)(dismissing putative class action for failure to plead facts in support of allegations). "A court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 129 S.Ct. 1937,1950 (2009). Therefore, if allegations are merely "conclusory," they are "not entitled to be assumed true." *Id.* Even if a court decides that the factual allegations are entitled to an assumption of truth, however, the facts must also "plausibly suggest an entitlement to relief." *Iqbal,* 129 S.Ct. at 1952.

In reviewing a Motion to Dismiss under 12(b)(6), the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain,* 478 U.S. 265,286(1886) (cited with approval in *Twombly,* 550 U.S. at 555). "Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Smith v. Loc. 819 I.B.T.*, 291 F.3d 236,240(2d Cir. 2002). "The sufficiency of a complaint is a matter of law that the court is capable of determining based on its own reading of the pleading and knowledge of the law." *McCall v. Pataki,* 232 F.3d 321,322(2d Cir. 2000); *Alijaj v. Wells Fargo,* <u>17-cv-1887(VSB)</u> (S.D.N.Y. 2/9/2022)(labor law complaint dismissed with prejudice under 12(b)).

B. <u>Rules 8 and 9</u>

To satisfy the requirements of F.R.Civ.P. Rules 8 and 9 the statement of allegations must give each defendant "fair notice of what the plaintiff's claim is" <u>as to the specific defendant</u> and "the grounds upon which it rests." *Twombly, supra,* 550 U.S. at 555. This requires more than

generalized, group (shotgun type) allegations and "a formulaic recitation of the elements of a cause of action will not do...Factual allegations must be enough to raise a right to relief above the speculative level…" *Ibid.*

Conclusory allegations sweeping all defendants into the ambit of an allegation without naming each and describing what each allegedly did are insufficient. *Iqbal*, *supra,* 556 U.S. at 662; *Destfino v. Kennedy,* 2009 U.S.Dist.LEXIS 18138, at *1 (E.D.Cal. 1/7/09)(dismissal when complaint grouped all defendants together without specifying which defendants engaged in which conduct). Allegations a defendant participated in a group without specific details relating to that person have long been held to be insufficient to state a plausible claim. See, e.g., *X-Men Security, Inc. v. Pataki,* 196 F.3d 56,71(2d Cir. 1999)(reversing denial of motion to dismiss complaint that had conclusory allegations of 'participation' without concrete factual allegations of acts); and *Bartol v. Barrowclough,* 251 F.Supp.3d 855(E.D. Pa. 2017)(affirming dismissal of shotgun pleading, plaintiff failed to state clearly "how each and every defendant is alleged to have violated plaintiff's rights").   Precisely on point is *Ho v. Nationstar Mortgage,* 2:19-cv-10532-ODW (C.D.Cal. 12/29/20) citing *Sollberger v. Wachovia Secs., LLC,* 2010 WL 2674456 at *4(C.D.Cal. 6/20/2010) :

> One common type of shotgun pleading comes in cases with multiple defendants where the plaintiff uses the omnibus term "Defendants" throughout a complaint by grouping defendants together without identifying what the particular defendants specifically did wrong. Another type is where the plaintiff recites a collection of general allegations toward the beginning of the Complaint, and then each count incorporates every antecedent.

The  First Cause of Action is pursuant to the FLSA. (TAC ¶¶141—148). The Second and Third Causes of Action are under the New York Labor Laws (TAC ¶¶149-156). The Eighth to

Twenty-Third Causes of Action are under only California Laws (TAC ¶¶ 191-314).[7] Each Cause incorporates all prior allegations in shotgun fashion, but none of the allegations within the Causes specifically refer to Salzman. No specific allegation supported by cogent facts demonstrates Salzman is the 'employer' or an owner thereof. None factually state Salzman had any actual part in the layoffs. None can survive Rule 12(b)(6) dismissal, as next discussed.

## ARGUMENT

I.    SALZMAN IS NOT AN EMPLOYER; HE DOES NOT MEET ANY OF THE PRONGS OF THE ECONOMIC REALITY TEST BASED ON THE COMPLAINT.

