**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------- x
NATHANIEL AGUDELO, HELEN          :    Civil Action No. 22-cv-4004
OWENS, AMANDA COOPER, LORI        :
STEWARD, MIKE SHIRDEL, JARED      :
SAWYER, SCOTT HARVEY, and         :
KAREN KELLEY, on behalf of        :
themselves and others similarly situated    :
                                  :
        *Plaintiffs, and Lead*    :
        *Plaintiffs for the*      :
        *Proposed Class,*         :
                                  :
  v.                              :
                                  :
RECOVCO MORTGAGE              x
MANAGEMENT LLC, SPROUT
MORTGAGE LLC, MICHAEL
STRAUSS, CHRISTOPHER WRIGHT,
SHEA PALLANTE, and ELLIOT
SALZMAN
        *Defendants*
-------------------------------------------------- 


# PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS WRIGHT'S, PALLANTE'S, AND SALZMAN'S <u>MOTIONS TO DISMISS</u>

# TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ......................................................................... 1

II.   RELEVANT FACTS ...................................................................................... 1

III.  LEGAL STANDARD...................................................................................... 3

IV.   ARGUMENT .................................................................................................. 4

    A.    Each of the Moving Defendants is an Employer Under all Relevant Laws..................... 4

    B.    The FLSA Does not Preempt Plaintiffs' State Law Claims........................................ 17

    C.    Plaintiffs Sufficiently State their California WARN Act Claims. ............................... 21

    D.    The Court may Properly Exercise Personal Jurisdiction Over Defendant Pallante. ....... 22

V.    CONCLUSION............................................................................................... 25

# <u>TABLE OF AUTHORITIES</u>

## Cases

*Abuladze v. Apple Commuter Inc.*, No. 22-cv-8684 (GHW)(RFT), 2024 WL 1073121 (S.D.N.Y. Jan. 23, 2024), *report and recommendation adopted*, No. 22-cv-8684 (GHW) (GS), 2024 WL 1073155 (S.D.N.Y. Feb. 7, 2024) ...... 5, 20

*Adamou v. County of Spotsylvania*, No. 1:14-cv-00024-GBL-IDD, 2016 WL 1064608 (S.D.N.Y. Mar. 14, 2016) ...... 11

*Aldridge v. Mississippi Dep't of Corrections*, 990 F.3d 868 (5th Cir. 2021) ...... 20

*Alvarez v. Fine Craftsman Group, LLC*, 2023 WL 2908659 (S.D.N.Y. 2023) ...... 7

*Arista Recs., LLC v. Doe 3*, 604 F.3d 110 (2d Cir. 2010) ...... 16

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...... 3

*Ausco Prods. v. Axle, Inc.*, No. 19-cv-6798, 2020 WL 7028521 (W.D.N.Y. Nov. 30, 2020) ...... 12

*Ayala v. Nissan N. Am. Inc.*, 20-cv-1625 (RBD)(GJK) (M.D.Fla. 3/11/21), *report and recommendation adopted in relevant part 6/3/21* ...... 21

*Bancorp Servs., LLC v. Am. Gen. Life Ins. Co.*, 2016 WL 4916969 (S.D.N.Y. 2016) ...... 3

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ...... 3, 16

*Berrios v. Nicholas Zito Racing Stable, Inc.*, 849 F.Supp.2d 372 (E.D.N.Y.2012) ...... 5

*Bolduc v. Nat'l Semiconductor Corp.*, 35 F. Supp. 2d 106 (D. Me. 1998) ...... 20

*Carter v. Dutchess Community College*, 735 F.2d 8 (2d Cir. 1984) ...... 5, 7, 14

*Cortese v. Skanska USA Inc.*, 2020 WL 2748438 (S.D.N.Y. 2020) ...... 19

*Cui v. E. Palace One, Inc.*, 2019 WL 4573226 (S.D.N.Y. Sept. 20, 2019) ...... 9

*DeSilva v. North Shore-Long Island Jewish Health System, Inc.*, 770 F. Supp. 2d 497 (E.D.N.Y. 2011) ...... 19

*Deutsche Bank Sec., Inc. v. Montana Bd. of Invs.*, 7 N.Y.3d 65 (N.Y. 2006) ...... 23

*Eades v. Kennedy, PC L. Offs.*, 799 F.3d 161 (2d Cir. 2015) ...... 23

*Ehrenfeld v Bin Mahfouz*, 9 N.Y.3d 501 (N.Y. 2007) ...... 23

*Espinoza v. Hepta Run*, 74 Cal.App.5th 44 (2022) ...... 10

*Esso Expl. & Prod. Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp.*, 40 F.4th 56 (2d Cir. 2022) ...... 23

*Fallon v. 18 Greenwich Ave., LLC*, No. 1:19-CV-9579 (MKV), 2021 WL 1105066 (S.D.N.Y. Mar. 23, 2021) ...... 11, 14

*Farmer v. County of Orange*, No. 8:19-cv-01265-JLS-KES, 2021 WL 4199944 (C.D. Cal. 2021) ...... 11

*Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19 (E.D.N.Y. 2015) ...... 11

*Fernandez v. CheckAlt Eras, Inc.*, No. 20-cv-22746 (UU), 2020 WL 13016337 (S.D. Fla. Aug. 31, 2020) ...... 21

*Feuer v. Cornerstone Hotels Corp.*, 2017 WL 3841841 (E.D.N.Y. 2017) ...... 8

*Fischbarg v. Doucet*, 9 N.Y.3d 375 (N.Y. 2007) ...... 23

*Garcia v. Nachon Enterprises, Inc.*, 223 F. Supp. 3d 1257 (S.D. Fla. 2016) ...... 21

*Guerriero v. Diocese of Brooklyn*, 2024 WL 2826097 (E.D.N.Y. 2024) ...... 11, 12

*Herman v. RSR Sec. Services Ltd.*, 172 F.3d 132 (2d Cir. 1999)..................................................6, 8
*Hernandez v. Habana Room, Inc.*, 2012 WL 423355 (S.D.N.Y. Feb. 09, 2012) .........................5
*Herrera v. Comme des Garcons, Ltd.*, 84 F.4th 110 (2d Cir. 2023)......................................3, 10
*Irizarry v. Catsimatidis*, 722 F.3d 99 (2d Cir. 2013) ........................................7, 8, 14, 15
*Jimenez v. Green Olive Inc.*, No. 23-cv-8805 (AMD) (JAM), 2024 WL 3763467 (E.D.N.Y. Aug. 13, 2024)...............................................................................................................24
*Leal v. Masonry Services, Inc.*, 2013 WL 550668 (E.D.N.Y. 2013) ........................................6, 8
*Lipson v. Birch*, 46 F. Supp. 3d 206 (E.D.N.Y. 2014)..........................................................25
*Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106 (2d Cir. 2013) .............................3
*Mahoney v. Amekk Corp.*, No. 14-cv-4131 (ENV) (VMS), 2016 WL 6585810 (E.D.N.Y. Sept. 30, 2016)...............................................................................................................4
*Martinez v. Combs*, 49 Cal.4th 35 (Cal. 2010) ......................................................................9
*McCaffrey v. Brobeck, Phleger & Harrison, L.L.P.*, 2004 WL 345231 (N.D.Cal. 2004)...........21
*Miller v. Metro. Life Ins. Co.*, 979 F.3d 118 (2d Cir. 2020) ....................................................4
*Morales-Garcia v. Better Produce, Inc.*, 70 F.4th 532 (9th Cir. 2023) ......................................9
*Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318 (1992) ....................................................5
*Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373 (U.S. 2015).........................................................18
*Pappas v. City of New York*, 2024 WL 2093472 (S.D.N.Y. May 9, 2024) ...............................16
*Parke-Bernet Galleries, Inc. v. Franklyn*, 26 N.Y.2d 13 (N.Y. 1970) ......................................23
*Perez Perez v. Escobar Construction, Inc.*, 2024 WL 3594325 (2d Cir. 2024) ......................4, 6
*Petras v. Johnson*, 1993 WL 228014 (S.D.N.Y. Jun. 22, 1993)..............................................20
*Pettenato v. Beacon Health Options, Inc.*, 425 F.Supp.3d 264 (S.D.N.Y. 2019)......................25
*Roman v. Maietta Constr., Inc.*, 147 F.3d 71 (1st Cir.1998) ..................................................20
*Russo v. Federal Medical Services, Inc.*, 2024 WL 3738193 (N.D.Cal. 2024)..........................11
*Swierkiewicz v. Sorema* N.A., 534 U.S. 506 (2002) ............................................................11
*Tombrello v. USX Corp.*, 763 F. Supp. 541 (N.D. Ala. 1991)................................................21
*Virginia Uranium, Inc. v. Warren*, 587 U.S. 761 (U.S. 2019) ...............................................17
*Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61 (2d Cir. 2003)..........................................6, 7

