**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
NATHANIEL AGUDELO, HELEN OWENS,
AMANDA COOPER, LORI STEWARD, MIKE
SHIRDEL, JARED SAWYER, SCOTT HARVEY,
and KAREN KELLEY, on behalf of themselves
and others similarly situated,

                        Plaintiffs, and Lead
                        Plaintiffs for the
                        Proposed Class

     v.

RECOVO MORTGAGE MANAGEMENT LLC,
SPROUT MORTGAGE LLC, MICHAEL
STRAUSS, CHRISTOPHER WRIGHT, SHEA
PALLANTE, and ELLIOT SALZMAN,

                        Defendants.
------------------------------------------------------------X

**REPORT AND**
**RECOMMENDATION**

22-cv-4004 (JMA)(LGD)

**LEE G. DUNST**, Magistrate Judge:

       Plaintiffs are former employees of Defendants Recovco Mortgage Management LLC

("Recovco") and Sprout Mortgage LLC ("Sprout") (together, "Recovco and Sprout"), which

abruptly ceased operations in 2022. Plaintiffs initiated this action on July 8, 2022. Electronic

Case Filing ("ECF") No. 1. Nearly two years later, the Court granted Plaintiffs leave to file their

Third Amended Complaint ("TAC"), while expressly permitting all Defendants to move to

dismiss Plaintiffs' forthcoming amended pleading. Electronic Order, dated June 11, 2024. The

next day, on June 12, 2024, Plaintiffs filed the TAC, asserting numerous claims—many of which

are brand new—on behalf of named Plaintiffs and proposed putative classes for alleged

violations of federal, New York, and California labor laws, as well as claims relating to

employee benefits and employment-related consumer reporting practices. ECF No. 243

("TAC"). Plaintiffs assert these myriad claims against Recovco and Sprout and Individual Defendants Michael Strauss ("Strauss"), Christopher Wright ("Wright"), Shea Pallante ("Pallante"), and Elliot Salzman ("Salzman"). *Id.*

After Plaintiffs filed the TAC, Wright, Pallante, and Salzman (together, "Moving Defendants") each separately moved to dismiss the claims asserted against them, citing various deficiencies in the TAC. ECF No. 246 ("Salzman MTD"); ECF No. 255 ("Pallante MTD"); ECF No. 256 ("Wright MTD"). On April 2, 2025, District Judge Joan M. Azrack referred Moving Defendants' pending Motions to Dismiss to the undersigned for a Report and Recommendation. Electronic Order, dated April 2, 2025. For the reasons set forth below, the undersigned respectfully recommends that the Court grant Moving Defendants' Motions to Dismiss, dismiss all federal claims asserted against them with prejudice, and decline to exercise supplemental jurisdiction over all remaining state-law claims.

## I. BACKGROUND

### A. Factual Background[1]

Recovco and Sprout[2] is a former jointly operated mortgage services firm that provided due diligence, valuation, underwriting, and auditing support to financial institutions, with a focus on compliance and risk management. TAC ¶ 36. Recovco and Sprout primarily operated out of an office located in East Meadow, New York, where it employed "over 100 employees." *Id.* ¶ 35. Recovco and Sprout also employed hundreds of individuals located in California,

---

[1] The relevant alleged facts set forth in this Report and Recommendation are taken from the TAC and are accepted as true for purposes of ruling on the Motion. *See Gamm v. Sanderson Farms, Inc.*, 944 F.3d 455, 462 (2d Cir. 2019) ("The court accepts as true all well-pleaded factual allegations in the complaint, [and] draws all reasonable inferences in favor of the nonmoving party" (internal quotations omitted)).

[2] According to Plaintiffs, Recovco and Sprout "operated as a single integrated enterprise and held themselves out as Recovco and Sprout interchangeably." TAC ¶ 28; *see also id.* ¶¶ 29-34. The TAC refers to Recovco and Sprout interchangeably as "Sprout and Recovco," "Corporate Defendants," or simply "Sprout."

including in San Diego, Anaheim, and Irvine, although the TAC is unclear whether the company maintained physical offices in each of those locations.[3]  *Id.* ¶¶ 19-23; *see also id.* ¶ 127 (indicating that hundreds of employees were located in California).

The Individual Defendants are former high-ranking managers of Recovco and Sprout. According to the TAC, Strauss served as the company's Chief Executive Officer ("CEO") (*id.* ¶ 38); Wright as Chief Financial Officer ("CFO") (*id.* ¶ 43); Pallante as President and Chief Production Officer (*id.* ¶ 47); and Salzman as Executive Vice President and Chief Credit Officer (*id.* ¶ 50).[4]  Each of the Individual Defendants resided in New York and worked for the company in New York, except for Pallante who was based in California.  *Id.* ¶¶ 41, 48, 51.

In or around July 2022, Strauss allegedly directed the closure of Recovco and Sprout. *Id.* ¶ 40.  The impending shutdown became known to employees on July 6, 2022 when they were invited to join a videoconference.[5]  *Id.* ¶¶ 126-28.  Hundreds of employees based in both New York and California were on the call during which Pallante announced that the company would be shutting down immediately and that their employment was terminated.  *Id.*  Pallante further stated that employees' health benefits would continue through the end of the month, but did not

---

[3] For example, the TAC indicates that two of the named Plaintiffs—Lori Steward and Mike Shirdel—"worked for Defendant in San Diego, California," and "worked for Defendant in Anaheim, California."  TAC ¶¶ 19-20.  On the other hand, the TAC clearly indicates that other named Plaintiffs—Jared Sawyer and Scott Harvey—"were assigned to Defendants' Irvine office."  *Id.* ¶¶ 21-22.  Another of the named Plaintiffs—Karen Kelley—is simply alleged to have "worked for Defendants from California" without any indication as to her actual work location.  *Id.* ¶ 23.  It is apparent that Recovco and Sprout at least had an office located in Irvine, but beyond that it is unclear what the scope of its operation was in California.

[4] Some of the Moving Defendants dispute the titles given to them by the TAC.  *See, e.g.*, Wright MTD at 3 (calling Mr. Wright's CFO title "misplaced and incorrect").

[5] The TAC does not specify who actually directed that the videoconference be held or who actually sent the invitation to join the videoconference.  *See* TAC ¶ 126 (indicating only that "all employees of Defendants *received* an invitation to a videoconference") (emphasis added).

confirm whether they would be paid the following day.[6]  *Id.* ¶ 129.

The employees, in fact, never received their paychecks, and, moreover, their employer-sponsored health benefits did not continue through the end of that month as Pallante had indicated.  *Id.* ¶¶ 130-33.  According to the TAC, this was because Strauss directed the retroactive cancellation of the health plans to May 1, 2022 and the withholding of the wages owed to employees.[7]  *Id.* ¶¶ 42, 64, 136.

Plaintiffs are the former employees of Recovco and Sprout who were affected by its abrupt shutdown on July 6, 2022.  *Id.* ¶¶ 2-5, 13-24.  They bring this action individually and on behalf of various putative classes, asserting twenty-four claims arising from Defendants' alleged failure to pay wages, provide required notice, maintain benefits, and comply with other federal, New York State, and California State employment laws.  *Id.*

### B.    Procedural Background

Plaintiffs commenced this action on July 8, 2022 shortly after the abrupt shutdown of Recovco and Sprout.  ECF No. 1.  While this case proceeded in this District, three class actions arising out of the same events proceeded on a parallel track in California state courts.  *See* ECF No. 201-1 at 15-16 (describing the three related California state actions).  The federal action in this District has since gone through multiple rounds of amendment.  Plaintiffs first amended as of right (ECF No. 26) and later filed a Second Amended Complaint (ECF No. 92).

After Plaintiffs filed their Second Amended Complaint, the parties reached a settlement in principle and informed the Court that they intended to file a motion for preliminary approval

---

[6] The paychecks that were to be distributed were supposed to cover the pay periods from June 16, 2022 to June 30, 2022, as well as July 1, 2022 to July 6, 2022.  TAC ¶¶ 131-32.

[7] The TAC does not specifically allege that Wright, Pallante, and Salzman played any independent role in the decision to close Recovco and Sprout, terminate employee health benefits, or withhold the money owed to the employees.

of a global settlement encompassing this case and the related California state actions. *See* ECF No. 172. Over the following months, the parties filed various requests for extensions as well as supporting materials in connection with their to-be-filed motion for settlement approval and consolidation of the pending cases. *See* ECF No. 175; ECF No. 180; ECF No. 185; ECF No. 194. The parties eventually filed the proposed settlement and motion for approval on June 1, 2023. ECF No. 201. Unfortunately, however, the proposed settlement ultimately was not consummated as a result of Recovco and Sprout's bankruptcy filing on July 7, 2023, which stayed the case as to them and nullified the agreement. *See* ECF No. 211 (notifying the Court of suggestion of bankruptcy as to Recovco and Sprout and automatic stay of proceedings); ECF No 218 (informing the Court that the Chapter 7 Trustee "moved to revoke the parties' settlement agreement in this action," rendering the agreement "for all intents and purposes a nullity"); Electronic Order, dated October 16, 2023 (finding as moot the pending motion for settlement).