For Plaintiffs to survive this F.R.Civ.P. 12(b)(6) Motion to Dismiss, the court would have to determine Salzman should be deemed a 'joint employer'. Under the FLSA "the overreaching concern is whether the alleged employer possessed the power to control the workers in question, with an eye to the 'economic reality' presented by the facts of each case." *Herman v. RSR Security Servs. Ltd.,* 172 F.3d 132,139(2nd Cir. 1999). The economic reality test in *Carter v. Dutchess Community College,* 735 F.2d 8(2nd Cir. 1984) has four prongs to evaluate if an employee could be held liable as a 'joint employer'. Did the employee:

1) Have the power to hire and fire the plaintiffs?
2) Supervise and control the plaintiffs' work schedules and conditions of employment?
3) Determine the rate and method of payment?
4) Maintain the employment records for all employees?[8]

---

[7] There are two Causes of Action with the heading 'Fifteenth Cause of Action" (TAC, pgs. 42, 43). Salzman again objects to the inclusion of the California claims in this Amended Complaint and repeats those made to U.S.M.J. Dunst (EDF #241). In the event of trial, they should be separated from the New York claims. Fourth to Seventh Causes pertain only to the corporate defendants.

[8] These were affirmed in *Daneskjold v. Hausrath,* 82 F.3d 37,43(2nd Cir. 1996). *Barfield v. N.Y. City Health & Hosps. Corp.,* 537 F.3d 132,142(2nd Cir. 2008)(none of factors individually is dispositive, nor are they exclusive).

The primary question before this Court is: does the Third Amended Complaint sufficiently state plausible factual allegations to determine whether Salzman is a 'joint employer' as a matter of law? *Zheng v. Liberty Apparel Co.,* 355 F.3d 61(2d Cir. 2003).

In determining "employer" status for individual defendants, the court must also consider that individual's (1) "operational control" and (2) "potential power." *Irizarry v. Catsimatidis*, 722 F.3d 99, 106 (2d Cir. 2013)(finding the CEO, President and Chairman of Board was an 'employer' under FSLA, since he "does not report to anyone else…personally owns the building in which Gristede's headquarters is located" does all the banking, the merchandising, and oversees the Human Resources and Consumer Affairs departments. *Id.* at 111-112). Operational control asks "at what level of a corporate hierarchy, and in what relationship with plaintiff employees, must an individual possess power in order to be covered by the FLSA?" *Id.*

**It is clear Salzman does not meet any of the four prongs:**

A.  Salzman Did Not Have The Right To Hire or Fire or Modify Employees' Conditions.

Plaintiffs, in one conclusory paragraph, claims Salzman could hire or fire employees (TAC ¶52). Yet, there is not one factual allegation substantiating this claim.  Plaintiffs admit they were hired by, employed by, paid by, and worked for Sprout Mortgage, LLC and/or Recovco Mortgage Mgt., LLC. (e.g., TAC ¶¶ 14-23, 24, 35, 37).  The Offer of Employment letters and the paychecks came to the employees directly from Sprout, and benefit letters from Recovco (TAC ¶29).

**Plaintiffs admit it was only CEO Strauss who "had the authority to hire and fire employees and set their rate of pay and other conditions of employment." (TAC ¶40).**  And, "CFO Wright was responsible for hiring employees who worked under him in the company's financial department." TAC ¶ 45.  It is not even alleged Sprout's President Pallante had any ability

11

to hire or fire any employee or set the conditions of their employment.  By logical extension, if the President couldn't do so, it follows his subordinates including Salzman, were unlikely to be able to do so, and certainly not without Strauss' approval.

In the only allegations having any loose claim to 'factual', Plaintiffs allege Cooper reported to Salzman when her superior Moore was not at work.  Yet, Plaintiffs admit Cooper lived and worked remotely in Pennsylvania (TAC ¶ 17). Similarly, Closing Specialist Owens lived in New Jersey and worked remotely (TAC ¶ 15). Such persons set their own schedules and determined how to perform their work-related duties. Steward worked in San Diego, California (TAC ¶19); Shirdel in Anaheim and Sawyer and Harvey in Irvine, California (TAC ¶¶ 20,21). Even Plaintiffs don't appear to know where Karen Kelley worked in California (TAC ¶¶ 23). Salzman had no ability to determine the working conditions of all the employees of Sprout, if indeed he had that ability for any of the Plaintiff employees. See, e.g., *In re Transcare Corp.*, 2020 WL 2278172 (Bankr.S.D.N.Y. 5/7/2020).