**Statutes**

29 U.S.C. § 203..........................................................................................................passim
29 U.S.C. § 218..............................................................................................................18
Cal. Lab. Code § 210 .......................................................................................................19
Cal. Lab. Code § 510 .......................................................................................................19
Cal. Lab. Code § 558.1 ......................................................................................................9
Cal. Lab. Code §§ 201-203 ...............................................................................................19
Lab. Code § 204 .............................................................................................................19
NYLL § 190 ....................................................................................................................4
*Zhang v. Red Mountain Noodle House Inc.*, No. 15-cv-628 (SJ) (RER), 2016 WL 4124304 (E.D.N.Y. July 5, 2016), *report and recommendation adopted*, 15-cv-628 (SJ) (RER), 2016 WL 4099090 (E.D.N.Y. Aug. 2, 2016) .................................................................................18

**Rules**

Fed. R. Civ. P. 12 ............................................................................................................... 3, 16

Fed. R. Civ. P. 8 ................................................................................................................. 3, 11

*Flores v. Andy Construction NY Inc.*, 2024 WL 2940191 (E.D.N.Y. 2024) ................................ 22

N.Y. C.P.L.R. § 302 ................................................................................................................ 22

*Wynder v. McMahon*, 360 F.3d 73 (2d Cir. 2004) ...................................................................... 3

Plaintiffs, by and through their attorneys, submit this Memorandum of Law in Opposition to the Motions to Dismiss filed by Defendants Wright, Salzman, and Pallante (the "Moving Defendants").

# I. **PRELIMINARY STATEMENT**

Plaintiffs filed this lawsuit over two years ago seeking to collect wages which Defendants unlawfully withheld following their and hundreds of other employees' terminations amidst the abrupt shutdown of Defendant Sprout, among other claims. Each of the Moving Defendants objects to being held accountable, even years later, for their roles in depriving their employees of the hard-earned wages to which they are legally entitled. But the law protects victims, not culprits. Plaintiffs have clearly and plainly alleged each Defendant's role as an employer in contributing to the numerous legal violations arising from the massive terminations resulting from the Sprout shutdown. The Moving Defendants have ample notice of the claims against them. Therefore, all pending motions to dismiss should be denied and this case should, at long last, proceed against the parties responsible for the substantial damages Plaintiffs and their former colleagues have suffered.

# II. **RELEVANT FACTS**

The following facts, taken from Plaintiffs' Third Amended Complaint ("TAC"), ECF No. 243, are relevant to the instant motion:

Defendant Wright was Sprout's Chief Financial Officer ("CFO"). TAC at ¶ 43. As CFO, Wright exercised authority and control over employees' rates of pay and conditions of employment because his approval was required for raises and promotions. *Id.* at ¶ 44. Further, Wright was responsible for hiring employees who worked under him in the company's financial department. *Id.* at ¶ 45. Wright continued working for Corporate Defendants Sprout and Recovco following the shutdown, and was responsible for winding down the companies' financial affairs, including

making payments to vendors, creditors, and the handful of employees who were not terminated in the shutdown. *Id.* at ¶ 46. Wright was therefore one of the officers personally responsible for the Corporate Defendants' failure to pay any wages to employees following the shutdown. *Id.*

Defendant Pallante was Sprout's President and Chief Production Officer. TAC at ¶ 47. Pallante acted as a managing agent, officer, director, and/or employee of the Corporate Defendants, and caused and directed the activities alleged in this action. *Id.* at ¶ 49. Pallante hosted the July 6, 2022, videoconference during which he told Plaintiffs and hundreds of Sprout employees the company would be shut down and they were terminated effective immediately. *Id.* at ¶¶ 126-29.

Defendant Salzman was Sprout's Executive Vice President and Chief Credit Officer. TAC at ¶ 50. Salzman was responsible for approving the salaries and promotions of all employees under the umbrella of credit and due diligence at Sprout. *Id.* at 53. For example, Salzman signed off on both promotions and pay raises received by Plaintiff Amanda Cooper while she was working for Defendants. *Id.* at ¶ 54. Cooper reported directly to Salzman when her supervisor was out of the office. *Id.* Salzman also signed the offer letter received by Sprout employee Cedrick Queen when he was hired, and was the manager of Queen's department at Sprout. *Id.* at ¶ 55. Defendant Salzman further directly supervised Holly Keith, Sprout's former Senior Vice President ("SVP") of Secondary Due Diligence, and Christine Moore, Sprout's former SVP of Underwriting Credit, and his approval was required for these employees to receive raises or to make any new hires. *Id.* at ¶ 56. After the shutdown, Defendant Salzman offered Keith 60% of the wages she was owed in exchange for her continuing to work to wind down Sprout's business. *Id.* at ¶ 57. Salzman was also responsible for developing and/or running the company's training programs. *Id.* at ¶ 58. Salzman's public statements suggested he viewed himself as having an ownership interest in Sprout. *Id.* at ¶¶ 59-60.

Each of the Moving Defendants has books and records containing information regarding the identity of class members, employee rates of pay, and benefits. *Id.* at ¶¶ 77-79.

### III.    LEGAL STANDARD

Federal Rules of Civil Procedure 8 and 12 govern the instant Motions to Dismiss.[1] Fed. R. Civ. P. 8(a)(2) requires only that a complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 12(b)(6) lets defendants challenge a complaint for the alleged "failure to state a claim upon which relief can be granted." The Supreme Court's decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) interpreted these rules to require merely that a claim for relief stated in a complaint include sufficient facts to render it "plausible."