Following the collapse of the proposed settlement, this case became even more procedurally complex. Prior defense counsel withdrew in January 2024 (ECF No. 222), and Defendant Salzman began proceeding *pro se*. Defendant Wright retained new counsel (ECF No. 227) and, along with Salzman, filed Motions to Dismiss the then-operative Second Amended Complaint. ECF No. 224; ECF No. 228. In response to those motions, Plaintiffs informed the Court that they intended on seeking leave to amend once more so that they could consolidate this case with the "several class actions filed in California state court which arise out of the same events underlying the Complaint in this case." ECF No. 230.

On February 12, 2024, Judge Azrack denied Wright and Salzman's pending Motions to Dismiss without prejudice, stayed all discovery, and referred Plaintiffs' anticipated Motion to Amend to the undersigned. *See* Electronic Order, dated Feb. 12, 2024. Plaintiffs then filed their

Motion to Amend on April 19, 2024 seeking leave to "(1) join the claims of two California state class actions with the instant proceedings in the EDNY; (2) add the named Plaintiffs and Defendants of the California class actions, to the extent not already named in the above-captioned matter, as parties to this action, and remove Holly Keith as a named Plaintiff; and (3) add a handful of allegations as to individual Defendants Christopher Wright and Elliot Salzman." ECF No. 239 at 1. Wright opposed Plaintiffs' Motion to Amend to the extent that the forthcoming TAC would assert any new allegations directed at him (ECF No. 242), while Salzman opposed the motion in full (ECF No. 241).

On June 11, 2024 the parties attended a status conference before the undersigned. During the conference, the Court granted Plaintiffs' Motion to Amend and explicitly declined to address arguments about futility of the TAC. ECF No. 244 (minute entry of June 11, 2024 Status Conference). Instead of addressing those arguments then, the Court permitted Defendants to file renewed Motions to Dismiss after the filing of the forthcoming TAC. *Id.*[8] The Court also left the discovery stay in place, which remains in effect. *Id.*

Plaintiffs filed the TAC on June 12, 2024, significantly expanding the scope of this litigation. The TAC, for the first time, includes claims under California law (previously asserted only in the California state actions), new factual allegations concerning Defendants Wright and Salzman, a new Defendant (Pallante), six new named Plaintiffs, and several new putative

---

[8] *See also* For the Record ("FTR") Voice Recording of June 11, 2024 Status Conference, at 12:30-13:20 (on file with Court) (expressing concern that it would be inefficient for the Court to utilize judicial resources on a piecemeal basis in addressing motions to dismiss the then-operative Second Amended Complaint while also separately addressing claims asserting amendment futility); *id.* at 13:20-15:30 (declining to rule on futility, permitting Plaintiffs to file the TAC, and directing Defendants to file motions to dismiss consistent with Judge Azrack's rules following the TAC's filing). In taking this approach, the Court specifically cited to *Lubavitch of Old Westbury, Inc. v. Inc. Vill. of Old Westbury, N.Y.*, No. 08-CV-5081, 2021 WL 4472852, at *19 (E.D.N.Y. Sept. 30, 2021) (declining to rule on whether amendment would be futile and instead granting defendants leave to move to dismiss). As no transcript is yet available for the June 11, 2024 conference, the Court cites timestamps from the FTR recording. The parties are invited (but not required) to order a transcript if they wish.

classes.[9]  In total, the TAC sets forth twenty-four causes of action against various combinations of Defendants under a range of statutory frameworks, including the Fair Labor Standards Act ("FLSA"), New York Labor Law ("NYLL"), California Labor Code ("CALC"), Worker Adjustment and Retraining Notification Act ("Federal WARN Act"), New York State Worker Adjustment and Retraining Notification Act ("NY WARN Act"), California State Worker Adjustment and Retraining Notification Act ("CA WARN Act"), Employee Retirement Income Security Act ("ERISA"), Fair Credit Reporting Act ("FCRA"), and California's Investigative Consumer Reporting Agencies Act.  TAC ¶¶ 1-5.

Of those twenty-four claims, twenty are brought against all Defendants—including Moving Defendants Wright, Pallante, and Salzman—as an undifferentiated collective:

> Violations of the FLSA minimum wage provision (*id.* ¶¶ 141-48); violations of NYLL minimum wage provisions (*id.* ¶¶ 149-52); unlawful withholding of wages under NYLL § 193 (*id.* ¶¶ 153-56); violations of the CA WARN Act, CALC § 1400 (*id.* ¶¶ 191-97); unlawful business practices in violation of Cal. Bus. And Prof. Code §§ 17200 (*id.* ¶¶ 198-208); unlawful deductions from "Plaintiffs' and Class Members' [p]aychecks" under CALC §§ 221, 223 (*id.* ¶¶ 209-15); failure to reimburse or indemnify employees for required expenses under CALC § 2802 (*id.* ¶¶ 216-24); failure to pay wages when due in violation of CALC §§ 201, 202, 203 (*id.* ¶¶ 225-32); failure to pay vacation wages under CALC (TAC ¶¶ 233-36); violations of Private Attorneys General Act (CA) (*id.* ¶¶ 237-42); failure to pay California minimum wage under CALC §§ 1182.12, 1194, 1197 (*id.* ¶¶ 243-47); failure to pay overtime wages under CALC § 510 (*id.* ¶¶ 248-52); failure to provide compliant meal periods or pay premium wages under CALC (*id.* ¶¶ 253-56); failure to provide compliant rest breaks or pay premium wages under CALC (*id.* ¶¶ 257-61); violations of CALC § 204 (*id.* ¶¶ 262-66); violations of CALC §§ 432.5, 432.6, and 925 (*id.* ¶¶ 267-73); violations of CALC § 2751 (*id.* ¶¶ 274-82); failure to make proper disclosure in violation of the FCRA (*id.* ¶¶ 283-92); failure to obtain proper authorization in violation of the FCRA (*id.* ¶¶ 293-99); and lastly violations of California's Investigative Consumer Reporting Agencies Act (*id.* ¶¶ 300-14).

---

[9] Former named Plaintiff Holly Keith asked to be removed from the TAC as a named Plaintiff and is no longer a Plaintiff in this action.  ECF No. 239 at 4.

The TAC asserts the four remaining claims against only Recovco and Sprout and Strauss:

Violations of the Federal WARN Act (*id.* ¶¶ 157-68); violations of the NY WARN Act (*id.* ¶¶ 169-78); violations of ERISA fiduciary duty under 29 U.S.C. § 1132(a)(3) (*id.* ¶¶ 179-85); and violations of ERISA fiduciary duty under 29 U.S.C. § 1132(c)(1) (*id.* ¶¶ 186-90).

Notably, Recovco and Sprout remain in bankruptcy and are unrepresented. Defendant Strauss is similarly unrepresented and apparently is proceeding *pro se*. As of the time of the filing of this Report and Recommendation, none of these Defendants are appearing or defending this action—Recovco and Sprout cannot appear *pro se*, and neither the company nor Strauss have responded to the TAC.

The remaining Moving Defendants each timely moved to dismiss the claims asserted against them in the TAC. *See* Salzman MTD; Pallante MTD; Wright MTD. Plaintiffs filed a combined Opposition to Moving Defendants' Motions to Dismiss (ECF No. 258) ("Opposition"). Each of these Defendants then filed separate Reply briefs. ECF No. 260 ("Wright Reply"); ECF No. 261 ("Salzman Reply"); ECF No. 263 ("Pallante Reply"). On April 2, 2025, Judge Azrack referred the pending motions to the undersigned for a Report and Recommendation. Electronic Order, dated April 2, 2025.

### C. Moving Defendants' Motions to Dismiss and Plaintiffs' Opposition

In their respective motions, the Moving Defendants raise several grounds for dismissal, many of which overlap.

Each of the Moving Defendants challenge the sufficiency of the allegations in the TAC. Wright and Salzman argue that the TAC violates Federal Rule of Civil Procedure ("Rule") 8(a)(2) by impermissibly lumping them together with other Defendants without specifying which allegations pertain to them, therefore providing inadequate notice of the claims against them. Wright MTD at 14; Salzman MTD at 20-21. Pallante, while not explicitly invoking any Rule 8

8

objection, argues that the allegations against him are insufficient because they are conclusory, speculative, and devoid of specific facts suggesting he took part in the conduct giving rise to liability.  Pallante MTD at 5-7.

Each of the Moving Defendants also argue that the TAC fails to plausibly allege that any of them qualify as "employers" under the FLSA, NYLL, or CALC (or any other applicable labor statute), which is a prerequisite to liability under Plaintiffs' labor claims.  Wright argues that the TAC individually references him in only four paragraphs, which are merely formulaic recitations of the elements of the test for employer status.  Wright MTD at 9-13.  He further contends that his role as CFO, without more, does not translate into operational or decision-making authority over the Plaintiffs sufficient to establish that he was their employer.  *Id.*  Pallante similarly argues that the TAC individually mentions him in only five paragraphs, which are vague "information and belief" allegations that lack meaningful factual support.  Pallante MTD at 8-12. Like Wright, Pallante further contends that his high-ranking managerial role as President and Chief Production Officer, without more, does not establish his employer status.  *Id.*  Salzman likewise contends that the TAC lacks sufficient allegations suggesting his control over any Plaintiffs' employment.  Salzman MTD at 11-18.  He instead maintains that he was simply a mid-level credit officer without any ownership interest or meaningful operational authority.  *Id.*

Pallante and Salzman (but not Wright) also raise preemption arguments, contending that the FLSA preempts several of the state labor law claims asserted against them.  Pallante MTD at 16-17; Salzman MTD at 22-23.  According to these Defendants, this is because the state labor law claims seek to vindicate rights already protected by the FLSA and are based on the same set of factual allegations.  Pallante MTD at 16-17; Salzman MTD at 22-23.