Plaintiffs do not allege Salzman hired or fired Cooper.  They do not allege he promoted her or set her pay rate, only that he congratulated her on the promotion (TAC ¶54). Indeed, Plaintiffs carefully do not allege Salzman even *wrote* the letter(s) to Cooper or to Queen, only that he *signed* them (TAC ¶¶54,55).  Even if, hypothetically, Salzman had the ability to recommend a person be hired, or promoted, within his small 'department', it does not follow he had the authority to do so without the approval of Strauss and/or Human Resources, which department is tasked with such function in almost all financial institutions.[9]

---

[9] As in almost all companies, promotions are approved by Human Resources, which issue such letters for department heads' signatures.  Plaintiffs cannot be permitted to leap from two isolated instances to a public policy argument widening the scope of 'employer' to every person who congratulates an employee on a promotion. See, e.g., *Robles v. Goddard Riverside Cmty,* 2009 WL

Most importantly, nowhere in the TAC is it alleged that Salzman <u>fired</u> ANY employee or had any reasonable foreknowledge of the shutdown.  He was a Credit Officer, not an operations officer. On July 6, 2022, without any warning mentioned in the TAC, "Strauss instructed other individuals not to issue paychecks." (TAC, ¶64). Strauss directed the non-payment of wages (TAC ¶38**).** Plaintiffs admit Strauss failed to remit the payroll taxes and was working with the IRS on a payment plan (TAC ¶ 96).  They further admit 'corporate defendants' and Strauss made deductions from employees' pay and failed to remit said sums to the insurance carrier and then canceled coverage, instructing his unnamed subordinates to terminate coverage retroactively (TAC ¶104).

President Pallante directed Sprout's activities and it was Pallante who notified the 300+ employees via videoconference "the company would be shut down, everyone's employment was terminated immediately, and they should not return to work tomorrow." (TAC, ¶¶49, 128). Certainly if the President terminated all of the employees, there was no need for any subordinate to do so again. Salzman was not the person whose decision-making caused Sprout's closure, and there is no allegation that he was. He did not have the right to unilaterally fire any employee or determine working conditions. [10]

B. <u>Salzman Had No Control Over Sprout's Widespread Workers' Work Schedules or Duties.</u>

Salzman was a Chief Credit Officer.  The TAC does not allege he had any control over all the workers in the New York facility, and certainly none in the California facility. Sprout had several departments other than Credit, including Finance, Closing Disclosure Specialists, Mortgage Loans,

---

1704627 at *3(S.D.N.Y. 6/17/2009) holding individual Board of Director members not liable because the plaintiff "proffered neither facts demonstrating any participation by such defendants in the discharge decision…" Nothing in case law supports such leap.

[10] But, if the Executive Vice-President is held accountable for such attenuated actions, it would then follow the Senior Vice-Presidents and the Branch Managers should similarly be accountable. And, if they are, then all the Vice-Presidents should be defendants in this action, *ad absurdum*.

Distributive Retail, Human Resources, and Secondary Due Diligence (See TAC ¶¶16, 21, 22, 56; also see SAC ¶¶ 28, 31, 87-93). Plaintiffs do not allege he had any input to those departments.

The sole allegations are: a) when Cooper's superior Christine Moore was not at work, she reported to Salzman (TAC ¶54); and b) Salzman supervised former Plaintiff Keith and Christine Moore (TAC ¶56). No factual support of examples of such supervision are provided. Plaintiffs improperly wish the court to extrapolate from these three people to an entire company of 548 employees on two coasts (TAC ¶97). Plaintiffs do not allege Salzman was ever in California or had any interaction with any California-based employees. All California Causes should be dismissed with prejudice.