This plausibility standard does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see also Bancorp Servs., LLC v. Am. Gen. Life Ins. Co.*, 2016 WL 4916969, at *5 (S.D.N.Y. 2016) ("Dismissal under Rule 8(a) 'is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised.'") (quoting *Wynder v. McMahon*, 360 F.3d 73, 80 (2d Cir. 2004)). In assessing the sufficiency of pleadings, courts are instructed to use their "judicial experience and common sense." *Herrera v. Comme des Garcons, Ltd.*, 84 F.4th 110, 113 (2d Cir. 2023) (quoting *Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013) and *Iqbal*, 556 U.S. at 679). Courts approach motions to dismiss by "construing the complaint liberally, accepting all factual

---

[1] Defendant Salzman also cites Fed. R. Civ. P. 9, but Rule 9 does not apply to the instant claims because Plaintiffs do not allege fraud or mistake, and none of the other provisions of Rule 9 are relevant. Salzman also includes a single reference to Rule 11, *see* ECF No. 246, Salzman Mem. of Law ("MOL"), p. 21, without specifying why. Rules 9 and 11 are not relevant, and his reliance on them is misplaced.

allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Miller v. Metro. Life Ins. Co.*, 979 F.3d 118, 121 (2d Cir. 2020) (internal quotation marks omitted);

## IV. <u>ARGUMENT</u>

### A. <u>Each of the Moving Defendants is an Employer Under all Relevant Laws.</u>

Moving Defendants misstate the legal and factual standard for determining "employer" status under applicable law, rendering their arguments little more than wishful thinking. Prevailing case law interpreting the term "employer" shows that the TAC plausibly pleads that each of the Moving Defendants is an "employer" for purposes of the claims in this lawsuit.

#### 1. *Relevant Definitions of "Employer"*

##### a. *FLSA and NYLL*

The FLSA and NYLL both define an employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d); NYLL § 190(3); *see also Mahoney v. Amekk Corp.*, No. 14-cv-4131 (ENV) (VMS), 2016 WL 6585810, at *9 (E.D.N.Y. Sept. 30, 2016) (collecting cases holding the FLSA and NYLL are interpreted the same on the question of employer status), *report and recommendation adopted*, 2016 WL 6601445 (E.D.N.Y. Nov. 7, 2016)). "Recognizing the expansiveness of this definition [], the Supreme Court has long instructed that employment status under the FLSA should be based on economic reality rather than technical concepts." *Perez Perez v. Escobar Construction, Inc.*, 2024 WL 3594325, at *2 (2d Cir. 2024) (cleaned up). "Accordingly, this Circuit treat[s] employment for FLSA purposes as a flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances." *Id.* (internal quotation omitted); *see also Abuladze v. Apple Commuter Inc.*, No. 22-cv-8684 (GHW)(RFT), 2024 WL 1073121, at *12 (S.D.N.Y. Jan. 23, 2024), *report and recommendation adopted*, No. 22-cv-8684 (GHW) (GS), 2024 WL 1073155 (S.D.N.Y. Feb. 7,

2024) (noting that "the definition of 'employer' under the FLSA is one of 'striking breadth'") (quoting *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992)).

Given the broad and flexible definition of "employer," the question of whether an individual is liable as an employer is a fact-specific, case-by-case question that does not lend itself to resolution at the motion to dismiss stage, before any fact discovery has been conducted. *See Hernandez v. Habana Room, Inc.*, 2012 WL 423355, at *3 (S.D.N.Y. Feb. 9, 2012) ("Whether the plaintiff will ultimately be able to establish that the individual defendants here had sufficient operational control to be considered employers under the FLSA and New York Labor Law is a matter to be determined on summary judgment or at trial.") (cleaned up); *see also Berrios v. Nicholas Zito Racing Stable, Inc.*, 849 F.Supp.2d 372, 393 (E.D.N.Y.2012) ("The question of whether an individual is an employer under the FLSA is a mixed question of law and fact, with the existence and degree of each relevant factor lending itself to factual determinations. Therefore, individual employer liability is rarely suitable [even] for summary judgment.") (citations omitted).

## Carter and Zheng

To determine the "economic reality" of an employment relationship, pursuant to the legal standard articulated in *Carter v. Dutchess Community College*, 735 F.2d 8 (2d Cir. 1984), instructs courts to consider four factors: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id.* at 12. "No one of the four factors standing alone is dispositive," and the "overarching concern is whether the alleged employer possessed the power to control the workers in question, with an eye to the 'economic reality' presented by the facts of each case." *Herman v. RSR Sec. Services Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999) (internal citation omitted). "Since economic reality

is determined based upon all the circumstances, any relevant evidence may be examined so as to avoid having the test confined to a narrow legalistic definition." *Id.*

In *Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61, 71 (2d Cir. 2003), the Second Circuit cautioned against applying the *Carter* factors in an overly exacting fashion, clarifying that "*Carter* [] stands solely for the proposition that [its] four factors [] can be *sufficient* to establish employer status. *Carter* did not hold, nor could it have held [], that those factors are *necessary* to establish an employment relationship." (Emphasis in original); *accord. Perez*, 2024 WL 3594325, at *3 ("*Carter*'s 'economic reality' test does not create separate elements that must be satisfied to survive the motion to dismiss stage, but rather factors that must be collectively analyzed under the totality of the circumstances to determine whether there is a plausible claim."); *Leal v. Masonry Services, Inc.*, 2013 WL 550668, at *3 (E.D.N.Y. 2013) ("Here, Plaintiff has alleged [] the power to hire and terminate employees, control work schedules and conditions of employment, and set wages. Plaintiff's allegations of operational control, considered together, are sufficient to allege the Moving Defendants' status as Plaintiff's employer.").

*Zheng* offered six additional factors to consider when determining employer status: (1) whether alleged employer manufacturer's premises and equipment were used for subject work, (2) whether contractor corporations had business that could or did shift as unit from one putative joint employer to another, (3) the extent to which workers performed a discrete line-job that was integral to manufacturer's process of production, (4) whether responsibility under contracts could pass from one subcontractor to another without material changes, (5) the degree to which the manufacturer and its principals or their agents supervised work in question, and (6) whether alleged employees worked exclusively or predominantly for that manufacturer.[2] Considering the two

---

[2] Significantly, the *Zheng* Court was careful to add that a district court is "free to consider any other factors it deems relevant to its assessment of the economic realities." *Zheng*, 355 F.3d at 71–72.

*Zheng* factors that are relevant (factors (5) and (6)) alongside the *Carter* factors, the result is clear: Moving Defendants are plausibly and properly named as liable employers in this case. *See Alvarez v. Fine Craftsman Group, LLC*, 2023 WL 2908659, at *4 (S.D.N.Y. 2023) (denying individual defendant's summary judgment motion on employer status where the four *Carter* factors were met, at least one *Zheng* factor was met, and three *Zheng* factors were irrelevant[3]).

<em><u>Irizarry</u></em>

In *Irizarry v. Catsimatidis*, 722 F.3d 99, 105 (2d Cir. 2013), the Second Circuit again affirmed the breadth of the FLSA's definition of "employer," cautioning that "[n]either the *Carter* nor *Zheng* factors impose a rigid rule" for identifying an employer (internal quotation omitted). Rather, those cases offer a "nonexclusive and overlapping set of factors to ensure that the economic realities test [] is sufficiently comprehensive and flexible to give proper effect to the broad language of the FLSA." *Id.* (internal quotation marks omitted). *Irizarry* held that in determining "employer" status for individuals, Courts must also consider a defendant's (1) "operational control" and (2) "potential power." 722 F.3d at 106. "A person exercises operational control over employees if his or her role within the company, and the decisions it entails, directly affect the nature or conditions of the employees' employment." *Id.* at 110. This does not mean that the individual "employer" must be responsible for managing plaintiff employees—or, indeed, that he or she must be directly in contact with the plaintiffs, their workplaces, or their schedules. *Id*. A plaintiff simply must plead – and eventually demonstrate – that an alleged employer-defendant has "some degree of individual involvement in a company in a manner that affects employment-related factors such as workplace conditions and operations, personnel, or compensation." *Id.* at 109; *see*

---

[3] Note that in *Alvarez* it appeared that the individual defendant employer had his own premises and equipment which were *not* used by Plaintiffs, weighing against a finding of employer status. Here, there is no allegation or suggestion that Defendants possessed any of their own equipment or premises, so that factor is irrelevant.