Finally, Pallante separately argues that the Court should dismiss the claims against him because it lacks personal jurisdiction over him.  Pallante MTD at 13-16.  He argues that he lacks sufficient contacts with New York to justify the exercise of jurisdiction under the state's long-arm statute because he resides in California and, therefore, does not transact business in New York and is not alleged to have directed any specific tortious conduct toward the forum.  *Id.*

Plaintiffs oppose dismissal on each of the aforementioned grounds, maintaining that the TAC provides fair notice, that the TAC adequately alleges that each Moving Defendant is an employer under the relevant labor laws, that their state labor law claims are not preempted, and that the Court has personal jurisdiction over Pallante.

## II.    LEGAL STANDARD

### A.    Federal Rule of Civil Procedure 12(b)(2)

On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, a plaintiff "bears the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit."  *Shelbourne Glob. Sols., LLC v. Gutnicki LLP*, 658 F. Supp. 3d 104, 112 (E.D.N.Y. 2023) (quoting *Troma Ent., Inc. v. Centennial Pictures Inc.*, 729 F.3d 215, 217 (2d Cir. 2013)).  To survive the motion, the plaintiff "need only make a prima facie showing of personal jurisdiction over the defendant."  *Lelchook v. Societe Generale de Banque au Liban SAL*, 67 F.4th 69, 75 (2d Cir. 2023).  This prima facie showing "may be established solely by allegations pleaded in good faith."  *Kaplan Grp. Invs. LLC v. A.S.A.P. Logistics Ltd.*, 694 F. Supp. 3d 374, 383 (S.D.N.Y. 2023) (internal quotation omitted) (quoting *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d Cir. 2013)).  Still, "the allegations must be more than conclusory statements and must state specific facts supporting the conclusion that jurisdiction is proper."  *Id.* (internal quotations and alterations omitted) (quoting *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 184 (2d Cir. 1998)).

**B.    Federal Rule of Civil Procedure 12(b)(6)**

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Dawkins v. Schott NYC Corp.*, No. 22-CV-3617, 2023 WL 6283285, at *2 (E.D.N.Y. Sept. 26, 2023) (quoting *id.*).  In resolving a motion to dismiss, "[t]he court accepts as true all well-pleaded factual allegations in the complaint, [and] draws all reasonable inferences in favor of the nonmoving party."  *Gamm v. Sanderson Farms*, Inc., 944 F.3d 455, 462 (2d Cir. 2019) (internal quotations omitted).  Courts need not, however, consider "conclusory allegations or legal conclusions couched as factual allegations." *Dixon v. von Blanckensee*, 994 F.3d 95, 101 (2d Cir. 2021) (quotation and citation omitted); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

**III.    DISCUSSION**

The Court first addresses Pallante's argument that the Court lacks personal jurisdiction over him and concludes that the exercise of jurisdiction over him is appropriate.  The Court then turns to the sufficiency of the TAC and finds that the TAC fails under Rule 8(a)(2) to give the Moving Defendants sufficient notice of the claims against them.  Although dismissal under Rule 8 is typically without prejudice, the Court respectfully recommends dismissal of all federal claims against Moving Defendants with prejudice.[10]  Based on the same infirmities, the Court further recommends it decline supplemental jurisdiction over all remaining state-law claims.

---

[10] In light of the recommendation of dismissal on Rule 8 grounds, the Court declines to consider other arguments for dismissal raised by the Moving Defendants, except its personal jurisdiction over Pallante.

A.    **Personal Jurisdiction**

Before turning to the merits, the Court must assure itself that it has personal jurisdiction over all of the Defendants.  Accordingly, the Court first addresses its personal jurisdiction over Pallante and finds that the exercise of personal jurisdiction over him is proper.  As explained below, Pallante's alleged conduct satisfies New York's long-arm statute, and exercising jurisdiction over him comports with due process.

1.    Personal Jurisdiction Legal Standard

To determine personal jurisdiction over a non-domiciliary in a case involving a federal question, courts must engage in a two-step analysis.  *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163-64 (2d Cir. 2010).  First, courts must "look to the long-arm statute of the forum state, in this instance New York.'"  *Godoy v. BMW of N. Am., LLC*, No. 16-CV-5502, 2018 WL 2376297, at *2 (E.D.N.Y. May 23, 2018) (quoting *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001)).  If exercise of jurisdiction is deemed appropriate under New York law, the second step is to evaluate whether the exercise of personal jurisdiction comports with the Fifth Amendment's Due Process Clause.  *Chloé*, 616 F.3d at 163-64 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

2.    New York's Long-Arm Statute Permits Personal Jurisdiction over Pallante

The New York long-arm statute authorizes personal jurisdiction over non-domiciliaries who act "in person or through an agent" under certain circumstances.  N.Y. C.P.L.R. § 302(a) (McKinney 2024).  In particular, Section 302(a) of New York's long-arm statute confers personal jurisdiction over non-domiciliaries in four scenarios: (1) where the defendant "transacts any business within the state or contracts anywhere to supply goods or services in the state" (*id.* § 302(a)(1)); (2) where the defendant "commits a tortious act within the state" (*id.* § 302(a)(2)); (3) where the defendant  "commits a tortious act [outside] the state causing injury to person or

12

property within the state" if the defendant (i) "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state," or (ii) "expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce" (*id.* § 302(a)(3)(i)-(ii)); and (4) where the defendant "owns, uses or possesses any real property situated within the state" (*id.* § 302(a)(4)); *see also Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 33 (2d Cir. 2010) (discussing Section 302(a)).

The Court need not look further than Section 302(a)(1) to exercise personal jurisdiction over Pallante.  According to Pallante, Section 302(a)(1) does not authorize personal jurisdiction over him because he "did not work in the New York office," "did not manage or supervise any . . . New York employees," "did not attend meetings or other Company events in New York," and his shutdown announcement "was not directed at only the New York employees, but rather all employees in all states."  Pallante MTD at 14.

Pallante's Section 302(a)(1) argument misses the mark.  While true that Pallante is a non-domiciliary who did not transact business in New York in his personal capacity, he overlooks that Section 302(a) expressly authorizes courts to exercise personal jurisdiction over any non-domiciliary who acts "in person or through an *agent*."  N.Y. C.P.L.R. § 302(a) (McKinney 2024) (emphasis added).  Consistent with that principle, courts in this circuit have long held that "an out-of-state [] officer who has not personally transacted business in New York, can still be subject to personal jurisdiction under § 302(a)(1) of New York's long-arm statute, if it can be shown that the [company] transacted business in New York as the officer's agent."  *See, e.g.*, *Brady v. Basic Rsch., L.L.C.*, 101 F. Supp. 3d 217, 230 (E.D.N.Y. 2015) (internal citation omitted) (quoting *Karabu Corp. v. Gitner*, 16 F. Supp. 2d 319, 323 (S.D.N.Y.1998)); *see also*

*Retail Software Servs., Inc. v. Lashlee*, 854 F.2d 18, 22 (2d Cir. 1988) (holding that a company "can act as an agent for an individual for the purposes of § 302(a)(1)").

"To establish that the out-of-state defendant acted through an agent, plaintiffs need not establish a formal agency relationship, but need only convince the court that the agent engaged in purposeful activities in this State in relation to plaintiffs' transaction for the benefit of and with the knowledge and consent of the defendants and that they exercised some control over the agent in the matter." *Brady*, 101 F. Supp. 3d at 230 (internal citations and alterations omitted) (quoting *In re Sumitomo Copper Litig.*, 120 F. Supp. 2d 328, 336 (S.D.N.Y. 2000)). The key question is whether the out-of-state officer "was a primary actor in the transaction in New York that is the source of the litigation" rather than an "employee who played no part in the transaction." *Grp. One Ltd. v. GTE GmbH*, 523 F. Supp. 3d 323, 338-39 (E.D.N.Y. 2021) (cleaned up) (quoting *Lashlee*, 854 F.2d at 22).

Plaintiffs allege that Recovco and Sprout's transacting of business in New York gave rise to their claims, which stem from the company's failure to pay employees and provide the benefits owed as a result of that business. *See, e.g.*, TAC ¶¶ 26-27, 35 (describing Recovco and Sprout's presence in New York and employment of over 100 employees in its New York office); *id.* ¶¶ 61-66 (describing termination of New York employees as a result of Recovco and Sprout's shutdown and failure to give notice and to pay them). While Pallante's position as President and Chief Production Officer of Recovco and Sprout does not, on its own, establish that the company was acting as his agent, the TAC alleges that Pallante took direct and public action to announce the mass termination of all employees, including those based in New York. *Id.* ¶ 128. He personally conveyed the company's decision to shut down operations, addressed questions about the consequences of the shutdown, and, importantly, indicated that employees' health benefits

14

would continue through the end of the month while refusing to confirm whether employees would receive their wages.  *Id.* ¶¶ 128-29.