Plaintiffs allege it was CFO Wright who exercised authority and control over employees' rates of pay and conditions of employment because his approval was required for raises and promotions. (TAC ¶44). Plaintiffs admitted it was CEO Strauss who "had the right to control, and did in fact control the hours, hourly pay, assignments and schedules of the named Plaintiffs and all Similarly Situated Employees." (See SAC ¶83, now recast in the general 'defendants' as TAC ¶102).[11]

C. <u>Salzman Did Not Set Pay Rates or Methods of Payment.</u>

There is no allegation Salzman could set pay rates, or the manner in which employees were paid. Even accepting the Cooper 'letter' at face value, it does not rise to the level of indicating Salzman could set the rate of pay for Cooper, much less for the entire company, or determine the

---

[11] The Plaintiffs' admissions in the Second Amended Complaint are always admissible against the pleader. They were clear, unambiguous statements of fact. *Pillars v. Gen. Motors LLC,* 957 F.3d 357,360 (2d Cir. 2020); *Dang v. Smith,* 190 Cal.App.4th 646(2010).

method of payment. Typically, such functions belong to a Human Resources Department.[12] And, as noted, such powers were solely reserved to Strauss and Wright.

There is no allegation in the TAC that Salzman had any control over the finances of either Company. It is not alleged he personally compensated or refused to compensate any employee. It is not alleged he signed paychecks, or had any role within the Finance department. It would be unjust to impose employer liability on him when he had no part in the decision to close the business (all Strauss) or the actual termination of the employees (Wright and Pallante). *Baystate Alt. Staffing, Inc. v. Herman,* 163 F.3d 668(1st Cir. 1998)(reversing finding of personal liability when defendants did exercise supervisory control over some employees, but neither defendant "controlled Baystate's purse-strings or made corporate policy about Baystate's compensation practices." *Id.* at 678-679.)

### D. Salzman Did Not Prepare or Pay Wages and Did Not Maintain Employment Records.

The TAC does not allege Salzman had any role in the preparation or payment of wages. It does allege this was the function of CFO Wright (TAC ¶ 44). ADP was the payroll servicer. (See TAC ¶ 29). Nor is there any allegation Salzman maintained all of the employment records—a function handled by the Sprout/Revcoco Human Resources Department. (See SAC ¶ 28).[13]

---

[12] The TAC alleges Salzman offered former Plaintiff Keith 60% of her wages to continue work after the shutdown, but Keith has repudiated such statement and attorney Menken is aware thereof, (set forth in Salzman's *Objection to Amendment*) but failed to excise such allegation. Even so, it does not indicate Salzman set such rate or was hiring or firing Keith. Apparently, it was CFO Wright who "continued working for Sprout and Recovco following the shutdown, and was responsible for winding down the companies' financial affairs, including making payments to the…handful of employees who were kept on after the shutdown…" (TAC ¶46). Hence, even assuming *arguendo* the truth of TAC ¶57, it would have been CFO Wright who instituted any such 'offer' to Keith and directed Salzman to communicate same to Keith.

[13] Plaintiffs have conveniently omitted the SAC admissions from the TAC. The Court may take notice of admissions by the party Plaintiffs. The SAC factual allegations noted "remain competent

E.  <u>Salzman Did Not Own the Business or The Facilities.</u>

The TAC indicates the New York facilities were owned or leased by either Sprout or Revcoco, certainly not by Salzman (TAC ¶27).  And, there is no allegation Salzman had any ownership interest in the two limited liability companies. Plaintiffs admit Sprout and Revcoco were Delaware limited liability companies (TAC ¶¶26, 27, 30, 31).  The Third Amended Complaint does <u>not</u> allege Salzman was a member or manager of either entity—he wasn't.

Plaintiffs' attempt to cast Salzman as an 'owner' based on the social media comment posted on Facebook is, at best, a red herring intended to mislead the Court and a jury.  Nothing in the quoted language would lead any reasonable person to believe Salzman was referring to himself as an owner of Sprout (TAC ¶59).  Such out-of-context comment was in response to the original poster- a business owner who had been accosted in his store. Plaintiffs follow this up with the unsubstantiated allegation Salzman's 'LinkedIn page listed Sprout as Salzman's sole 'association', clearly hoping the Court and a jury will assume the Facebook post means Salzman owns Sprout (TAC ¶60).  If this were not so ludicrous (bordering on unethical), it would be funny.  It isn't.