*also Feuer v. Cornerstone Hotels Corp.*, 2017 WL 3841841, at *11 (E.D.N.Y. 2017) ("The overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages.") (internal quotations and citations omitted).

The standard for pleading employer status is not higher for individual defendants:

> Even in the individual-liability context, "the remedial nature of the [FLSA] ... warrants an expansive interpretation of its provisions so that they will have 'the widest possible impact in the national economy.'" *RSR*, 172 F.3d at 139 (quoting *Carter*, 735 F.2d at 12). "***Nothing in the FLSA requires an individual to have been personally complicit in FLSA violations***; the broad remedial purposes behind the statute counsel against such a requirement. The statute provides an empty guarantee absent a financial incentive for individuals with control, even in the form of delegated authority, to comply with the law, and courts have continually emphasized the extraordinarily generous interpretation the statute is to be given. Nor is 'only evidence indicating [an individual's] direct control over the [plaintiff employees] [to] be considered.' *RSR*, 172 F.3d at 140. Instead, 'evidence showing [an individual's] authority over management, supervision, and oversight of [a company's] affairs in general' is relevant to 'the totality of the circumstances in determining [the individual's] operational control of [the company's] employment of [the plaintiff employees].'

*Irizarry*, 722 F.3d at 110 (emphasis added); *see also Leal*, 2013 WL 550668, at *3 ("Plaintiff [alleges] the Moving Defendants [could] hire and terminate employees, control work schedules and conditions of employment, and set wages. Plaintiff's allegations of operational control, considered together, [sufficiently] allege the Moving Defendants' [employer] status.[4]

### b. *California Law*

California's courts and the Ninth Circuit apply a test similar to the economic realities analysis in determining individual "employer" liability. *See Martinez v. Combs*, 49 Cal.4th 35 (Cal.

---

[4] *Cui v. E. Palace One, Inc.*, 2019 WL 4573226, at *21–22 (S.D.N.Y. Sept. 20, 2019), cited by Defendants Wright and Pallante (Wright MOL p. 9; Pallante MOL p. 9), addressed a complaint's bald recitation of the economic realities test coupled with conclusory assertions regarding the individual defendants' management of operations. *Cui* specifically observed that "[t]he Complaint pleads ***no*** 'specific facts' about the individual defendants' alleged management of the restaurants." *Cui*, 2019 WL 4573226, at *7 (emphasis added). The TAC at issue here is far more specific and plausible than that in *Cui*.

2010); *Morales-Garcia v. Better Produce, Inc.*, 70 F.4th 532, 539 (9th Cir. 2023). The Court in *Martinez* held that the Industrial Welfare Commission's (IWC) definition of "employer" is the final word on who may be liable as an employer in a wage and hour action. 49 Cal.4th at 64. "To employ, then, under the IWC's definition, has three alternative definitions. It means: (a) to exercise control over the wages, hours or working conditions, *or* (b) to suffer or to permit to work, *or* (c) to engage, thereby creating a common law employment relationship." *Id.* (emphasis added).

In addition to this extremely broad definition of "employer," the California Labor Code holds persons acting *on behalf* of an employer liable for wage and hour violations if such persons are owners, directors, officers, or managing agents of the employer. [5] Cal. Lab. Code § 558.1(b). Specifically, Section 558.1(a) reads, "any employer *or other person acting on behalf of an employer*, who violates, or causes to be violated, any provision regulating minimum wage or hours [] of work in any order of the [IWC], or violates, or causes to be violated, Sections 203, 226, 226.7, 1193.6, 1194, or 2802, may be held liable as the employer for such violation." (Emphasis added). The definition of "other person acting on behalf of an employer" is provided by Section 558.1(b), which states "the term 'other person acting on behalf of an employer' is limited to a natural person who is an owner, director, officer, or managing agent of the employer."

California law also considers whether the individual exercised substantial independent authority and judgment in their corporate decision making so that their decisions ultimately determine corporate policy. *White v. Ultramar*, 21 Cal. 4th 563, 577 (1999). An individual need not even have day-to-day involvement in the operations of the company; all that is needed is some

---

[5] Other California Labor Code provisions provide for similar liability for individual defendants. See, e.g., Cal. Lab. Code § 1197.1 ("employer or other person acting either individually or as an officer, agent, or employee of another person" is liable for penalties imposed under Lab. Code § 203); Cal. Lab. Code § 432.5 (an "agent, manager, superintendent, or officer" of an "employer" is liable for violations); Cal. Lab. Code § 432.6 (a "person" is liable for violations); Cal. Bus. & Prof. Code § 17201 ("natural persons" are liable for violations of law). Each of the Moving Defendants is liable for the violations of California law as an "employer," and also in their capacities as officers, agents, and persons responsible for the violations of law.

oversight in the company's operations or some influence on corporate policy that results in a Labor Code Violation. *Espinoza v. Hepta Run*, 74 Cal.App.5th 44, 59 (2022).

## 2. *Plaintiffs Adequately Plead Each of the Moving Defendants are Liable as Employers*

Moving Defendants suggest Plaintiffs' pleadings are defective simply because the TAC sometimes refers to them collectively. *See* Salzman MOL pp. 9, 20-21; Wright MOL p. 6; Pallante MOL p. 5. Addressing a similar argument, the Second Circuit recently expressed doubt as to whether the group pleading rule even applies to FLSA cases, explaining that "[u]nder [the group pleading] doctrine, historically confined to fraud cases, a complaint alleging fraud committed by multiple defendants should inform each defendant of the nature of his alleged participation in the fraud. [] Even assuming that the group pleading doctrine applies to FLSA claims, we are unpersuaded that it poses a problem here." *Herrera*, 84 F.4th at 117 (vacating District Court's dismissal of plaintiffs' FLSA overtime claims where plaintiffs alleged hours worked in a "typical" work week over a period of eight years, with examples for each plaintiff, rather than alleging each separate instance of working over 40 hours in a week) (internal quotations and citations omitted). "Because joint employers are subject to joint and several liability under the FLSA and NYLL, once a plaintiff shows that the defendants qualify as employers, the plaintiff need only establish the existence of FLSA or NYLL violations to subject all employer defendants to liability." *Fallon v. 18 Greenwich Ave., LLC*, No. 1:19-CV-9579 (MKV), 2021 WL 1105066, at *3 (S.D.N.Y. Mar. 23, 2021) (citing *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 37 (E.D.N.Y. 2015) (collecting cases)).

Courts have repeatedly held that group pleading is acceptable where the defendants are alleged to have engaged in the same or similar unlawful conduct. *See, e.g.*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (holding that a complaint must simply give defendant fair notice

of what the plaintiff's claim and the grounds upon which it rests.); *see also Guerriero v. Diocese of Brooklyn*, 2024 WL 2826097, at *3 (E.D.N.Y. 2024) ("Although Plaintiff asserts each of his five claims against '[a]ll Defendants' and refers to 'Defendants' jointly throughout the SAC without distinguishing between [them], the SAC provides sufficiently specific factual allegations to give the [moving defendant] a fair understanding of what Plaintiff is complaining about.") (cleaned up); *Russo v. Federal Medical Services, Inc.*, 2024 WL 3738193, at *4 (N.D.Cal. 2024) ("'Group pleading' is not fatal as long as the complaint gives defendants fair notice of the claims against them.").[6] The TAC is more than sufficient under each of these authorities.