Although Pallante argues that the TAC casts him primarily as a messenger, it still, based on these allegations, establishes that he was a high-ranking company executive that played a role in the shutdown.  The allegations thus support a plausible inference that Pallante participated in Recovco and Sprout's conduct that gave rise to the claims in this case and did so for his own benefit and with requisite knowledge and control.  *See Brady*, 101 F. Supp. 3d at 230.  Pallante, therefore, is appropriately considered "a primary actor in the transaction in New York that is the source of" this litigation because Recovco and Sprout transacted business in New York as Pallante's agent and in furtherance of his own actions that form the basis of Plaintiffs' claims. *See Grp. One Ltd.*, 523 F. Supp. 3d at 338-39.  Accordingly, the Court finds that Section 302(a)(1) permits the exercise of personal jurisdiction over Pallante.

### 3. Personal Jurisdiction over Pallante Comports with Due Process

Having found that Section 302(a)(1) permits personal jurisdiction over Pallante, the Court must now assess whether the exercise of personal jurisdiction over him comports with due process.  This involves a two-step inquiry.

First, courts "must determine whether the defendant has sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction."  *Chloé*, 616 F.3d at 164 (citing *Int'l Shoe*, 326 U.S. at 316).  "Where the claim arises out of, or relates to, the defendant's contacts with the forum—*i.e.*, specific jurisdiction is asserted—minimum contacts necessary to support such jurisdiction exist where the defendant purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court there."  *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 82 (2d Cir. 2018) (internal quotation omitted) (quoting *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 170 (2d Cir. 2013)).

Second, courts ask whether the exercise of personal jurisdiction accords with "traditional notions of fair play and substantial justice"—*i.e.*, "whether it is reasonable to exercise personal jurisdiction under the circumstances of the particular case." *Chloé*, 616 F.3d at 164 (citing *Int'l Shoe*, 326 U.S. at 316). In analyzing reasonableness, courts look to five factors: "(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies." *Id.* (citing *Asahi Metal Indus. Co. v. Superior Ct.*, 480 U.S. 102, 113-14 (1987)).

Here, Pallante has sufficient minimum contacts with New York. Plaintiffs' claims arise out of Pallante's conduct in connection with Recovco and Sprout's operations in New York, which operated as his agent in conducting business in the state. Additionally, Pallante personally delivered the announcement of the shutdown that terminated hundreds of employees, many of whom worked in New York, and it was therefore reasonably foreseeable that he could be haled into court in this forum. The exercise of personal jurisdiction over Pallante is also reasonable. New York has a compelling interest in addressing the alleged injuries caused to its citizens in this case—even though such injuries extend beyond the forum—because Recovco and Sprout had a large New York-based operation. Litigating all claims in one forum also furthers Pallante's interest and the states' shared interest in obtaining convenient and effective global relief. While Pallante resides outside of New York, these interests outweigh any burden on him litigating in New York, especially considering that substantial evidence and witnesses are likely located in this forum. Finally, Pallante's position as a high-ranking executive at a company with a large New York-based operation further diminishes any potential fairness concerns.

To sum up, the Court finds that Pallante has sufficient minimum contacts with the forum to justify the exercise of personal jurisdiction over him, and the exercise of personal jurisdiction over Pallante accords with traditional notions of fair play and substantial justice.  *See Chloé*, 616 F.3d at 164.  Because New York's long-arm statute authorizes personal jurisdiction over Pallante, and the exercise of personal jurisdiction comports with due process, the Court finds that it has personal jurisdiction over him.

### B.    Federal Rule of Civil Procedure 8

Having addressed the threshold jurisdictional issue, the Court will now assess the merits of the pending motions.  Wright and Salzman seek dismissal of all claims asserted against them under Rule 8(a)(2) because, according to them, the TAC fails to give fair notice of its claims and the factual grounds upon which they rest.  Wright MTD at 14; Salzman MTD at 20-21.  Pallante likewise challenges the sufficiency of the TAC (although he does not explicitly raise a Rule 8(a)(2) argument).[11]  Pallante MTD at 5-7.

Plaintiffs respond that, in their view, group-pleading arguments do not apply at all in labor law cases.  Opposition at 10.  Plaintiffs maintain that, even if the Court finds that group-pleading arguments are permitted here, the TAC's allegations satisfy Rule 8(a)(2) because once the TAC establishes that each of the individual Moving Defendants were Plaintiffs' employers, it need only jointly allege violations of the labor laws to subject all Defendants to joint and several

---

[11] The Court may *sua sponte* assess whether the TAC's allegations against Pallante meet Rule 8's minimal standard.  *See, e.g.*, *Morris v. City of N.Y.*, No. 05 CIV. 7368, 2007 WL 632733, at *5 (S.D.N.Y. Mar. 1, 2007) (*sua sponte* considering whether amended complaint complied with Rule 8 even though none of the parties raised Rule 8 issues); *Hosannah v. Sposato*, No. 16-CV-1045, 2016 WL 11910684, at *3 (E.D.N.Y. June 28, 2016) ("When a complaint fails to comply with the Rule 8 pleading standard, the district court may dismiss it *sua sponte*" (citing *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995))).  Such review is appropriate here because the TAC repeatedly lumps Pallante with all other Defendants.

liability.  *Id.*  Plaintiffs conclude that, for these reasons, the TAC gives Moving Defendants sufficient notice of its claims.  *Id.* at 11.

For the reasons that follow, the Court rejects Plaintiffs threshold contention that group-pleading arguments are inapplicable in this case.  The Court then assesses the sufficiency of the TAC and finds that it fails to satisfy Rule 8(a)(2)'s minimum requirements and that dismissal of all claims is therefore appropriate.

1.    <u>Rule 8 Legal Standard</u>

Rule 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2)).  Rule 8(a)(2) "does not demand that a complaint be a model of clarity," but "at a minimum," it requires that each defendant be given "fair notice of what the plaintiff's claim is and the ground upon which it rests.'"  *Broidy v. Glob. Risk Advisors LLC*, No. 19-CV-11861, 2023 WL 6258135, at *4 (S.D.N.Y. Sept. 26, 2023) (quoting *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (summary order)).

Group pleading is defined as "an allegation that simply lumps or groups defendants together without describing which defendant is responsible for what conduct or when each defendant participated in that unspecified conduct."  *Lepore v. NL Brand Holdings LLC*, No. 16 CIV. 08115, 2017 WL 4712633, at *6 (S.D.N.Y. Sept. 28, 2017).  It is well-settled that Rule 8(a)(2) "is violated where a plaintiff, by engaging in group pleading, fails to give each defendant fair notice of the claims against it."  *Romualdo v. Guru Krupa 104 Corp.*, No. 19-CV-5188, 2023 WL 6167614, at *8 (E.D.N.Y. Sept. 1, 2023) (quotations and citation omitted); *see also Monterey Bay Mil. Hous., LLC v. Ambac Assurance Corp.*, 531 F. Supp. 3d 673, 728 (S.D.N.Y. 2021) (collecting cases); *Farmer v. Cnty. of Westchester*, No. 18 CIV. 2691, 2021 WL 4199944, at *7 (S.D.N.Y. Sept. 15, 2021) (dismissing complaint under Rule 8(a)(2) where "the vast

majority of allegations" relating to the defendant were "jointly alleged against most of the other [d]efendants without providing any factual basis to distinguish their conduct").

By prohibiting group pleading, "courts acknowledge that the principal function of pleadings under the federal rules is to give the adverse parties fair notice of the claims asserted [against them] so as to enable them to answer and prepare for trial." *Monterey Bay*, 531 F. Supp. 3d at 728-29 (internal quotations and alterations omitted) (quoting *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988)). Thus, in accordance with the lenient standard set by Rule 8(a)(2), dismissal "is usually reserved for those cases in which the complaint is so confused, ambiguous, vague or otherwise unintelligible that its true substance, if any, is well disguised." *Mark J. Elkowitz, MD., P.C. v. UnitedHealthcare of N.Y., Inc.*, No. 17-CV-4663, 2021 WL 9594380, at *5 (E.D.N.Y. Mar. 31, 2021) (citation omitted).

> 2.    The Court Has Authority to Assess the Sufficiency of the TAC
>        Under Rule 8

Plaintiffs argue that group-pleading arguments blanketly do not apply in labor law cases. Opposition at 10. Plaintiffs further argue that, even if the Court finds that group-pleading arguments are permissible here, their group-pleaded allegations satisfy Rule 8 because employers in labor law cases are subject to joint and several liability, and it is therefore appropriate to plead the substantive violations against them collectively after establishing that each of the Moving Defendants were Plaintiffs' employers. *Id.*

Plaintiffs' arguments misapprehend both the applicable case law and the core of the Rule 8(a)(2) notice deficiencies at issue. Plaintiffs' misunderstanding apparently rests on two cases. Plaintiffs first cite to *Herrera v. Comme des Garcons, Ltd.*, 84 F.4th 110 (2d Cir. 2023) for the proposition that the so-called group pleading "doctrine" is "historically confined to fraud cases." *Herrera*, 84 F.4th at 117. Plaintiffs also cite to *Fallon v. 18 Greenwich Ave., LLC*, No. 19-CV-

9579, 2021 WL 1105066 (S.D.N.Y. Mar. 23, 2021) for the proposition that, even if the prohibition against group pleading applies in this case, the TAC's allegations are nevertheless sufficient "[b]ecause joint employers are subject to joint and several liability under the FLSA and NYLL," so "once a plaintiff shows that the defendants qualify as employers, the plaintiff need only establish the existence of FLSA or NYLL violations to subject all employer defendants to liability." *Fallon*, 2021 WL 1105066, at *3.