The Court is left with almost nothing Salzman would have been responsible for as an 'employer'.  The 'factual' allegations cited above relating to Strauss, Wright and Pallante essentially contradict the conclusory allegation as to Salzman in TAC ¶ 52.  Plaintiffs had 4 bites at this apple and never come close to making Salzman liable.

The analysis above is exactly the opposite of the situation in *Teri & Watkins v. Spinelli,* <u>05-cv-2777(PKC)(RML)</u>(E.D.N.Y. 10/28/2013) where the real employer Spinelli attempted to hide

---

evidence of the facts stated…like any other extra-judicial admission made by a party." *Sheng-Wen Cheng v. D.O.J.,* <u>23-civ-3983</u>(AT)(GS)(S.D.N.Y. 2/23/2024) citing *Kunglig Jarnvagsstyrelsen v. Dexter Carpenter, Inc.,* 32 F.2d 195,198(2d Cir.) *cert.den.*, 280 U.S. 579(1929).

behind the shield of his employment agency. The court found him to be a joint employer precisely because he did set the rate of pay, did fund the payroll, did maintain control over the employees scheduling, duties and records, and, as the sole attorney in the practice, did determine all functions of the law practice and those employed by it. Salzman did none of those things, and none are factually alleged in the TAC.

Courts frequently grant motions to dismiss FLSA and NYLL claims against individually-named defendants when Complaints are devoid of factual allegations sufficient to support a finding of "employer" status for an individual employee such as Salzman. See *Gill v. Acacia Network*, 2015 U.S. Dist. LEXIS 34009, at *15-17(S.D.N.Y. 3/18/15) (dismissing with prejudice complaint against the individually-named defendants who were members of the corporate employer's executive staff where plaintiffs "merely restate the legal test to qualify as an 'employer' under the statute, by noting that the executive staff was 'responsible for hiring and firing and in control of all conditions affecting our employment and compensation.'").

Instructive is this District's decision with nearly identical facts and procedure. *Garnett-Bishop v. N.Y. Cmty. Bancorp, Inc.*, 12-cv-2285(ADS)(ARL)(E.D.N.Y. 11/6/2014). Thirty-One Plaintiffs from five consolidated cases filed claims alleging the Defendant Bank and individual Defendant employees fired 400 people without warning and failed to pay back wages and other benefits. The court said the Amended Complaint should be dismissed under *Iqbal* because it lacked factual allegations of plausibility (see Sec. III, *infra*).

Similar to the First to Third Causes of Action in the TAC, the *Garnett* Plaintiffs tried to hold the individual employee defendants liable under NYSHRL, which is similar to FLSA. The Court was not persuaded and the same logic should be applied to this case:

 An individual qualifies as an "employer" when that individual has "an ownership interest in the relevant organization or the power to do more than carry out personnel decisions made by others." Id. (citing *Townsend v. Benjamin Enters., Inc*., 679 F.3d 41, 57 (2d Cir. 2012)). Courts have found that allegations of a defendant's corporate title, without more, are not enough to show that the defendant has the power "to do more than carry out personnel decisions"; rather, courts have required that plaintiff make specific allegations that a defendant had independent authority over personnel decisions, such as hiring, pay, schedule or termination. .. See *Dasrath v. Stony Brook Univ. Med. Ctr*., 965 F. Supp. 2d 261, 272 (E.D.N.Y. 2013) (finding that individual defendants were not "employers" …where "[t]he allegations in the amended complaint, even if true, demonstrate only that [two of the defendants] had the power to supervise [the] plaintiff in his daily duties and to evaluate his performance, … *Maher v. Alliance Mortgage Banking Corp*., 650 F. Supp. 2d 249, 260 (E.D.N.Y. 2009) ("The fact that [the defendant-sales manager/vice president] may have had supervisory control over [the] [p]laintiff's father and other employees at Alliance or that [the plaintiff's father] may have sought his permission to hire Plaintiff, without more, does not subject Defendant to liability…

Also, see, *Weng v. HungryPanda US, Inc.,* 2022 WL 292799 at *14(S.D.N.Y. 1/21/2022).