Moving Defendants also take issue with the fact that Plaintiffs do not specifically identify each of them by name in each of the causes of action asserted against them. *See* Wright MOL, p. 5; Salzman MOL, pp. 9-10; Pallante MOL, p. 3. But each cause of action clearly delineates which Defendants it is asserted against. *See* TAC ¶¶ 141-314. Moving Defendants claim no doubt as to whether they are included in the term "***All*** Defendants." Further, each cause of action makes clear that "Plaintiffs allege and incorporate by reference the allegations contained in all preceding paragraphs," *see, e.g.*, TAC ¶ 141, and therefore informs each Moving Defendant that the cause of action asserted against him is based on all of the factual allegations set out in the TAC. *See Guerriero,* 2024 WL 2826097 at *3; *Ausco Prods. v. Axle, Inc.*, No. 19-cv-6798, 2020 WL 7028521, at *2 (W.D.N.Y. Nov. 30, 2020) ("The Court finds that Plaintiff has not engaged in impermissible group pleading in this case. While Plaintiff has referred collectively to "Defendants"

---

[6] Defendant Wright relies on the holdings of *Farmer v. County of Orange*, No. 8:19-cv-01265-JLS-KES, 2021 WL 4199944 (C.D. Cal. 2021), and *Adamou v. County of Spotsylvania*, No. 1:14-cv-00024-GBL-IDD, 2016 WL 1064608 (S.D.N.Y. Mar. 14, 2016), each of which involved situations where plaintiffs failed to provide factual allegations connecting specific defendants to the alleged wrongdoing. In contrast, Plaintiffs plausibly allege that each Moving Defendant was part of a group of high-ranking corporate decision-makers responsible for the violations complained of, which is more than enough to satisfy Rule 8. The TAC refers to Defendants collectively because the violations stem from a joint course of conduct, and Plaintiffs allege that each of the Moving Defendants participated in the decisions underlying the violations.

in describing the allegedly infringing conduct [], it has explained elsewhere in the Complaint what role each Defendant played in the alleged infringement," providing "notice of the substance of the claims.").

Notably, each Moving Defendant claims Plaintiffs' allegations against his co-Defendants are more substantial and less speculative than the accusations against him. While Defendant Wright protests that the allegations against him are too speculative or formulaic, he credits the allegations against Pallante and Salzman, suggesting they are more properly alleged to be employers than him. *See* Wright MOL pp. 4, 11. Salzman attempts to contrast himself with Wright, who "assume[d] the authority and duties of a typical [CFO]," and Pallante who "terminated all of the employees." *See* Salzman MOL pp. 4-5, 13. Pallante similarly argues the allegations against him are shown to be too speculative when compared with those against Wright and Salzman. *See* Pallante MOL pp. 5, 9. Finger pointing is not a defense. That each Moving Defendant accepts as plausible the TAC's allegations identifying his co-Defendants as employers proves the TAC plausibly states claims against each of them under the applicable laws.

### a. *Defendant Salzman is an Employer*

Plaintiffs' allegations against Defendant Salzman easily establish that he had sufficient control over the terms and conditions of employees' employment to be considered an employer. Salzman was Sprout's Executive Vice President and Chief Credit Officer, responsible for approving the salaries and promotions of all employees under the umbrella of credit and due diligence at Sprout. TAC at ¶¶ 50, 53. Plaintiffs provide multiple specific examples of Salzman signing off on promotions, pay raises, and hires; directly supervising Sprout employees; and training employees. *Id.* at ¶¶ 54-58. Salzman's public statements also show he viewed himself as

having an ownership interest in Sprout. *Id.* at ¶¶ 59-60.[7] And, Salzman has books and records relating to Class members' identity, rate of pay, and benefits. *Id.* at ¶¶ 77, 79.

Salzman makes many irrelevant and misleading objections to his alleged status as an employer. First, he claims he did not have the "right to hire or fire or modify employees' conditions." Salzman MOL, p. 11. Plaintiffs' allegations cited *supra*, which must be accepted as true, completely contradict this. Salzman also claims it would be impossible for him to supervise Plaintiff Cooper because she lived in Pennsylvania, but his admission that she worked remotely disproves his own argument. *Id.*, p. 12. Further, Salzman repeatedly attempts to escape Plaintiffs' allegations of his control over their employment and pay by characterizing the letter he signed approving Cooper's promotion as simply "congratulating" her. *Id.* at p. 12. In reality, the TAC specifically alleges the letters "confirm[ed] her new position and pay," and were signed by Salzman within his authority over "approving the salaries and promotions" of all employees within his reporting line. TAC at ¶¶ 53, 54. Salzman also incorrectly claims Plaintiffs did not allege he could set rates of pay, ignoring allegations that he approved Amanda Cooper's pay raises and that he offered Holly Keith $60,000 to stay on after the shutdown. TAC at ¶¶ 54, 57.[8]

Salzman attempts to deflect his responsibility as an employer by claiming it was Defendants Strauss and Pallante who directed the shutdown. Salzman MOL, p. 13. But whether Salzman knew about or personally executed the shutdown is irrelevant to his liability for Plaintiffs'

---

[7] Salzman claims Plaintiffs' allegations to this effect are "mislead[ing]" but offers no reason to think he was not referring to Sprout in his comment that "[n]o one comes into a business I own because me and my 9MM will be standing guard." Id. at ¶ 59. As Plaintiffs alleged, Sprout was the only business he was associated with at the time. *Id.* at ¶ 60. Further, C-Level Executives like Salzman are often granted equity in their employer company as part of their compensation package, so it is reasonable to infer he would have some feeling of ownership over Sprout. Salzman also claims Plaintiffs' quoting of his self-described "diatribe" is an "*ad hominem* attack" on him. Salzman MOL, p. 6 n. 6. It is unclear how directly quoting a statement he posted on a social media platform is a personal attack.

[8] Keith's purported repudiation of this statement, Salzman MOL, p. 15 n. 12, is irrelevant at the motion to dismiss stage, where Plaintiffs' pleadings are accepted as true. Any repudiation by Keith is also highly questionable as it was driven by financial incentives arising from her current employer's working relationship with Salzman. This argument depends on a fact- and credibility-based determination that is not relevant at the motion to dismiss stage.

and collective and class members' unpaid wages. If the wages are unpaid, an employer is liable for paying them. *See Irizarry*, 722 F.3d at 110 ("Nothing in [the FLSA] requires an individual to have been personally complicit in FLSA violations."); *Fallon*, 2021 WL 1105066, at *3 ("[O]nce a plaintiff shows that the defendants qualify as employers, the plaintiff need only establish the existence of FLSA or NYLL violations to subject all employer defendants to liability.").

Salzman also claims he needed the approval of Defendant Strauss and/or Human Resources to hire employees. This factual argument is not appropriately considered at the motion to dismiss stage because it contradicts Plaintiffs' plausible allegations. See TAC at ¶ 55. Even assuming *arguendo* that his factual contention is true, a check on his hiring power does not mean he lacked the necessary authority to be considered an employer. *See Carter*, 735 F.2d at 12 ("It runs counter to the breadth of the statute and to the Congressional intent to impose a qualification which permits an employer who exercises substantial control over a worker, but whose hiring decisions occasionally may be subjected to a third party's veto, to escape compliance with the Act."). As Salzman admits, "almost all companies" require Human Resources' approval for promotions. Salzman MOL, p 12 n. 9. Applying his logic, this would mean that the mid-level HR representatives who process hires, raises, and promotions should commonly be named as individual defendants in FLSA cases but the C-level executives who run the company should not. *Id.*

The Court should reject each of Salzman's arguments, hold that each of the TAC's allegations and claims is plausible and provides fair and adequate notice under Rule 8, and deny his Motion to Dismiss.