Plaintiffs cannot credibly maintain that Rule 8(a)(2) group pleading challenges are *per se* inapplicable in labor law cases. None of the cases cited by Plaintiffs foreclose courts from considering whether pervasive group pleading causes a complaint, when taken as a whole, to fall short of Rule 8(a)(2)'s requirements merely because that same complaint happens to allege violations of labor laws.[12] On the contrary, courts in this circuit routinely assess (and dismiss) pleadings involving labor law claims that impermissibly group plead to such an extent that notice issues arise. *See, e.g.*, *Fallon*, 2021 WL 1105066, at *3 (collecting cases); *Romualdo*, 2023 WL 6167614, at *8 (rejecting group-pleaded FLSA and NYLL allegations in complaint for failure to "comply with the minimal requirements of Rule 8(a)(2)" where the allegations failed to distinguish "which of the six [d]efendants engaged in the wage and hour violations and when," making it unclear whether defendants "violated [plaintiff's] rights under FLSA or NYLL");

---

[12] When taken together, the decisions cited by Plaintiffs inform that, in cases alleging violations of labor laws, group pleading as to the violations of the underlying labor law claims—as Plaintiffs contend—may be permissible under certain circumstances. They also establish, however, that group pleading specifically with respect to individual employer status is categorically impermissible because establishing an employer relationship requires an individualized assessment that necessarily cannot be satisfied when the pleading lumps the defendants together— *Fallon* itself acknowledges this point twice. *See Fallon*, 2021 WL 1105066, at *3 ("In the labor law context, courts have entertained group pleading arguments only with respect to allegations concerning whether particular defendants constitute 'employers.'"); *id.* at *4 (finding that plaintiffs' allegations concerning the defendants' employer statuses did not fail on group pleading grounds because plaintiffs made "individualized, albeit boilerplate and conclusory, allegations with respect to each [d]efendant"); *cf. Vasto v. Credico (USA) LLC*, No. 15 CIV. 9298, 2016 WL 4147241, at *6-8 (S.D.N.Y. Aug. 3, 2016) (analyzing allegations concerning employer status on individualized basis, and rejecting allegations due to their conclusory nature); *Juarez v. Butterfield Catering Inc.*, No. 20 CIV. 4537, 2020 WL 6945944, at *3-4 (S.D.N.Y. Nov. 25, 2020) (same); *Huerta v. J.D. Workforce, Inc.*, No. 23 CIV. 5382, 2025 WL 674329, at *9-11 (S.D.N.Y. Mar. 3, 2025) (same).

*Stewart v. Hudson Hall LLC*, No. 20 CIV 885, 2020 WL 8732875, at *8 (S.D.N.Y. Oct. 19, 2020), *report and recommendation adopted*, 2021 WL 735244 (Feb. 24, 2021) ("The Court cannot discern from the [complaint] whether Stewart contends that the 'decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules' that he claims violates the FLSA and the NYLL were imposed by Hudson Hall, Holdings, or Think.  Stewart's reference to 'Defendants' corporate-wide policies and practices' is similarly deficient in advising as to which Defendant's policies and practices are implicated.  Accordingly, the failure of the [complaint] to comply with the minimal requirements of Rule 8(a)(2) as to the Corporate Defendants is an additional ground for dismissal of his claims against them.") (citations omitted).

　　In *Ortiz v. Consol. Edison Co. of New York, Inc.*, No. 22 CIV. 8957, 2024 WL 3086161 (S.D.N.Y. June 7, 2024), *report and recommendation adopted*, 2024 WL 3105686 (June 24, 2024), for example, the court considered whether to dismiss FLSA and NYLL claims where the complaint "engage[d] in group pleading and fail[ed] to put each . . . [d]efendant on notice of the particular claims asserted against it and the grounds for such claim."  *Ortiz*, 2024 WL 3086161, at *10 (internal quotations and citation omitted).  The court found that, on balance, the complaint improperly lumped together defendants "in such a way as to make it impossible to determine what the [moving defendants] are alleged to have done and thus fail[ed] to put the [moving defendants] on notice of the claims against them."  *Id.* at *12 (citing *Monterey Bay*, 531 F. Supp. 3d at 728)).  The court observed that "under Rule 8(a), it is the job of the pleader to provide a short and plain statement of the facts giving rise to each defendant's liability," and concluded that the case was "one of the rare [labor law] cases where, on the central question of how the [moving defendants] [were] liable to [p]laintiffs as their employer," the complaint was "so

confused, ambiguous, vague or otherwise unintelligible that its true substance, if any, [was] well disguised." *Id.* (internal quotations and citation omitted).

In sum, Plaintiffs' contention that group pleading is categorically inapplicable in labor law cases reflects a fundamental misunderstanding of the distinction between group pleading that is potentially permissible due to shared liability (*i.e.*, certain labor law violations) and group pleading that deprives defendants of notice altogether. The latter is the thrust of the group pleading problem with the TAC—*i.e.*, not that the group-pleaded allegations fail to establish employer status or labor law liability in isolation, but that pervasive group pleading in the TAC renders it impossible to discern who did what. Pleadings must still, without exception, give each defendant fair notice of the conduct underlying the claims under Rule 8(a)(2). *See, e.g.*, *Ortiz*, 2024 WL 3086161, at *12; *Romualdo*, 2023 WL 6167614, at *8; *Stewart*, 2020 WL 8732875, at *8.

Two additional points further undermine Plaintiffs' position. First, assuming Plaintiffs' argument was valid, this case is still an especially poor vehicle to argue that the Court cannot review the TAC's group pleading because the TAC also includes non-labor-law claims—such as ERISA and FCRA claims—that raise independent notice issues stemming from its group-pleaded allegations. *See, e.g.*, TAC ¶ 81(g); *id.* ¶¶ 283-99. Second, Plaintiffs' argument incorrectly assumes that group pleading is the only Rule 8(a)(2) deficiency at issue. But as discussed below, the TAC also employs a range of named Plaintiff and putative class groupings that undermine its clarity and further necessitate the Court's review.[13]

---

[13] The Court may address Rule 8(a)(2) deficiencies not raised by the parties where, as here, the TAC's notice issues extend beyond group pleading to include inconsistent use of Plaintiff and class groupings. *Morris*, 2007 WL 632733, at *5; *Hosannah*, 2016 WL 11910684, at *3.

For each of these reasons, the Court finds that it may evaluate whether the TAC, taken as a whole, satisfies Rule 8(a)(2)'s minimum pleading requirements. Nothing limits the Court's authority to do so, and the structure and content of the TAC necessitate such review here.

### 3.    The TAC Fails to Provide Sufficient Notice Under Rule 8

Plaintiffs contend that, even if the general prohibition on group pleading applies, the TAC meets Rule 8(a)(2)'s minimum requirements because "each cause of action clearly delineates which Defendants" the allegations and claims are "asserted against." Opposition at 11. The Court strongly disagrees with Plaintiffs' characterization of the TAC, which in the undersigned's view, runs afoul of Rule 8(a)(2).

The confusion begins with the TAC's dramatic departure from the prior trajectory of this case. For starters, the TAC fundamentally transformed the breadth and scope of this case nearly two years after its filing. Despite the TAC being Plaintiffs' *fourth* bite at the apple, and, unlike Plaintiffs' prior pleadings, the TAC recasts this case into a sprawling multi-class putative class action spanning the east and west coasts of the United States and asserting twenty-four total claims under federal, New York state, and California state law. Of the TAC's twenty-four total claims, seventeen are new claims in this District. And thirteen of those new claims primarily involve violations of California law against long-standing Defendants Wright and Salzman— who worked and resided only in New York. It also asserts those thirteen new claims, as well as seven of the original claims, against Pallante, who is a brand-new Defendant in this District. The TAC purports to bring these myriad claims on behalf of eight named Plaintiffs, six of whom are new to this District, as well as multiple new putative classes representing hundreds of individuals.