And, see, *Bravo v. Established Burger One LLC*, 2013 U.S. Dist. LEXIS 146237, at *17-18 (S.D.N.Y. Oct. 8, 2013) (dismissing FLSA and NYLL claims against four individual defendants where plaintiffs alleged that each individual defendant was a "principal" of a corporate defendant and that all of the individual defendants "exercised control over the terms and conditions of Plaintiffs' employment by exercising power to fire and hire, determining rate and method of pay, determining employee work schedules, maintaining employee records, and otherwise affecting the quality of employment" because "these conclusory allegations alone are insufficient to satisfy the 'economic reality test'"); *Tracy v. NVR, Inc*., 667 F. Supp. 2d 244, 247 (W.D.N.Y. 2009) ("mere boilerplate allegations that an individual meets the various prongs of the economic reality test stated solely upon information and belief and without any supporting details -- essentially 'a formulaic recitation of the elements of a cause of action' -- are insufficient to raise plaintiffs' right to relief 'above a speculative level' with respect to that individual's liability as an employer under the FLSA"). And, *Cui v. East Palace One, Inc.*, U.S.Dist.Lexis 161120 at *21(S.D.N.Y. 2019).

To survive this Motion, the Plaintiffs must demonstrate facial plausibility that Salzman is liable; this they have not and cannot do. *Iqbal,* 129 S.Ct. 1937,1949(2009); see, e.g., *Tutuianu v. N.Y. Presbyterian Health Care Plan,* 09-cv-0788(JG)(LB)(E.D.N.Y. 12/15/09) (unpub.)(motion dismiss granted). The Third Amended Complaint should be dismissed with prejudice. F.R.Civ.P. 12(b)(6). *Aguilar v. New Dairy Del., Inc.,* 22 civ 3700(NSR)(S.D.N.Y. 9/8/2023)(dismissal with prejudice granted: "threadbare recitals of the elements to establish employer liability do not suffice to state a plausible claim for relief. See *Huer Huang v. Shanghai City Corp.*, 459 F.Supp.3d 580,585 (S.D.N.Y.2020)").

## II.     SALZMAN HAD NO PRIOR NOTICE OF ANY IMPENDING SHUTDOWN.

Plaintiffs allege 'defendants' could foresee the shutdown 90 days in advance of July, 2022, "due to industry conditions" and because "Sprout missed payments to multiple vendors", or that Strauss was in confidential negotiations with the I.R.S. (TAC ¶¶93- 96).  It is not alleged how Salzman, in the Credit Department would have known vendors weren't being paid, or that Strauss possibly embezzled payroll tax withholdings.  There is not even an inference the court could draw to make those huge leaps.  As to 'industry conditions', the Plaintiffs do not elaborate what conditions in the industry would have given such notice.  But, such statement is simply false, as readily discerned from the public data:

- In March, 2022, the prime lending rate was 3.50%--a favorably low level not seen since 2015.  It gradually rose to 4.75% by June 30, 2022.
- According to the U.S. Bureau of Economic Analysis, the G.D.P. had been stable to steadily improving throughout 2021 and 2022.  There was a small decrease of 1.6% in Q1, 2022, but then a return to modest growth in Q2.

- Inflation was resurfacing, but that resulted in significantly higher home prices, which is excellent for refinancing even though the average FHA loan rate was 5.30% up from 2.8% in 2021. Nevertheless, banks tend to be more profitable as lending rates increase when there is a huge gap in the savings interest rate.

- On July 6, 2020, the S&P 500 index was 314.38. On June 5, 2022—30 days prior to the shutdown-- it was 415.74, almost a 32% increase in 2 years.

The court can take judicial notice of these readily verifiable facts. Clearly, nothing in 'industry conditions' would have put Salzman on notice that Strauss was single-handedly about to implode Sprout and put Salzman out of a job.