### b. *Defendant Wright is an Employer*

Plaintiffs allege that Sprout's CFO Defendant Wright: (1) exercised authority and control over employees' rates of pay and conditions of employment because his approval was required for

raises and promotions; (2) was responsible for hiring employees who worked under him in the company's financial department; and (3) continued to work for Defendants and was responsible for winding down the companies' financial affairs, including decisions about where to direct Sprout's remaining resources following the shutdown and hence the decision not to pay its employees. TAC ¶¶ 43-46. Plaintiffs clearly and plausible allege that Wright possessed the requisite level of control over employees' working conditions, and that he was responsible for the company's failure to pay them the wages they were owed. *Id.* at ¶ 46. Plaintiffs also specifically allege Wright maintained books and records relating to employees' identity, rate of pay, and benefits. *Id.* at ¶¶ 77, 79. These allegations provide abundant notice of the nature of Plaintiffs' claims against him, and nothing more is required at the pleading stage. *See Irizarry*, 722 F.3d at 109 (noting a plaintiff simply must demonstrate that an alleged employer-defendant has "some degree of individual involvement in a company in a manner that affects employment-related factors such as workplace conditions and operations, personnel, or compensation.").

The Court should reject each of Wright's arguments, hold that each of the TAC's allegations and claims is plausible and provides fair and adequate notice under Rule 8, and deny his motion to dismiss.

### c. *Defendant Pallante is an Employer*

Defendant Pallante, Sprout's President and Chief Production Officer, was in the top echelon of Sprout's corporate hierarchy. TAC at ¶¶ 47, 49. Pallante, Defendant Strauss' second-in-command, organized and hosted the companywide videoconference during which he announced to hundreds of employees Sprout's impending shutdown and the immediate termination of all its employees. *Id.* at ¶ 128. Pallante attempts to cast himself as just the "messenger," yet he also answered employees' questions about what the shutdown meant for them, claiming their health

benefits would continue through the end of the month, but refusing to confirm whether they would receive their paychecks that were the next day. *Id.* at ¶ 129. As Sprout's President and Chief Production Officer, Pallante's announcement of a corporate shutdown and execution of a mass termination were not merely messages, they were formal corporate actions with consequences for him and all of the employees he terminated. Pallante delivered the most important message in the company's history precisely *because* of the fact and nature of his authority as an employer, officer, and managing agent of the company. Plaintiffs do not need to plead more at this stage. As the *Twombly* Court stated, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," rather, the complaint's "[f]actual allegations must [simply] be enough to raise a right to relief above the speculative level" 550 U.S. at 555.

Pallante challenges the TAC's allegations of the nature of his role at the company "upon information and belief," Pallante MOL, pp. 5-6, yet his own cited case law confirms the TAC's allegations are sufficient. In *Pappas v. City of New York*, 2024 WL 2093472, at *14 (S.D.N.Y. May 9, 2024), the plaintiffs pleaded their *own*, at-home working hours on information and belief, not the job duties of an executive who was multiple rungs above them on the corporate ladder. In *Arista Recs., LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010), the Second Circuit noted that the *Twombly* plausibility standard "does not prevent a plaintiff from "pleading facts alleged 'upon information and belief' " where the facts are peculiarly within the possession and control of the defendant [], or where the belief is based on factual information that makes the inference of culpability plausible." Here, Pallante's specific job duties are peculiarly within Defendants' control. Moreover, the responsibilities Plaintiffs allege on information and belief are based on well-pleaded facts alleged in the TAC that make his culpability as an employer plausible i.e., that

Pallante was a high-ranking officer who had the authority to, and did, effect the termination of all Sprout employees during a companywide meeting he organized and hosted. TAC at ¶ 128.

Finally, Pallante hangs his hat on the fact that Plaintiffs did not name him as a Defendant until the most recent Complaint. See Pallante MOL, pp. 6-7. It was not until the drafting of the TAC that the New York and California Plaintiffs coordinated and consolidated their separate pleadings which were based on separate factual investigations. This does not undermine the plausibility and appropriateness of Plaintiffs' allegations against Pallante, it demonstrates that Plaintiffs have been careful only to name those Defendants who they can confirm truly warrant the imposition of employer liability. The relevant question is whether Plaintiffs have plausibly alleged claims against Pallante in the TAC. The answer is clearly yes.

The Court should reject each of Pallante's arguments, hold that each of the TAC's allegations and claims is plausible and provides fair and adequate notice under Rule 8, and deny his Motion to Dismiss.

**B. <u>The FLSA Does not Preempt Plaintiffs' State Law Claims.</u>**

Defendants Pallante and Salzman argue that some[9] or all[10] of Plaintiffs' state law claims should be dismissed because they are preempted by the FLSA. The Supreme Court has observed that "[t]he preemption of state laws represents a serious intrusion into state sovereignty" and confirmed "the propriety of restraint" in finding preemption applies. *Virginia Uranium, Inc. v. Warren*, 587 U.S. 761, 773 (U.S. 2019). There is no basis to find preemption in this case.

Congress may preempt state laws through (1) "express preemption," by stating in the text of the legislation that it intends to preempt all state laws dealing with the law's subject matter;" (2) "field preemption," by implicitly demonstrating the intent to foreclose any state regulation in

---

[9] Pallante MOL, pp. 16-17.
[10] Salzman MOL, pp. 22-23.

the area; or (3) "conflict preemption," which occurs when compliance with both state and federal law is impossible or where the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. *See Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373, 377 (U.S. 2015). Pallante and Wright do not specify which type of preemption they claim applies to this case, arguing only that some or all of Plaintiffs' state law claims are preempted because they are "equivalent" to Plaintiffs' FLSA claims or seek "vindication of the same rights that the FLSA protects." *See* Salzman MOL, p. 22; Pallante MOL, p. 16.

The FLSA contains no express preemption provision. Rather, it disclaims either express or field preemption by explicitly contemplating that state laws will exist alongside the federal law, cautioning that "[n]o provision of this chapter or of any order thereunder shall excuse noncompliance with any Federal or State law or municipal ordinance establishing a minimum wage higher than the minimum wage established under this chapter." 29 U.S.C. § 218(a); *see also Zhang v. Red Mountain Noodle House Inc.*, No. 15-cv-628 (SJ) (RER), 2016 WL 4124304, at *3 (E.D.N.Y. July 5, 2016), *report and recommendation adopted*, 15-cv-628 (SJ) (RER), 2016 WL 4099090 (E.D.N.Y. Aug. 2, 2016) (noting "The FLSA's policy of not preempting state law where state law provides for a greater recovery.").