Within this expansive new world of claims and parties, the TAC defines or otherwise refers to *fourteen* separate groupings of Defendants, named Plaintiffs, and putative classes—

including sub-groupings within groupings—employing them haphazardly across its allegations and claims.  These inconsistencies are not minor semantic issues; they obstruct Defendants' ability to trace which Plaintiffs are asserting which claims, who they are asserted on behalf of, and who they are asserted against.  The result is an improper kitchen-sink pleading obscuring both who asserts each claim and against whom each claim is made.  *See generally 31FO, LLC v. Inc. Vill. of Lloyd Harbor*, No. 22-CV-3303, 2023 WL 6385187, at *10 (E.D.N.Y. Sept. 29, 2023) (dismissing amended complaint under Rule 8(a)(2) that was an "everything but the kitchen sink-style pleading, a trackless forest of allegations reflecting an effort to throw everything against the wall and see what sticks") (internal quotations omitted); *Varughese v. Mount Sinai Med. Ctr.*, No. 12 CIV. 8812, 2013 WL 1385015, at *1 (S.D.N.Y. Apr. 3, 2013) (describing complaint that asserted 21 separate causes of action as a "kitchen sink" pleading).

a)      *Impermissible Group Pleading in the TAC*

The vast majority of the TAC's allegations consist of group-pleaded assertions.  Despite the TAC's 314 paragraphs, 24 causes of action, and 57 pages, it individually references Defendant Pallante in only *five* paragraphs (TAC ¶¶ 47-49; *id.* ¶¶ 128-29), Wright in *four* (*id.* ¶¶ 43-46), and Salzman in *eleven* (*id.* ¶¶ 50-60).  Most of these individual references appear in the introductory "Parties" section of the TAC and, in conclusory fashion, regurgitate the elements required to establish labor-law employer status.  For example, the TAC alleges that "Wright exercised authority and control over employees' rates of pay and conditions of employment because his approval was required for raises and promotions," and similarly, that "Salzman had the authority to hire and fire employees and to set their rate of pay and other conditions of employment."  *Id.* ¶¶ 44, 52.  Likewise, the TAC alleges that "[u]pon information

and belief, Pallante acted as managing agent, officer, director, and/or employee of the Corporate

Defendants, and caused and directed the activities alleged in this action." *Id.* ¶ 49.[14]

The TAC defines at least *four* distinct groups for the six total Defendants in this case:

(1) "<u>Corporate Defendants</u>," defined as Recovco Mortgage Management LLC and Sprout Mortgage LLC (*id.* ¶ 1);
(2) "<u>Individual Defendants</u>," defined as Michael Strauss, Christopher Wright, Shea Pallante, and Elliot Salzman (*id.*);
(3) "<u>Defendants</u>," defined to include all of the above (*i.e.*, both Corporate and Individual Defendants) (*id.* ¶ 1 n.2); and
(4) "<u>ERISA Defendants</u>,"[15] defined as Corporate Defendants and Strauss (*id.* ¶ 1).

The fatal group-pleading deficiencies in the TAC's use of these groupings are twofold: (1) the

TAC's group pleading expands claims to Defendants not alleged to be the subject of liability,[16]

---

[14] Because dismissal under Rule 8(a)(2) is appropriate, it is not necessary for the Court to consider whether the TAC establishes that Moving Defendants were employers under the FLSA, NYLL, and CALC. However, the Court expresses serious doubt that Plaintiffs have carried their burden of establishing employer status as to each of the Moving Defendants based on the woeful insufficiency of the specific allegations the TAC asserts against them, many of which (like the above) the Court would likely decline to credit entirely. *See, e.g.*, *Stewart*, 2020 WL 8732875, at *8 ("A FLSA plaintiff is not required to show that the individual defendant directly came into contact with the plaintiffs, their workplaces, or their schedules, but conclusory assertions based on information and belief or the individual defendant's title alone are insufficient.") (cleaned up); *Huerta*, 2025 WL 674329, at *9 (S.D.N.Y. Mar. 3, 2025) (rejecting allegations that individual defendant was employer under FLSA where, apart from boilerplate allegations, the complaint was "devoid of any details" about the individual defendant, "let alone facts sufficient to establish the nature and degree" of the individual defendant's "alleged control over [p]laintiffs," or even that the individual defendant "had direct contact with any" plaintiff).

[15] The term "ERISA Defendants" is defined but then is only used twice. *See* TAC ¶¶ 2, 8. In every other instance that this grouping presumably would have been used, the TAC instead refers to "Corporate Defendants" and "Strauss."

[16] *See, e.g.*, TAC ¶¶ 67-73 (limiting collective action allegations to employees of "Corporate Defendants" and discussing the liability of "Corporate Defendants . . . under the FLSA," but then referring to "former employees" of all "Defendants" and attributing sole control of "information regarding the precise number of Collective Class members" to all "Defendants," creating ambiguity about which Defendants are alleged to be employers); *id.* ¶¶ 81(g), 101 (referring to all "Defendants" violating ERISA fiduciary duties even though the TAC defines only the Corporate Defendants and Strauss as the "ERISA Defendants," thus improperly expanding the scope of the allegation); *id.* ¶¶ 157-68 (alleging Federal WARN Act claim against only "Corporate Defendants," but referring in supporting allegations to all "Defendants" ordering mass layoffs and failing to pay wages, thus impermissibly suggesting that Moving Defendants ordered the layoffs and failed to pay wages); *id.* ¶ 169-78 (similarly alleging NY WARN Act claim against only "Corporate Defendants," but also alleging the wrongdoing of all "Defendants," including all "Defendants fail[ure] to pay the Agudelo [sic] and each of the other members of the Class their respective wages").

and (2) the TAC's group pleading fails to provide adequate notice of the conduct underlying the claims against the Moving Defendants.[17]

The most glaring example of the TAC's expansion of liability is its apparent attribution of ERISA liability to the Moving Defendants.  The TAC purports to define the "ERISA Defendants" to include *only* Corporate Defendants and Strauss.  *See id.* ¶ 1.  And keeping with that definition, the TAC purports to assert two claims for ERISA violations only "against Corporate Defendants and Individual Defendant Strauss."  *See id.* at pp. 29-30 (headings of ERISA counts).  But in paragraph 81, which identifies "questions of law and fact common to the 'Shutdown Class Members,'" the TAC includes as a common question: "Whether *Defendants* violated their fiduciary duties . . . under ERISA."  *Id.* ¶ 81(g) (emphasis added).  The TAC then doubles down on this impermissible grouping in paragraph 101, stating that all "*Defendants* . . . failed to provide employee benefits under ERISA."  *Id.* ¶ 101 (emphasis added).  The TAC's group pleading here is plainly inconsistent with its claimed intent to bring these ERISA claims only against the "ERISA Defendants,"—*i.e.*, "Corporate Defendants and Strauss"—leaving the Moving Defendants fairly wondering whether or not they also are exposed to ERISA liability.

---

[17] *See, e.g.*, TAC ¶ 94 (referring to "industry conditions known to [all] Defendants' executives," without ever clarifying whether "executives" refers to Individual Defendants, Corporate Defendants, all Defendants, or executives not named in this action); *id.* ¶¶ 106-118 (referring interchangeably to a singular unidentified "Defendant" and all "Defendants" in allegations relating to the California Labor Class without clarifying which specific Defendant or Defendants engaged in the alleged conduct); *id.* ¶¶ 141-48 (asserting FLSA minimum wage claim against all "Defendants," but referring separately to the "Corporate Defendants" in the supporting allegations); *id.* ¶¶ 216-24 (asserting CALC claim against all "Defendants," but then alternating in underlying allegations between a singular unidentified "Defendant" and all "Defendants" without identifying which specific Defendant(s) are alleged to have committed the violations); *id.* ¶¶ 237-61 (asserting several California claims against all "Defendants," including "Corporate Defendants," and also separately referring to the personal liability of only "Individual Defendants"); *id.* ¶¶ 283-99 (asserting FCRA claims against all "Defendants" without supporting factual allegations distinguishing among them).

The Federal WARN Act and NY WARN Act claims similarly expand liability beyond the scope of TAC's purported intent. While the TAC professes to assert these claims only against "Corporate Defendants," the accompanying allegations also refer broadly to all "Defendants." *See id.* ¶¶ 157-68. The TAC's Federal WARN Act claim alleges, for instance, that "[t]he Shutdown Plaintiffs and each of the other members of the Shutdown Class were discharged by *Defendants*," that the "Mass Layoff [was] ordered by *Defendants* at the NY Office,"[18] and that "*Defendants* failed to pay the Shutdown Plaintiffs and each of the other members of the Class." *Id.* ¶¶ 163, 168 (emphasis added). This expansion of liability repeats in the parallel NY WARN Act claim, where the TAC again attributes violations to all Defendants without qualification, stating, for example, that "*Defendants* were required by the NY WARN Act to give the New York Shutdown Plaintiffs and each of the other members of the Class at least 90 days' advance written notice of their termination," that "*Defendants* failed to give the Agudelo [sic] and other members of the Class written notice that complied with the requirements of the NY WARN Act," and that "*Defendants* failed to pay the Agudelo [sic] and each of the other members of the Class." *Id.* ¶¶ 175, 176, 178 (emphasis added).

Not only does the TAC impermissibly expand potential liability for the Moving Defendants, but it also gives them insufficient notice of the conduct underlying the claims. The two FCRA claims exemplify the problem. The first FCRA claim baldly pronounces that all "Defendants" used an unlawful "disclosure form" without distinguishing between them. *See id.* ¶ 285. Then, the second FCRA claim—which presumably purports to assert a separate

---

[18] It is impossible that all Defendants could have ordered the mass layoff from the New York office because Pallante was located in California.