III.    DISMISSAL UNDER RULES 8, AND/OR 9 IS APPROPRIATE.


Beginning with TAC ¶61 on page 12 and continuing for the next 41 pages, the Third Amended Complaint alleges the acts were performed by "Defendants". The only deviations from the use of the generic term are to allege President Pallante notified the Plaintiffs of the shutdown (TAC ¶¶128-129) and CEO Strauss instructed unnamed 'Sprout employees' to instruct the insurance carrier to retroactively terminate coverage and Strauss failed to provide notice of the right to COBRA coverage (TAC ¶¶136, 140).

TAC ¶142 states "Defendants have engaged in a widespread pattern and practice of violating the FSLA, as detailed in this Complaint." Despite such averment, no 'widespread pattern' or 'practice' is 'detailed' anywhere in the Complaint. On the contrary, it appears only a single instance is alleged, i.e. the period immediately preceding the company's unforeseen shutdown on July 6, 2022. Nevertheless, no specific defendant is named, so none has any way of knowing he or his co-defendants are alleged to have done, when, how, or to whom.

Each successive Cause of Action suffers from the identical defect, using the shotgun term 'defendants'. Salzman is not named in any of them, and no act is attributed to him in any of the Nineteen Causes of Action (in reality, there are 20 due to the Plaintiffs' error).

Using the generic, shotgun term 'defendants' without any specifics among the 5 defendants is insufficient to put any party on notice of what he is alleged to have done wrong.

A claim has facial plausibility when the pleaded factual content allows the court to draw the inference that a specific defendant is liable for the misconduct alleged. Threadbare recitals of a cause of action's elements, supported by mere conclusory statements, are insufficient to overcome a motion to dismiss for failure to state a claim. *Twombly, supra*, 550 U.S. at 555; *Iqbal, supra,* 556 U.S. at 679. The FLSA requires willful behavior. Defendants are each entitled to know which of his/their specific acts were willful. Minimal pleading is unacceptable. See, e.g., *Pac. Marine Ctr., Inc. v. Silva,* 2009 U.S.Dist.LEXIS 93731 at *20(E.D.Cal. 10/7/09). Cf. *Gamm v. Sanderson Farms, Inc.*, 944 F.3d 455(2d Cir. 2019)(dismissal upheld under PSLRA).

Although detailed, extensive factual allegations may not be required under Rule 8, more than "an unadorned, the defendant-unlawfully-harmed-me accusation" is required. *Iqbal, supra,* 556 U.S. at 678. The Second Circuit has adopted a heightened pleading standard for plaintiffs asserting claims under the FLSA. See, *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315,320(2nd Cir. 2021)(holding a plaintiff must allege facts at the pleading stage that give rise to a plausible inference that a specific defendant willfully violated the FLSA). (All objection to Class Certification is reserved.)

Even when viewed in a light most favorable to the plaintiffs, this Third Amended Complaint fails and cannot be repaired as to Salzman within the requirements of F.R.Civ.P. Rules 9 and 11. None of the four (!) Complaints comes even remotely close to tying Salzman to the

Causes of Action despite having 23 months in which to do so.  This undue delay argues in favor of a dismissal with prejudice and denial of leave to amend yet again. See, *Pines Props., Inc. v. Amer. Marine Bank,* 156 F.App'x 237,240 (11th Cir. 2005).  *Steamfitters Indus.Pension Fund v. Endo Int'l PLC,* 771 F.App'x 494 (2nd Cir. 2019)(denial of amendment after 12(b)(6) affirmed).

IV.    ALL STATE LAW CLAIMS MUST BE DISMISSED; THEY ARE PREEMPTED.

Plaintiffs advanced their sole federal claim under the FLSA.  That prevents them from pleading any state law claims and requires dismissal of the Second to Nineteenth Causes of Action.

"When the FLSA provides a remedial measure, it conflicts with similar state law causes of action and thus preempts them…Employees may bring a state law cause of action for unpaid minimum wages and overtime compensation…or a cause of action under the FLSA, but not both." *Aldridge v. Miss. Dept. of Corrections,* 990 F.3d 868(5th Cir. 2021).[14] Accord, *Roman v. Marietta Constr., Inc.,* 147 F.3d 71,76(1st Cir. 1998); *Anderson v. Sara Lee Corp.*, 508 F.3d 181,191(4th Cir. 2007). All New York and California Causes of Action must be dismissed with prejudice.