This leaves conflict preemption as the only potentially applicable form of preemption. But a finding of conflict preemption is inappropriate here. First, each of the causes of action under California law identified by Defendant Pallante provides protections and/or remedies over and above those provided by the FLSA. Plaintiffs' twelfth cause of action – Failure to Pay Wages When Due under Cal. Lab. Code §§ 201-203 – asserts Defendants' violation of those statutory provisions entitles Plaintiffs to "immediate" payment of their wages upon termination, as well as 30 days' continued accrual of their usual wages as a penalty for willful nonpayment. *See* TAC at

¶¶ 226-232. Plaintiffs' fifteenth cause of action – Failure to Pay Overtime Wages – is alleged under Cal. Lab. Code § 510, which provides not only for 1.5 times an employee's hourly wage for hours above eight worked in a day, but also for *twice* the hourly wage for any hours worked over twelve in one day. *See* TAC at ¶¶ 248-52. And Plaintiffs' eighteenth cause of action – Violations of Cal. Lab. Code § 204 – asserts claims for which they are entitled to civil penalties over and above those provided by the FLSA. *See* Cal. Lab. Code § 210 ("[F]or any initial violation" of § 204, an employer shall be subject to a penalty of "one hundred dollars [] for each failure to pay each employee," and "[f]or each subsequent violation, or any willful or intentional violation, two hundred dollars ($200) for each failure to pay each employee, plus 25 percent of the amount unlawfully withheld.").

Further, none of the cases cited by Pallante involved dismissal of claims under a state labor law, only state common law tort claims. *See Cortese v. Skanska USA Inc.*, 2020 WL 2748438, at *6 (S.D.N.Y. 2020) (only state law claims preempted were quantum meruit, breach of contract, and unjust enrichment, not NYLL or Cal. Lab. Code, and the Court noted that "these claims need not be dismissed insofar as they relate to non-overtime hours, as FLSA does not protect contractual rights to wages above the statutory minimum wage."); *DeSilva v. North Shore-Long Island Jewish Health System, Inc.*, 770 F. Supp. 2d 497, 530 (E.D.N.Y. 2011) (addressed only New York state common law claims, and clarified even those claims were not preempted so far as they were based upon the alleged failure to properly compensate nurses for "straight time" wages, because such claims were not duplicative of the FLSA cause of action, and therefore were not preempted); *Petras v. Johnson*, 1993 WL 228014 (S.D.N.Y. Jun. 22, 1993) (dismissal of New York common law tort claims; defendants did not move to dismiss the NYLL claims alleged by plaintiffs, nor did the Court suggest they could possibly be preempted); *Abuladze*, 2024 WL 1073121 at *19

(dismissing state law breach of contract claims because plaintiffs claimed no contractual right to an hourly rate higher than the FLSA's minimum wage).

Salzman cites even less apposite case law in support of his absurd argument that Plaintiffs may not assert *any* state law claims simply because they assert a federal claim under the FLSA. Salzman does not cite a single case from within this jurisdiction, or one that has any binding effect on this court. The cases he does cite provide no persuasive or helpful analysis that would apply in this case, because none of them held that claims under state labor laws which provide protections and/or remedies above and beyond those provided in the FLSA, such as the NYLL and Cal. Lab. Code, are preempted simply by asserting an FLSA claim. *See Aldridge v. Mississippi Dep't of Corrections*, 990 F.3d 868, 878 (5th Cir. 2021) ("Mississippi does not have state labor laws governing minimum wage or overtime, so it would be impossible for Employees to state a claim for wage and hour violations under state law independent of the FLSA."); *Roman v. Maietta Constr., Inc.*, 147 F.3d 71, 74 (1st Cir.1998) (forbidding the plaintiff recovery under section 664 of the M.R.S.A. for overtime violations ***when he had already recovered liquidated damages under both the FLSA and state law*** for this claim[11] (emphasis added); *Anderson v. Sara Lee Corp.*, 508 F.3d 181, 193 (4th Cir. 2007) (holding FLSA preempted workers' state law contract, negligence, and fraud claims because each of the claims "depend[ed] on establishing that [the defendant] violated the FLSA."); *Bule v. Garda CL Southeast, Inc.*, Case No. 14-cv-21898 (FAM) (S.D.Fla July 14, 2014)[12] (dismissing state common law claims because the claims depended on showing violations of the FLSA); *Tombrello v. USX Corp.*, 763 F. Supp. 541, 545 (N.D. Ala. 1991) (in

---

[11] In *Bolduc v. Nat'l Semiconductor Corp.*, 35 F. Supp. 2d 106, 117 (D. Me. 1998), the District of Maine explained that the Defendant "argues that [plaintiff's] claim under the FLSA precludes his ability to bring a claim under state law. [The Defendant] mischaracterizes the *Roman* decision. [] [T]he *Roman* court held that a plaintiff is not entitled to a double recovery when he pleads both federal and state claims for the same overtime pay. It did not hold that a claim made for overtime under the FLSA precludes a claim for overtime under state law.").

[12] For the Court's convenience, a copy of the *Bule* decision is attached hereto as Exhibit 1.

Alabama, a state with no minimum wage law,[13] Court held FLSA preempted Plaintiff's state law claims for unpaid wages); *Fernandez v. CheckAlt Eras, Inc.*, No. 20-cv-22746 (UU), 2020 WL 13016337, at *5 (S.D. Fla. Aug. 31, 2020) (dismissing state law unjust enrichment claim as preempted by FLSA); *Garcia v. Nachon Enterprises, Inc.*, 223 F. Supp. 3d 1257, 1268 (S.D. Fla. 2016) (granting summary judgment on state law claims for breach of agreement, unjust enrichment, and quantum meruit because each was "phrased as state-law versions of [plaintiff's] FLSA overtime claims."); *Ayala v. Nissan N. Am. Inc.*, 20-cv-1625 (RBD)(GJK) (M.D.Fla. 3/11/21), *report and recommendation adopted in relevant part* 6/3/21[14] (dismissing unjust enrichment claim without prejudice due to inadequate pleading, but ***declining*** to find claim was preempted, noting "[c]ourts in the Eleventh Circuit have found that the determination of whether the FLSA preempts a claim for unjust enrichment is premature at the motion to dismiss stage.").

The Court should reject Pallante's and Wright's preemption arguments and deny their Motions to Dismiss to the extent they are based on alleged preemption.

### C. Plaintiffs Sufficiently State their California WARN Act Claims.

Plaintiffs allege WARN Act claims against the Moving Defendants only under California law. Using the definition of 'employer,' as that term is broadly defined in *Martinez*, *supra*, Moving Defendants cannot escape liability under the California WARN Act. *McCaffrey v. Brobeck, Phleger & Harrison, L.L.P.*, 2004 WL 345231, at *4 (N.D.Cal. 2004), cited by Defendant Pallante, *see* Pallante MOL p. 12, does not support a finding that Plaintiffs' California WARN Act allegations are inadequate in this case. *McCaffrey* denied the defendants' summary judgment motions as to California WARN Act claims against the corporate purchaser of a dissolved law

---

[13] See https://www.dol.gov/agencies/whd/minimum-wage/state.
[14] For the Court's convenience, copies of the *Ayala* Report and Recommendation and the decision adopting it are attached hereto as Exhibits 2 and 3.

firm. *Id.* at \*5. While the Court concluded the purchaser could not be held liable as an employer because there was no evidence it had ever assumed the requisite control over employees before their jobs were terminated, the Court denied summary judgment as to whether the purchaser could still be held liable on a successor theory of liability. *Id.* at \*4-5. *McCaffrey* is distinguishable from the instant motion to dismiss, where no discovery has been conducted and where Plaintiffs have alleged specific actions, authority, and power by Defendants, detailed *supra* at pp. 12-17, that establish each of them as an "employer" under the California WARN Act.[15]

The Court should reject Moving Defendants' arguments against employer liability under the California WARN Act, and deny the Motions to Dismiss with respect to that claim

**D. The Court may Properly Exercise Personal Jurisdiction Over Defendant Pallante.**

Because the FLSA does not provide for nationwide service of process, Courts must look to New York's long-arm statute, N.Y. C.P.L.R. § 302(a)(1), to determine whether it permits the exercise of personal jurisdiction. *See Flores v. Andy Construction NY Inc.*, 2024 WL 2940191, at \*5 (E.D.N.Y. 2024). Under the New York long-arm statute, a court may exercise personal jurisdiction over a non-domiciliary who transacts business in New York or commits a tortious act in New York, except for defamation. C.P.L.R. § 302 (a)(1-2). Additionally, a court may exercise personal jurisdiction over a non-domiciliary who commits a tort outside New York if the person regularly does business or "engages in any other persistent course of conduct," or expects or should reasonably expect the act to have consequences in New York and derives substantial revenue from interstate/international commerce. C.P.L.R. § 302(a)(3).