FCRA violation—begins with the conclusory term "[a]ccordingly"[19] and alleges that Plaintiffs "were confused regarding the nature of their rights under the FCRA and did not give valid authorization for Defendants to procure a consumer report." *See id.* ¶ 294. Puzzlingly, the very next paragraph then opens with the adversative conjunction "[n]evertheless"[20] and states that Defendants "procured a consumer report or caused a consumer report to be procured." *Id.* ¶ 295. When taken as a whole, the allegations underlying these two FCRA claims amount to little more than a combination of impermissible group pleading and grammatical miscues devoid of meaningful factual specifics. Such unclear pleading leaves the Moving Defendants unable to discern whether they are accused, in this instance, of directly procuring the reports, authorizing their use, or playing any role at all in the challenged conduct. *See id.* ¶¶ 285, 294-95.

> *b)*      *Inconsistent Groupings of Named Plaintiffs and Putative Classes*

Compounding its impermissible group pleading, the TAC also suffers from inconsistent and confusing use of named Plaintiff and class groupings. It employs those groupings so erratically that it wholly obscures who is asserting which claims, creating distinct Rule 8(a)(2) notice deficiencies.

The TAC defines (or otherwise refers to) *seven* groupings for the eight named Plaintiffs in this case:

> (1) "<u>Plaintiffs</u>," defined to include all eight named Plaintiffs: Nathaniel Agudelo, Helen Owens, Amanda Cooper, Lori Steward, Mike Shirdel, Jared Sawyer, Scott Harvey, and Karen Kelley (*id.* at p. 1);

---

[19] It is unclear what factual basis "accordingly" is referencing given that the paragraph begins the section for the second FCRA claim and does not build on any specific factual allegation from the preceding count.

[20] The usage of "nevertheless" here is especially perplexing, as it is unclear what "nevertheless" is meant to contrast given that the prior sentence begins with "accordingly" and offers no concrete premise that would support a change in position. *See generally* The Chicago Manual of Style ¶ 5.203 (17th ed. 2017) (explaining that the use of adversative conjunctions like nevertheless can "occasionally be unclear at the beginning of a sentence" and warning that an adversative conjunction should only be used "if the idea it introduces truly contrasts with what precedes").

(2) "<u>Nationwide Shutdown Plaintiffs</u>," defined to include Nathaniel Agudelo, Helen Owens, Amanda Cooper, Lori Steward, Mike Shirdel, Jared Sawyer, and Scott Harvey (but not Karen Kelley) (*id.* ¶ 2);

(3) "<u>California Shutdown Plaintiffs</u>," defined to include Lori Steward, Mike Shirdel, Jared Sawyer, and Scott Harvey (*id.* ¶ 4);

(4) "<u>New York Shutdown Plaintiffs</u>," referenced multiple times (*see, e.g.*, *id.* ¶ 4 n.2; *id.* ¶ 175), but never formally defined, and the TAC fails to specify which named Plaintiffs are included in this group, nor how it relates to the "Nationwide Shutdown Plaintiffs"[21];

(5) "<u>Shutdown Plaintiffs</u>," defined as the combined set of "Nationwide Shutdown Plaintiffs," "New York Shutdown Plaintiffs," and "California Shutdown Plaintiffs" (*id.* ¶ 4 n.2);

(6) "<u>California Labor Plaintiffs</u>," defined to include Lori Steward, Mike Shirdel, Jared Sawyer, Scott Harvey, and Karen Kelley (*id.* ¶ 5); and

(7) "<u>California Labor Class Plaintiffs</u>," is used in the headings of certain claims but is not expressly defined in the TAC (*see, e.g.*, *id.* ¶¶ 198-208; *id.* ¶¶ 237-242).  It appears to refer to the same individuals as "California Labor Plaintiffs," or perhaps to both the named California Labor Plaintiffs" and the putative class they bring their claims on behalf of, but the TAC never confirms this.

Additionally, the TAC explicitly defines *five* putative classes:

(1) "<u>New York Shutdown Class</u>," defined as "[a]ll employees of Sprout Mortgage who worked between June 16, 2022, and July 6, 2022, whose employment was terminated on July 6, 2022, and who were residents of New York on July 6, 2022" (*id.* ¶ 3);

(2) "<u>California Shutdown Class</u>," defined as "[a]ll employees of Sprout Mortgage whose employment was terminated on or about July 6, 2022, and who were residents of California on July 6, 2022" (*id.* ¶ 4);

(3) "<u>Nationwide Shutdown Class</u>," defined as "[a]ll employees of Sprout Mortgage whose employment was terminated on or about July 6, 2022"[22] (*id.* ¶ 2);

(4) "<u>California Labor Class</u>," defined as "[a]ll employees of Sprout Mortgage who worked for Sprout Mortgage while residing in California between February 22, 2026, and July 6, 2022" (*id.* ¶ 5);

(5) "<u>Collective Class Members</u>," defined as "all similarly situated persons who were employed by Corporate Defendants at any point from June 16, 2022, through July 6, 2022, and who did not receive minimum wages for all hours worked"[23] (*id.* ¶ 67).

---

[21] Paragraph 3 of the TAC specifies that "Plaintiff Nathaniel Agudelo brings this action on behalf of himself and the 'New York Shutdown Class,'" so he would appear to be included in this grouping of unspecified named Plaintiffs. *See* TAC ¶ 3.  But the grouping is plural, and the TAC does not identify who else (if anyone) would be included.

[22] The "Nationwide Shutdown Class" as defined by the TAC necessarily overlaps with and includes the members of the "New York Shutdown Class" and "California Shutdown Class."

[23] The Court notes that this class is defined to include only employees of *Corporate Defendants—i.e.*,

Of those *five* putative classes, the TAC refers to *three* different groupings of putative classes, some defined and some undefined:

(1) "Class Members," or "the Class," referred to generically throughout the TAC, but never defined and used inconsistently[24];

(2) "Shutdown Class," defined interchangeably with "Shutdown Employees" to collectively include the "Nationwide Shutdown Class," "New York Shutdown Class," and "California Shutdown Class" (*id.* ¶ 4 n.2);

(3) "Shutdown Employees," defined interchangeably with "Shutdown Class" to collectively include the "Nationwide Shutdown Class," "New York Shutdown Class," and "California Shutdown Class" (*id.*).

The TAC invokes these myriad overlapping groupings with excessive variability and inconsistency, thus making it highly difficult to understand exactly who is asserting the relevant allegations or claims against which Defendants.[25]

_____

Sprout and Recovco—and therefore employer allegations involving the Collective Class Members apparently do not extend to Individual Defendants by Plaintiffs' own definition.

[24] *See, e.g.*, TAC ¶ 80 (referring to 540 total undifferentiated "Class Members" in allegations relating only to the "Shutdown Class"); *id.* at p. 19 (also referring to, in an unnumbered paragraph, 460 total undifferentiated "Class Members" in allegations relating only to the "California Labor Class").

[25] *See, e.g.*, TAC ¶¶ 141-48 (labeling FLSA minimum wage claim as brought only by named "Shutdown Plaintiffs," and not explicitly on behalf of any putative class, but then also referring to all "Plaintiffs" and undefined "Class Members" in supporting allegations, making it uncertain whether named Plaintiffs, putative class members, or both assert the claim and also potentially expanding the scope of the claim asserted to all named Plaintiffs and all putative class members rather than a specific subset of defined individuals); *id.* ¶¶ 149-56 (labeling NYLL minimum wage and unlawful withholding of wages claims as brought only by singular "Plaintiff Nathaniel Agudelo," or "Plaintiff Agudelo," but then referring to "Agudelo," an unnamed "Plaintiff," unnamed "Plaintiffs," unspecified "Class Members," and "New York Shutdown Class Members" in supporting allegations, leaving unclear who exactly the TAC asserts these claims on behalf of); *id.* ¶ 175 (referring to obligations owed to "New York Shutdown Plaintiffs," a group never defined, leaving the identity of the affected Plaintiffs ambiguous); *id.* ¶¶ 191-97, 225-32, 262-66 (labeling claims as brought only by named "California Shutdown Plaintiffs" and not explicitly on behalf of any putative class, but extending supporting allegations to the "California Shutdown Class Members"); *id.* ¶¶ 198-208, 237-42 (labeling claims as brought only by "California Labor Class Plaintiffs," a group never defined in the TAC, while allegations refer to the rights of "California Labor Plaintiffs," "California Labor Class Members," all "Plaintiffs," and even individual named Plaintiffs "Sawyer" and "Harvey"); *id.* ¶¶ 209-15 (bringing claim for unlawful deductions from "Plaintiffs' and Class Members' paychecks" while also inconsistently specifying that the claim is brought only by named "California Labor Plaintiffs," and extending the supporting allegations to the "California Labor Class Members"); *id.* ¶¶ 233-36 (labeling claim as brought only by putative "California Labor Class Members" and not explicitly any named Plaintiffs, but extending allegations to "California Labor Class Plaintiffs," an undefined group, and "California Labor Plaintiffs"); *id.* ¶¶ 216-24, 243-61, 267-314 (asserting additional claims by only named "California Labor Plaintiffs," but extending the allegations to the "California Labor Class Members" and also referencing all "Plaintiffs" and individual Plaintiffs "Sawyer" and "Harvey").