 "Section 216 of the FLSA is the exclusive remedy for enforcing rights created under the Act." *Bule v. Garda CL Southeast, Inc.,* 2014 U.S.Dist.Lexis 95618, at *5(S.D.Fla. 7/11/14)(state law claims preempted and dismissed with prejudice.) "As a matter of law, [a] plaintiff cannot circumvent the exclusive remedy prescribed by Congress by asserting equivalent state law claims in addition to [an] FLSA claim." *Id.* quoting *Tombrello v. USX Corp.,* 763 F.Supp.541,545 (N.D.Ala. 1991)(minimum wage law violations claims dismissed with prejudice). "Where a

---

[14] "Employees contend that some of their state law claims are independent of the FLSA. They assert that these claims are based entirely on Mississippi law. We disagree. Every one of Employees' claims relates to unpaid minimum wages and overtime compensation. Furthermore,  even if the claims do not refer to the FLSA, they are based on the FLSA." *Aldridge,* 990 F.3d at 878.  Affirming all claims dismissed with prejudice and further amendment denied.

plaintiff's state law claims are merely the FLSA claims recast in state law terms, those state law claims are preempted by the FLSA." *Fernandez v. CheckAltEras, Inc*., 2020 U.S. Dist. LEXIS 160321, at *14 (S.D. Fla. Aug. 28, 2020) quoting *Garcia v. Nachon Enters., Inc.*, 223 F.Supp.3d 1257, 1286 (S.D. Fla. 2016). Also, *Ayala v. Nissan North America, Inc.,* <u>6:20-cv-1625-RBD-GJK</u>(M.D.Fla. 6/3/21) (state law claims preempted and dismissed).


## CONCLUSION

Dismissal with prejudice of Plaintiffs' entire Third Amended Complaint should be granted at this time under either Rules, 8, 9 or 12(b)(6). All Causes of Action based on state law must be dismissed with prejudice if the FLSA claim survives. The stay of discovery should be continued until full resolution of these Motions. Further amendment should be denied as futile.[15]


MOVANT

*Elliot Salzman*

Date: June 23, 2024

ELLIOT SALZMAN, Pro Se
12156 Cedar Trace Dr., N
Jacksonville, FL 32226
Phone: 201-394-3500
email: Elliot.salzman @gmail.com


---

[15] The only federal jurisdiction in this action relating to Salzman is tied to the First Cause of Action under the FSLA. All other Causes are state law claims. If the First Cause is dismissed, this Court should exercise its discretion and dismiss the state law claims as to him. The exercise of supplemental jurisdiction is not overly favored in the Second Circuit. See, e.g., *Cohen v. Postal Holdings,* 873 F.3d 394(2nd Cir. 2017)(dismissal mandated if federal claim dismissed under 12(b)(1)). Salzman reserves all objections to Class Certification under Rule 23 and/or 29 U.S.C. Sec.216.

## AFFIRMATION OF SERVICE

I hereby certify under Rule 11, I have served a copy of the Notice of Motion, and Memorandum of Law on this date when document is filed by the Clerk on plaintiffs in care of their attorneys or pro se person to the last known address:

Brenna Rabinowitz, Menken, Simpson & Rozger LLP, 80 Pine St., 33rd Fl., NY, NY 10005

Christopher Wright, by Stagg, Wabnik Law Group, 401 Franklin Ave., Garden City, NY 11530

Michael Strauss 367 Great Plains Rd., Southampton, NY 11968

Sprout Mortgage, LLC, 367 Great Plains Rd., Southampton, NY 11968

Recovco Mortgage Mgt, LLC, 367 Great Plains Rd., Southampton, NY 11968

Through regular mail electronic means, using the Electronic Filing of the U.S. District Court, to which all named attorneys have access as attorneys of the Eastern District of New York per F.F.Civ.P. 5(b)(2)(E) and by regular mail to the above address.   This document mailed to Clerk of Court, Eastern District of New York on above date at Pro Se Clerk, 225 Cadman Plaza East, Brooklyn, NY 11201, attn. Pro Se Office.


June 23, 2024                                                *Elliot Salzman*
                                                            ELLIOT SALZMAN, Pro Se