---

[15] Salzman asks the Court to take judicial notice of various supposed economic statistics that purport to show he did not have notice of Sprout's impending shutdown. Salzman MOL, pp. 19-20. Salzman provides no citation for these statistics, and they are not appropriate for judicial notice in these circumstances. In any event, the allegations he refers to relate to the federal and New York State WARN Acts, which are not asserted against him. *See* TAC at ¶¶ 157-78. The California WARN Act, which is asserted against all Defendants, holds responsible anyone who qualifies as an employer. See TAC at ¶¶ 87-90, 191-97. Plaintiffs have explained *supra* at pp. 12-14 why Salzman is properly alleged to be an employer under California law.

"If the long-arm statute permits personal jurisdiction, [the court] analyze[s] whether personal jurisdiction comports with due process protections established under the Constitution." *Eades v. Kennedy, PC L. Offs.*, 799 F.3d 161, 168 (2d Cir. 2015). "To assess whether the exercise of personal jurisdiction comports with due process, the court must ordinarily determine whether the defendant has minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Esso Expl. & Prod. Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp.*, 40 F.4th 56, 69 (2d Cir. 2022) (internal quotation omitted).

The Court of Appeals has explained that "the overriding criterion necessary to establish a transaction of business is some act by which the defendant purposefully avails itself of the privilege of conducting activities within New York," *Ehrenfeld v Bin Mahfouz*, 9 N.Y.3d 501, 508 (N.Y. 2007) (cleaned up), thereby "invoking the benefits and protections of its laws." *Fischbarg v. Doucet*, 9 N.Y.3d 375, 380 (N.Y. 2007). A defendant need not physically enter New York State to transact business, so long as his activities here were purposeful. *Id.* at 381-83 (finding California-based defendants' "substantial ongoing professional commitment" by virtue of contacting and retaining New York attorney supported personal jurisdiction due to the defendants' "purposeful creation of a continuing relationship with a New York [entity].") (internal quotation omitted); *Deutsche Bank Sec., Inc. v. Montana Bd. of Invs.*, 7 N.Y.3d 65, 71 (N.Y. 2006) (upholding long-arm jurisdiction over a "sophisticated institutional trader" who communicated with a New York securities broker using an "instant messaging service" and reasoning that "technological advances in communication enable a party to transact enormous volumes of business within a state without physically entering it."); *Parke-Bernet Galleries, Inc. v. Franklyn*, 26 N.Y.2d 13, 19 (N.Y. 1970) (holding that exercising long-arm jurisdiction over the defendant, who participated in a New York auction by telephone, was proper and explaining that "[t]he mere fact that the defendant was able

to arrange to conduct his extensive and purposeful activity in New York without having to physically come here does not enable him to avoid the jurisdiction of our courts.").

Here, the exercise of personal jurisdiction over Defendant Pallante comports with New York's long-arm statue and with due process. Pallante was President and Chief Production Officer of Sprout, which was headquartered in and maintained significant operations and personnel within New York. TAC at ¶¶ 27, 35 He hosted a companywide videoconference attended by over 300 Sprout employees, at least one-third of which were employed through Sprout's New York office, and he announced that all of Sprout's employees, including those in New York, were terminated immediately. TAC at ¶¶ 127-129. As President and Chief Production Officer, *see* TAC at ¶ 47, there can be no doubt Pallante expected his actions to have a direct and detrimental effect on over one hundred New York employees. None of the case law cited by Pallante suggests that a defendant can avoid personal jurisdiction simply because a high-ranking corporate officer's unlawful actions are directed toward New York from a remote location, or because the same wrongful actions also had an impact in other places besides New York.

Further, as President of Sprout, Pallante closely collaborated with and reported directly to Defendant Strauss, who lived and worked in New York. TAC at ¶¶ 38-41. Therefore, to do his job, Pallante must have regularly conducted business in New York simply by staying in contact with Strauss to discuss matters affecting the company, including the mass termination that Pallante announced and effected on July 6, 2022. Pallante casts himself as the "messenger," claiming Strauss, located in New York, directed him to hold the videoconference and terminate over one hundred New York-based Sprout employees. *See* Pallante MOL, p. 6. Pallante's unlawful conduct originated in, was directed toward, and had a significant negative impact in New York. *See Jimenez v. Green Olive Inc.*, No. 23-cv-8805 (AMD) (JAM), 2024 WL 3763467, at *8 (E.D.N.Y. Aug. 13,

24

2024) ("New York courts may also exercise jurisdiction over non-domiciliary corporations or individuals who transact business within the state so long as the cause of action arises from that transaction.") (internal quotations omitted). As a personal participant in the shutdown and mass termination, Pallante chose to direct his course of conduct into New York by inviting over 100 New York employees to join a videoconference on which he terminated their employment.

The cases cited by Defendant Pallante do not support dismissal based on lack of personal jurisdiction. *Lipson v. Birch*, 46 F. Supp. 3d 206, 217-218 (E.D.N.Y. 2014) involved a plaintiff who moved to New York while he was being represented by two Pennsylvania attorneys and an associated law firm who never entered New York, who performed no services directed at New York, and whose only contact with New York was to call and email the plaintiff who had retained them to perform work outside of New York and which had no effect in New York. Pallante has far more purposeful contacts with New York than the plaintiff in *Lipson*. Similarly, *Pettenato v. Beacon Health Options, Inc.*, 425 F.Supp.3d 264, 278–79 (S.D.N.Y. 2019), held that the out-of-state plaintiffs' claims against the out-of-state defendant did not "arise from" the defendant's New York conduct and that the exercise of personal jurisdiction over the defendant in such circumstances would offend due process. Here, Pallante is a C-level executive of a company whose headquarters, operations, and a large percentage of its personnel were located in New York, and Plaintiffs' allegations arise from Pallante's actions which were purposefully directed to New York and which resulted in the violations against New York employees that are alleged in the Complaint. The Court should hold that it may properly exercise personal jurisdiction over Pallante.

## V. <u>CONCLUSION</u>

Plaintiffs have plausibly pleaded more than enough factual allegations to state each of their claims against each of the Moving Defendants. The Court should deny all Motions to Dismiss.

Dated: New York, New York
       October 11, 2024

                        **MENKEN SIMPSON & ROZGER LLP**

                    By: */s/Brenna Rabinowitz*
                              Brenna Rabinowitz
                              Bruce Menken
                              Scott Simpson
                              80 Pine St., 33rd Fl.
                              New York, NY 1005
                              (212) 509-1616
                              brabinowitz@nyemployeelaw.com
                              bmenken@nyemployeelaw.com
                              ssimpson@nyemployeelaw.com

                    *Attorneys for Plaintiffs and the Rule 23 Proposed Class*
                    *and FLSA Proposed Collective*