A particularly egregious example of the TAC's fatal ambiguity in this context arises in its assertion of two NYLL claims by singular "Plaintiff Nathaniel Agudelo," or "Plaintiff Agudelo" against all "Defendants" for minimum wage violations and unlawful withholding of wages. *Id.* ¶¶ 149-56.  The headings to both of these claims seemingly identify Agudelo as the sole Plaintiff asserting these claims.  *Id.*  Yet the allegations that follow immediately undermine that framing.  The NYLL minimum wage claim, for instance, begins by referencing violations of the "rights of Agudelo" but then also references the rights of "New York Shutdown Class members." *Id.* ¶ 150.  Immediately thereafter, the TAC references a singular unidentified "Plaintiff," and then shifts again to a broader assertion that generic "Class Members"—the extent of which is wholly undefined—were "employed by Defendants" and were "entitled to the minimum rate of pay that they were legally due."  *Id.* ¶¶ 151-52.  Similarly, the unlawful withholding claim starts with Agudelo in the heading, but the underlying allegations speak to the rights of plural unidentified "Plaintiffs" and generic unidentified "Class Members."  *Id.* ¶¶ 153-56.  The TAC thus leaves open-ended whether these claims are asserted solely on behalf of Agudelo in his individual capacity, on behalf of all named Plaintiffs, or on behalf of some combination of putative class members, thus making it impossible for any Defendant to determine whose rights are allegedly at issue, whether these claims are individual or representative in nature, and what the precise scope of these claims are.

The TAC's California labor law claims are similarly riddled with internal inconsistencies. A representative example is the claim for unlawful deductions under CALC Sections 221 and 223.  The heading of that claim specifies that it is for unlawful deductions "from Plaintiffs' and Class Members' paychecks"—an undefined and potentially all-encompassing group of individuals that could arguably include non-California Plaintiffs—but also states, in the very

same heading, that the claim is alleged only by "California Labor Plaintiffs," a defined subset of five named individuals. *Id.* ¶¶ 209-15. The allegations that follow deepen the ambiguity by referring to the rights of generic "Plaintiffs," the "California Labor Plaintiffs," and the "California Labor Class Members." *Id.* The Moving Defendants are thus left guessing whether this claim is asserted by all named Plaintiffs, some subset thereof, all putative class members, or only those in the California Labor Class.

### 4.    The TAC Falls Short of Rule 8's Requirements

To sum up, the TAC is "a trackless forest of allegations reflecting an effort to throw everything against the wall and see what sticks." *Vill. of Lloyd Harbor*, 2023 WL 6385187, at *10. Its pervasive inconsistencies and impermissible group pleading, particularly given the breadth of the new claims and parties, prevent the Moving Defendants from reasonably understanding the theories of liability asserted against them. "It is not the job of the [Moving Defendants] or the Court to guess at the basis for the [Plaintiffs' claims] or to try to stitch together a coherent theory on the [Plaintiffs'] behalf." *Ortiz*, 2024 WL 3086161, at *12; *accord Bardwil Indus. Inc. v. Kennedy*, 2020 WL 2748248, at *4 (S.D.N.Y. May 27, 2020) ("Such guesswork is antithetical to the fair notice that Rule 8 requires.") (citations and quotations omitted). The Court is mindful that dismissal under Rule 8(a)(2) "is usually reserved for those cases in which the complaint is so confused, ambiguous, vague or otherwise unintelligible that its true substance, if any, is well disguised." *UnitedHealthcare of N.Y., Inc.*, 2021 WL 9594380, at *5 (citation omitted). This is one of those cases. The TAC's incoherent structure—driven by pervasive group pleading and inconsistent terminology—deprives the Moving Defendants of any meaningful ability to frame a response or defense. *See Ortiz*, 2024 WL 3086161, at *11-12 (rejecting allegations and claims that "consistently fail[ed] to distinguish between or among the . . . different corporate and individual [d]efendants and instead lump[ed] them together," and

made "only a handful of assertions specific to the . . . [d]efendants" most of which were "made in the 'Parties' section . . . providing background information . . . or reciting boilerplate allegations of control").

Therefore, for the foregoing reasons, the undersigned recommends dismissal of all federal claims in the TAC with prejudice as to Pallante, Wright, and Salzman for failure to comply with Rule 8(a)(2). Although dismissal under Rule 8(a)(2) is typically without prejudice, dismissal with prejudice is warranted here. Plaintiffs have had *four* opportunities over the course of more than two years to plead a viable case against Moving Defendants. Yet the TAC continues to rely on vague, conclusory, and undifferentiated allegations while dramatically expanding the factual and legal complexity of this case. At this stage, nearly three years into the litigation, the absence of specific, individualized allegations against the Moving Defendants raises serious doubt that Plaintiffs could cure these defects through yet another amendment. Under these circumstances, additional amendment would be unduly prejudicial, and the Court declines to give Plaintiffs an opportunity to try to plead for a *fifth* time. *See generally Brown v. Coach Stores, Inc.*, 163 F.3d 706, 712 n.4 (2d Cir. 1998) ("Because this particular pleading issue has not been previously discussed by this Court, we would normally be inclined to dismiss without prejudice to allow plaintiff to replead in light of the decision announced herein. Such an allowance is not justified here, however, because the district court already gave [plaintiff] the opportunity to file an amended complaint designed to cure the very defect that remains."); *De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 72 (2d Cir. 1996) (Plaintiffs were accorded four opportunities to plead their claims in this case . . . . The district court did not abuse its discretion by refusing them a fifth opportunity."); *Abada v. Delta Air Lines, Inc.*, No. 19-CV-3903, 2020 WL 7481326, at *6 (E.D.N.Y. Dec. 18, 2020), *aff'd*, No. 21-123-CV, 2022 WL 894704 (2d Cir.

33

Mar. 28, 2022) ("Plaintiffs were previously granted an opportunity to amend their complaints, but were not able to allege plausible facts to sustain their claims.  Thus, although plaintiffs may be granted leave to replead after a complaint is dismissed, the court declines to grant such leave here."); *In re Frontier Commc'ns, Corp. S'holders Litig.*, No. 17-CV-1617, 2020 WL 1430019, at *27 (D. Conn. Mar. 24, 2020) ("Having already granted Plaintiffs leave to amend their original Complaint a third time, and having still found their claims not viable, the Court will dismiss this case with prejudice."); *Tymoshenko v. Firtash*, No. 11-CV-2794, 2015 WL 5505841, at *8 (S.D.N.Y. Sept. 18, 2015) ("Given that this is now Plaintiffs' fourth unsuccessful attempt to plead . . . and given that the changes in the TAC fail to remedy the deficiencies found in the SAC, the Court declines to grant Plaintiffs yet another opportunity to amend their pleadings.").

Because the undersigned recommends dismissal of all federal claims with prejudice, it is further recommended that the Court decline to exercise supplemental jurisdiction over all remaining state-law claims under 28 U.S.C. § 1367(c)(3).  Even if the Court were inclined to reach the state claims, the same pervasive defects—improper group pleading, inconsistent party groupings, and general lack of clarity—would independently warrant dismissal under Rule 8(a)(2).  Therefore, declining to exercise supplemental jurisdiction is consistent with principles of judicial economy, convenience, fairness and comity.  *See Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. 22, 31-32 (2025) (explaining that a district court "may (and indeed, ordinarily should) kick the case to state court" where the district court "has dismissed all claims over which it has original jurisdiction" (quoting 28 U.S.C. § 1367(c))); *see also Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward

declining to exercise jurisdiction over the remaining state-law claims.") (citation omitted); *Eubanks v. Hansell*, No. 22-CV-6277, 2024 WL 1308672, at *12 (E.D.N.Y. Mar. 26, 2024) ("[B]ecause Plaintiffs have failed to allege a viable federal claim, it would 'exceed [the] allowable discretion' of the Court to assert supplemental jurisdiction.") (citation omitted).

## IV.    CONCLUSION

For the reasons set forth in this Report and Recommendation, the undersigned respectfully recommends that the Court grant Moving Defendants' Motions to Dismiss and dismiss each of the federal claims asserted against them with prejudice. The undersigned further recommends that the Court decline to exercise supplemental jurisdiction over all remaining state-law claims under 28 U.S.C. § 1367(c)(3).

## V.    OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2), the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. *See also* Fed. R. Civ. P. 6(a) & (d) (addressing computation of days). Any requests for an extension of time for filing objections must be directed to Judge Azrack. FAILURE TO FILE TIMELY OBJECTIONS SHALL CONSTITUTE A WAIVER OF THOSE OBJECTIONS BOTH IN THE DISTRICT COURT AND ON LATER APPEAL TO THE UNITED STATES COURT OF APPEALS. *See Thomas v. Arn*, 474 U.S. 140, 154-55 (1985); *Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir. 2018); *McConnell v. ABC-Amega, Inc.*, 338 F. App'x 24, 26 (2d Cir. 2009); *F.D.I.C. v. Hillcrest Assocs.*, 66 F.3d 566, 569 (2d Cir. 1995).

Dated: Central Islip, New York
      June 13, 2025

SO ORDERED:

s/ Lee G. Dunst
_____

**LEE G. DUNST**
United States Magistrate Judge